No. 21-15295
_____

**In the United States Court of Appeals for the Ninth Circuit**
_____

APACHE STRONGHOLD,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA, ET AL.,

*Defendants-Appellees*.

Appeal from the United States District Court for the District of Arizona Honorable
Steven P. Logan
(2:21-cv-00050-PHX-SPL)
_____

**BRIEF *AMICI CURIAE* OF RELIGIOUS LIBERTY LAW SCHOLARS IN
SUPPORT OF PLAINTIFF-APPELLANT APACHE STRONGHOLD ON
REHEARING EN BANC**

_____

Thomas C. Berg
Religious Liberty Appellate Clinic
University of St. Thomas
    School of Law
MSL 400, 1000 LaSalle Ave.
Minneapolis, MN 55403-2015
(651) 962-4918
tcberg@stthomas.edu

W. Thomas Wheeler
Fredrikson & Byron, P.A.
200 South Sixth St., Suite 4000
Minneapolis, MN 55402-1425
(612) 492-7460
twheeler@fredlaw.com

Miles E. Coleman
Nelson Mullins Riley & Scarborough, LLP
2 W. Washington St., Fourth Floor
Greenville, SC 29601
(864) 373-2352
miles.coleman@nelsonmullins.com

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICI CURIAE*....................................................1

ARGUMENT ............................................................................................................5

I.   RFRA'S TEXT CALLS FOR A REALISTIC AND FLEXIBLE DEFINITION OF "SUBSTANTIAL BURDEN[S]" ON RELIGIOUS EXERCISE, NOT THE RESTRICTIVE AND RIGID DEFINITION DECLARED BY THE PANEL MAJORITY. ...............................................5

    A.   The Plain, Ordinary Meaning of "Substantial Burden" Includes Any Significantly Great Restriction or Hindrance on Religious Exercise. .............................................................................................6

    B.   RFRA Should Be Interpreted the Same as Its "Sister Statute" RLUIPA, for Which this Court Properly Applies the More Realistic, Flexible Definition. ...............................................................9

II.   THE RESTRICTIVE DEFINITION OF "SUBSTANTIAL BURDEN" UNDERMINES RFRA'S PURPOSES BY MAKING THE STATUTE INAPPLICABLE IN CORE CASES THAT CONGRESS CLEARLY MEANT TO COVER...........................................12

    A.   The Restrictive Standard Excludes Relief for Claims at the Core of RFRA's Purposes...........................................................................13

        1.   *Religious Objections to Autopsies.* ...........................................13

        2.   *Prisoner Claims and Religious Property or Resources.*............16

        3.   *Land-use Regulations Substantially Limiting Religious Buildings.* ...................................................................................20

    B.   It Is No Answer to Say That RLUIPA Protects Claims Concerning Prisons and Land-Use Regulations..................................22

III.    UNDER ANY PROPER STANDARD, THE DESTRUCTION OF
        PLAINTIFFS' SACRED SITES IMPOSES A SUBSTANTIAL
        BURDEN. .................................................................................25

        A.    The Destruction of Plaintiffs' Sites Imposes a Substantial
              Burden Under the Plain, Ordinary Meaning. ......................25

        B.    This Case Involves a Substantial Burden Even Under the
              *Navajo Nation* and *Lyng* Decisions. ....................................27

CONCLUSION .................................................................................28

CERTIFICATE OF COMPLIANCE ...................................................C-1

CERTIFICATE OF SERVICE .............................................................C-2

APPENDIX ....................................................................................... A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulkadir v. Hardin*,
2021 WL 9406649 (M.D. Fla. Apr. 13, 2021)....................................24

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
611 F.3d 248 (5th Cir. 2010) ................................................11

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014).......................................................8, 9, 10, 12

*City of Boerne v. Flores*,
521 U.S. 507 (1997).................................................10, 14, 16, 20

*Cruz v. Beto*,
405 U.S. 319 (1972) (per curiam).......................................18

*Cutter v. Wilkinson*,
544 U.S. 709 (2005).....................................................10, 16

*DeMarco v. Davis*,
914 F.3d 383 (5th Cir. 2019) .............................................18

*Employment Division v. Smith*,
494 U.S. 872 (1990)..................................................10, 13, 14

*Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*,
818 F.3d 1122 (11th Cir. 2016) .........................................11

*Gartrell v. Ashcroft*,
191 F. Supp. 2d 23 (D.D.C. 2002)......................................24

*Greene v. Solano Cnty. Jail*,
513 F.3d 982 (9th Cir. 2008) ............................................18

*Guam v. Guerrero*,
290 F.3d 1210 (9th Cir. 2002) ..........................................24

iii

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*,
    456 F.3d 978 (9th Cir. 2006) ................................................................20

*Haight v. Thompson*,
    763 F.3d 554 (6th Cir. 2014) ................................................................17

*Harris v. Escamilla*,
    736 F. App'x 618 (9th Cir. 2018) .........................................................18

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ............................................................11

*HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Assn.*,
    141 S. Ct. 2172 (2021) ......................................................................6, 7

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ......................................................................10, 12

*International Church of the Foursquare Gospel v. City of San
    Leandro*,
    673 F.3d 1059 (9th Cir. 2011) ..............................................................20

*Ish Yerushalayim v. United States*,
    374 F.3d 89 (2d Cir. 2004) ..................................................................23

*Jama v. U.S.I.N.S.*,
    343 F. Supp. 2d 338 (D.N.J. 2004) ......................................................24

*Jones v. Carter*,
    915 F.3d 1147 (7th Cir. 2019) ..............................................................17

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ..............................................................24

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ................................................................11

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) .................................................................5, 27, 28

*Mack v. Warden Loretto FCI*,
    839 F.3d 286 (3d Cir. 2016) ..........................................................10, 24

iv

*McElyea v. Babbitt,*
833 F.2d 196 (9th Cir. 1987) ...............................................................17

*Montgomery v. County of Clinton,*
743 F. Supp. 1253 (W.D. Mich. 1990) .............................................14

*Nance v. Miser,*
700 F. App'x 629 (9th Cir. 2017) ......................................................18

*Navajo Nation v. U.S. Forest Service,*
535 F.3d 1058 (9th Cir. 2008) (en banc) ....................................*passim*

*Patel v. U.S. Bureau of Prisons,*
515 F.3d 807 (8th Cir. 2008) ....................................................11, 24

*Ramirez v. Collier,*
142 S. Ct. 1264 (2022) ...............................................................10, 19

*Rasul v. Myers,*
512 F.3d 644 (D.C. Cir. 2008), *vacated on other grounds and
remanded,* 555 U.S. 1083 (2008).......................................................18

*Sabir v. Williams,*
52 F.4th 51 (2d Cir. 2022) ..................................................................24

*San Jose Christian Coll. v. City of Morgan Hill,*
360 F.3d 1024 (9th Cir. 2004) .......................................................7, 9

*Sherbert v. Verner,*
374 U.S. 398 (1963)........................................................................8, 28

*Tanzin v. Tanvir,*
141 S. Ct. 486 (2020)..................................................................*passim*

*Westchester Day Sch. v. Vill. of Mamaroneck,*
504 F.3d 338 (2d Cir. 2007) ..............................................................21

*Western Presbyterian Church v. Bd. of Zoning Adjustment,*
862 F. Supp. 538 (D.D.C. 1994).......................................................24

*Wisconsin Central Ltd. v. United States,*
138 S. Ct. 2067 (2018).......................................................................23

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ..................................................................8, 28

*Yang v. Sturner*,
    750 F. Supp. 558 (D.R.I. 1990) ..........................................................14

*Yellowbear v. Lampert*,
    741 F.3d 48 (10th Cir. 2014) ..............................................................17

**Statutes**

42 U.S.C. § 2000bb(b)(1) ...................................................................8

42 U.S.C. § 2000bb-1(a), 1(b) ............................................................5

42 U.S.C. § 2000cc-5(4)(A)................................................................23

42 U.S.C. § 2000cc-5(4)(B)................................................................24

42 U.S.C. §§ 2000cc, 2000cc-1 ..........................................................23

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* ................*passim*

Religious Land Use and Institutionalized Persons Act, 42 U.S.C.
    §§ 2000cc-1 *et seq.* ....................................................................*passim*

**Other Authorities**

139 Cong. Rec. S14462, S14467, S14468 (daily ed. Oct. 27, 1993) .....................17

146 Cong. Rec. 16698 (2000) ................................................................16

*American Heritage Dictionary* (5th ed. 2020)........................................7

*Black's Law Dictionary* (11th ed. 2019)................................................6

Douglas Laycock and Oliver Thomas, *Interpreting the Religious*
    *Freedom Restoration Act*, 73 Tex. L. Rev. 209, 229 (1994)..............................14

First Amendment, U.S. Constitution .........................................11, 17, 18

S. Rep. No. 103-11, Religious Freedom Restoration Act of 1993 .............14, 18, 20

Statement, U.S. Dep't Agriculture ¶ 3.12.4.10 (2021), *available at*
    https://www.resolutionmineeis.us/ ....................................................26

Stephanie Hall Barclay and Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021) ...........................26

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici* are legal scholars who have studied and written extensively about the exercise of religion under the law in the United States, with particular attention to religious liberty under the religion clauses of the First Amendment, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 *et seq. Amici* write to aid the Court in interpreting and applying RFRA, in particular so as to achieve the statute's purpose of providing substantial protection for the religious exercise of all faiths.[2]

## INTRODUCTION AND SUMMARY OF ARGUMENT

The federal government owns the land at Oak Flat, a sacred place where Apache people have worshiped and conducted ceremonies for centuries. If the government transfers the land to the Resolution Copper Company, the mine created there will blow a hole two miles long and more than 1,000 feet deep, destroying the sacred sites and completely preventing Apache worshipers from accessing them. This action will impose a "substantial burden" on the Apaches'

---

[1] The parties' counsel consented to this brief. No party or its counsel authored this brief in whole or in part. No one other than *amici* or their counsel made a monetary contribution to the preparation and submission of this brief.

[2] *Amici*'s full titles and institutional affiliations (for identification purposes only) are listed in an Appendix.

religious exercise, by any ordinary meaning of that term, and therefore triggers the protections of RFRA.

Yet the panel majority in this case held that these ruinous effects would not "substantially burden" Apache religious exercise under RFRA. Therefore, the panel held, the government need not show any strong justification for destroying centuries-old religious practices. The panel asserted that it was bound to hold RFRA inapplicable on the basis of its interpretation of the definition of "substantial burden" in *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008). Under the panel's reading of *Navajo Nation*, the definition of a "substantial[ ] burden" is a narrow and rigid one. The panel said as follows:

> Under RFRA, the government imposes a substantial burden on religion in two—and only two—circumstances: when the government "force[s individuals] to choose between following the tenets of their religion and receiving a governmental benefit" and when the government "coerce[s individuals] to act contrary to their religious beliefs by the threat of civil or criminal sanctions."

Panel Opinion [Doc. 85-1] at 25 (hereinafter "Panel Op.") (brackets in original; quoting *Navajo Nation*, 535 F.3d at 1070).

This restrictive definition of "substantial burden" fundamentally misconstrues RFRA. This Court should reject it and, under the proper definition, should hold that the government action here substantially burdens Apache religious exercise.

*Amici* religious-liberty scholars are familiar with RFRA's background and development and are concerned that the statute be read—according to its text and purposes—to provide meaningful protection for the religious exercise of all faiths. That includes faiths whose religious exercise is at the mercy of the government because government controls access to the resources necessary for the practices of the faith. The Apaches and other Native American worshipers are in that position.

**I. *A.*** RFRA's text calls for a realistic and flexible definition of a "substantial burden" on religious exercise, not the restrictive and rigid definition set forth by the panel as it understood *Navajo Nation*. The plain, ordinary meaning of the phrase "substantially burden"—which should control interpretation in general and in this case—includes any significant hindrance or restriction on religious exercise.

***B.*** This Court properly employs such a straightforward definition for "substantial burden[s]" on religious exercise under RFRA's sister statute, RLUIPA. Interpreting language virtually identical to that in RFRA, this Court has held that RLUIPA's protections are triggered by any "significant restriction or onus on" religious exercise. It is erroneous, indeed senseless, to adopt different interpretations for the materially identical phrase in these parallel statutes.

**II. *A.*** The narrow definition that the panel applied here also fundamentally errs in the light of RFRA's background and purposes. If RFRA is limited to cases involving the denial of benefits or the imposition of civil or criminal sanctions, it

would render the statute inapplicable to core cases that, at the time of enactment, it was clearly meant to cover. These cases include (1) unnecessary autopsies performed in violation of the decedent's family's religious beliefs, (2) prisons' denial of access to resources necessary for inmates to practice their faith, and (3) substantial land-use restrictions on the construction or expansion of religious buildings.

*B.* It is no answer to defend the restrictive definition of burdens for RFRA by saying, as the panel majority did, that prison and land-use cases are covered by RLUIPA's broader definition. First, as already discussed, RFRA and RLUIPA are parallel statutes, with virtually identical language that should be defined the same. Moreover, RFRA was plainly meant to cover prison and land-use claims at the time of its enactment; a narrow definition that undermines such coverage misinterprets RFRA and is not cured by anything in RLUIPA. Finally, even today RFRA provides the only statutory protection for some claims, including claims challenging regulations in federal prisons or land-use actions by the District of Columbia or U.S. territories.

**III.** *A.* Under the correct definition, the government's challenged action unquestionably imposes a substantial burden by hindering or oppressing Native American religious exercise to a considerable degree. The government's action will deny plaintiffs the opportunity to practice their religion by both effectively

4

barring religious exercise and destroying essential sacred sites of such religious exercise.

**B.** Neither this Court's ruling in *Navajo Nation* nor the Supreme Court's ruling in *Lyng v. Northwest Indian Cemetery Protective Association* requires denying that a substantial burden on religious exercise exists here. This case is factually distinguishable from both *Navajo Nation* and *Lyng*. Neither of them involved the physical destruction of a sacred site, as is the case here, and neither case involved actions that would block the access of Native worshipers to the site.

## ARGUMENT

I. **RFRA'S TEXT CALLS FOR A REALISTIC AND FLEXIBLE DEFINITION OF "SUBSTANTIAL BURDEN[S]" ON RELIGIOUS EXERCISE, NOT THE RESTRICTIVE AND RIGID DEFINITION DECLARED BY THE PANEL MAJORITY.**

RFRA provides that government may not "substantially burden" religious exercise unless it "demonstrates that application of the burden" is "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1(a), 1(b). The panel majority here treated "substantially burden"—or equivalently, a "substantial burden"—as "'a term of art'" limited by the facts involved in cases decided before RFRA's passage. Panel Op. 25. On that basis it concluded that a "substantial burden" exists "in two—and only two circumstances," namely, when government (1) imposes civil or criminal sanctions or (2) denies a benefit because the recipient follows its religion. *Id.*

This position fundamentally misconstrues RFRA's text. It disregards the plain, ordinary meaning of the phrase "substantial[ ] burden." It also creates a discrepancy with the broader and more flexible standard that this Court properly applies under RLUIPA, the statute that parallels RFRA.[3]

## A. The Plain, Ordinary Meaning of "Substantial Burden" Includes Any Significantly Great Restriction or Hindrance on Religious Exercise.

First, the panel majority was wrong to treat "substantial burden" as a "term of art" with a restrictive definition. Panel Op. 25. The Supreme Court instructs that courts should "generally . . . afford a statutory term 'its ordinary or natural meaning.'" *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Assn.*, 141 S. Ct. 2172, 2176 (2021) (quotation omitted). Under RFRA itself, the Court recently made clear, in *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), that "[w]ithout a statutory definition, we turn to the [relevant] phrase's plain meaning at the time of enactment." *Id.* at 491 (using the plain meaning of RFRA's term "appropriate relief").

Under the plain meaning of the term here, a "burden" is "[s]omething that hinders or oppresses." *Black's Law Dictionary* (11th ed. 2019). And something is

---

[3] The panel claimed that its restrictive definition was required by this Court's en banc decision in *Navajo Nation*. Panel Op. 25. That claim greatly overreads *Navajo Nation*, for reasons described below. *See infra* pp. 27-28. But if *Navajo Nation* did confine "substantial burden[s]" to the two categories the panel identified, then this Court should overrule *Navajo Nation*.

"substantial" when it is "[c]onsiderable in importance, value, degree, amount, or extent." *American Heritage Dictionary* (5th ed. 2020). Therefore, RFRA's coverage is triggered by any government action that "hinders or oppresses" a person's religious exercise to a considerable degree or extent. This Court, indeed, applies that very definition in cases under RLUIPA; under that statute, this Court says, the "plain meaning" of "substantial burden" is "a 'significantly great' restriction or onus on 'any exercise of religion.'" *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034-35 (9th Cir. 2004) (quotation omitted).[4]

As we discuss in Part III, under the plain meaning of the term, "there is no doubt that the complete destruction of Oak Flat would be a 'substantial burden' on the Apaches' religious exercise." Panel Op. 78 (Berzon, J., dissenting). *See infra* pp. 25-26.

The plain, ordinary meaning of "substantial burden" governs because Congress did not "furnish a definition of its own" for the term (*HollyFrontier Cheyenne Refining*, 141 S. Ct. at 2176). *See* Panel Op. 27 (majority) (acknowledging that "the phrase 'substantial burden' was not defined in RFRA's text"). The panel majority nevertheless claimed that "substantial burden[s]" are limited to the "two—and only two—circumstances" it identified because those

---

[4] As the next section details, to apply different meanings of "substantial burden" under RFRA and RLUIPA is unwarranted and unacceptable. *Infra* pp. 9-12.

were the circumstances involved in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), the two Supreme Court decisions incorporated in RFRA's statement of purposes. Panel Op. 19, 23 (citing 42 U.S.C. § 20000bb(b)(1)).

But RFRA's statement of purposes does not say that; instead, it actually says that RFRA is meant "to restore *the compelling interest test* as set forth in *Sherbert* [and] *Yoder*, . . . and to guarantee its application *in all cases* where free exercise of religion is substantially burdened." 42 U.S.C. § 20000bb(b)(1) (emphases added; full case names and citations omitted). Nowhere does the text state that the definition of "substantial burden" is limited to the precise categories involved in *Sherbert* or *Yoder*. To the contrary, the text makes RFRA applicable to *all* cases where government action substantially burdens the free exercise of religion.

The Supreme Court has recently rejected the argument made by the panel: that RFRA's protection is "limited to cases that fall squarely within the holdings of pre-*Smith* cases." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 n.18 (2014). The Court called that contention "absurd," holding that RFRA "did not merely restore[ ] . . . pre-*Smith* decisions in ossified form." *Id.* at 715-16.

In *Hobby Lobby*, the government asserted that it had a categorical compelling interest in overriding religious objections by commercial actors; it relied on a statement in pre-*Smith* caselaw that a commercial actor's objections

8

"'are not to be superimposed on the statutory schemes which are binding on others in that activity.'" 573 U.S. at 735 n.43 (quoting *United States v. Lee*, 455 U.S. 252, 261 (1982)). The Court refused to accept that statement as a categorical exclusion of commercial actors' RFRA claims, noting that the statement, "if taken at face value, is squarely inconsistent with the plain meaning of RFRA." *Id.* at 735 n.43.

*Hobby Lobby* refused to allow the precise facts of pre-*Smith* cases, or isolated language from those cases, to serve as the basis for excluding whole categories of claims from RFRA in contradiction of the plain text. The Court there rejected a categorical exclusion of claims by commercial actors. Nor should there be a categorical exclusion of claims by Native Americans to use their sacred sites on government land when—as in this case—the denial of that use would impose a "substantial burden" within the plain meaning of that term.

### B.    RFRA Should Be Interpreted the Same as Its "Sister Statute" RLUIPA, for Which this Court Properly Applies the More Realistic, Flexible Definition.

As all agree, the definition of "substantial burden" under RLUIPA is not the same as the restrictive definition that the panel said governs under RFRA. Rather, RLUIPA cases follow the phrase's plain, ordinary meaning: any "'significantly great' restriction or onus on 'any exercise of religion'" triggers RLUIPA's application. *San Jose Christian Coll.*, 360 F.3d at 1034-35. *Accord* Panel Op. 29-

30 (majority); *id.* at 68-71 (dissent). The RLUIPA rule further shows why a restrictive definition for RFRA is erroneous.

The Supreme Court has made clear that courts should apply "'the same standard'" when analyzing RFRA and RLUIPA. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006)).[5] This is because RFRA and RLUIPA are "sister statute[s]" both enacted "'in order to provide very broad protection for religious liberty.'" *Holt*, 574 U.S. at 356-57 (quoting *Hobby Lobby*, 573 U.S. at 693); *see also Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022). As explained in *Holt*, 574 U.S. at 356-58, both statutes were responses to the Supreme Court's narrowing of free exercise rights in *Employment Division v. Smith*, 494 U.S. 872 (1990); and RLUIPA reimposed RFRA's standard in certain cases after the Supreme Court struck down RFRA's application to state and local laws in *City of Boerne v. Flores*, 521 U.S. 507 (1997).

Likewise, at least six other circuits have concluded that the substantial burden standard is the same under both statutes. *See*, *e.g.*, *Mack v. Warden Loretto*

---

[5] Thus *Holt*, which interpreted RLUIPA, quoted and followed *O Centro* and *Hobby Lobby*, which interpreted RFRA. In turn, *O Centro*, 546 U.S. at 436, quoted and followed a decision under RLUIPA, *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005). Because the Supreme Court treats key concepts as interchangeable when they appear in RFRA and RLUIPA, this Court should do likewise.

*FCI*, 839 F.3d 286, 304 n.103 (3d Cir. 2016) ("[T]he two statutes are analogous for purposes of the substantial burden test."); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 264 n.64 (5th Cir. 2010) (referring to "the same 'substantial burden' question under RLUIPA" and RFRA); *Korte v. Sebelius*, 735 F.3d 654, 682-83 (7th Cir. 2013) (holding that RFRA and RLUIPA have the "same understanding" of substantial burdens); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) ("[T]he same definition of 'substantial burden' applies under the First Amendment, RFRA and RLUIPA."); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 n.13 (10th Cir. 2013) ("Congress intended the substantial burden tests in RFRA and RLUIPA to be interpreted uniformly."); *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1181 n.23 (11th Cir. 2016) ("[B]oth statutes impose the same standard for substantial burdens of religious exercise.").

Finally, applying a more restrictive definition of "substantial burden" for RFRA claims leads to absurd results. Giving RLUIPA a broader definition than RFRA means that "prisoners (governed by RLUIPA) enjoy greater religious freedom than law-abiding Native Americans."  Pl-Appellant Br. Supp. Reh'g En Banc [Doc. No 91-1] at 10. Courts should not generate such a discrepancy unless the relevant texts require it. Here the texts of RFRA and RLUIPA point exactly the other way: they are materially identical.

Thus, this Court should apply the same definition of "substantial burden" to RFRA claims that it applies to RLUIPA claims. And because both statutes are generally meant "to provide very broad protection for religious liberty," *Holt*, 574 U.S. at 356; *Hobby Lobby*, 573 U.S. at 693, that uniform definition should follow the phrase's ordinary, flexible meaning rather than a restrictive, rigid one.

## II. THE RESTRICTIVE DEFINITION OF "SUBSTANTIAL BURDEN" UNDERMINES RFRA'S PURPOSES BY MAKING THE STATUTE INAPPLICABLE IN CORE CASES THAT CONGRESS CLEARLY MEANT TO COVER.

The panel's restrictive definition of "substantial burden" directly undermines RFRA's purposes. If the burdens that trigger RFRA's protections are limited to the "two—and only two—circumstances" identified by the panel (Op. 25), the statute will be inapplicable in many cases where Congress clearly meant it to apply.

In *Tanzin v. Tanvir*, 141 S. Ct. 486, the Supreme Court unanimously read RFRA to avoid interpretations that would prevent the statute from giving relief in certain important cases of religious exercise. The Court held that money damages against federal officials were "appropriate relief" under RFRA in part because they were "the *only* form of relief that can remedy some RFRA violations." *Id.* at 492 (emphasis in original). "[I]t would be odd," the Court reasoned, "to construe RFRA in a manner that prevents courts from awarding such relief." *Id.*

Here, the restrictive definition of "substantial burden" prevents RFRA from providing relief not only in cases involving Native American sacred sites on

government land, but also in several other contexts, including challenges to religiously burdensome autopsies, prison regulations, and land-use restrictions.[6]

As the panel dissent noted, in all these contexts, as with Native American sacred sites, "the government controls access to religious locations and resources." Panel. Op. 62 (citing Stephanie Hall Barclay and Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1301 (2021)). Therefore, in each context the government need not deny a benefit or impose a penalty in order to burden religion. "By simply preventing access to religious locations and resources, the government may directly burden religious exercise." *Id.* at 62.

This section explains how the panel's restrictive definition of "substantial burdens" erroneously undercuts RFRA's coverage in each of these core contexts. For the same reasons, it is erroneous to apply the restrictive definition to Native American claims to access their sacred sites.

**A.  The Restrictive Standard Excludes Relief for Claims at the Core of RFRA's Purposes.**

**1.  *Religious Objections to Autopsies.***

In enacting RFRA, Congress noted that after *Smith*, courts were rejecting religious objections by individuals to the performance of autopsies on their family

---

[6] Two of these contexts, autopsies and prison regulations, are the very ones in which *Tanzin* said that RFRA should provide effective relief. 141 S. Ct. at 492.

members. S. Rep. No. 103-111, *Religious Freedom Restoration Act of 1993*, at 8 (July 27, 1993) (hereinafter "Senate Report") ("'Since *Smith* was decided, governments throughout the U.S. have run roughshod over religious conviction. . . . Jews have been subjected to autopsies in violation of their families' faith.'") (quoting testimony of Rev. Oliver S. Thomas); *see, e.g.*, *Yang v. Sturner,* 750 F. Supp. 558 (D.R.I. 1990) (Hmong claimants); *Montgomery v. County of Clinton,* 743 F. Supp. 1253 (W.D. Mich. 1990) (Jewish claimants).

This category of cases played an important role in RFRA's passage. In the Supreme Court's words, "[m]uch of the discussion" about the need for RFRA "centered upon anecdotal evidence of autopsies performed on Jewish individuals and Hmong immigrants in violation of their religious beliefs." *City of Boerne*, 521 U.S. at 530-31. The Court cited four witness statements in the House, three in the Senate, and both the House and Senate committee reports. *Id.* at 531. "[I]t was plain to anyone who attended the hearings in either house that the committee members were moved by these cases and meant to subject them to the Act." Douglas Laycock and Oliver Thomas, *Interpreting the Religious Freedom Restoration Act*, 73 Tex. L. Rev. 209, 229 (1994).

*Tanzin v. Tanvir* confirmed that autopsies are among the cases in which RFRA's purposes require that the statute give effective relief. 141 S. Ct. at 492.[7] The government may show a compelling reason for an autopsy—some particularized suspicion concerning the circumstances of a death—but Congress plainly meant to require that showing.

Yet individuals with religious objections to government-mandated autopsies will likely not fit into either category in the panel's restrictive definition of "substantial burden." Submission to the state's decision to perform an autopsy is not a condition placed upon family members' "recei[pt of] a governmental benefit," Panel Op. 25. Nor does the government coerce the family to permit an autopsy "by the threat of criminal or civil sanctions." *Id.* The government simply performs the autopsy, overlooking or dismissing any objection based on the family's religious beliefs.

The decedent's body in the autopsy cases is in the government's hands, as are Native American sacred sites. The medical examiner can impose a substantial burden on the religion of family members, without penalizing them, simply by invading the decedent's body—just as the federal government can substantially

---

[7] The panel simply dismissed the idea that there is any force in *Tanzin*'s "choice of lower-court cases to cite." Panel Op. 42. But the Court's choice also reflects that these cases were unquestionably within the core purposes of RFRA at its time of enactment.

15

burden the religion of Native American practitioners, without penalizing them, by destroying their sacred sites.

2. ***Prisoner Claims and Religious Property or Resources.***

In enacting RFRA and RLUIPA, Congress was also highly cognizant of the need to protect the religious freedom of prisoners. RLUIPA, of course, was enacted specifically to reimpose the restrictions of RFRA on state and local prisons after the Supreme Court in *City of Boerne*, 521 U.S. 507, struck down RFRA's application to state and local governments.

Prisons present another context where government can pervasively burden religious exercise because it controls individuals' access to resources necessary to their religious practice. In prisons, "the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise." *Cutter*, 544 U.S. at 720-21; *see* 146 Cong. Rec. 16698, 16699 (2000) (joint statement on RLUIPA by Sens. Hatch and Kennedy, lead co-sponsors) ("Institutional residents' right to practice their faith is at the mercy of those running the institution."). Congress has "protect[ed] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721.

As a result, prison officials can often make a prisoner's religious exercise impossible, without imposing sanctions on the prisoner, simply by declining the necessary resources for religious practice. And RFRA's background indicates that these cases fit within the statute's core purposes. Take, for instance, the following examples:

1.    Muslim, Jewish, or other prisoners may need to receive specific meals to comply with their faiths. This Court and others regularly hold that prisons' failure to provide such meals constitutes a substantial burden. *See*, *e.g.*, *Jones v. Carter*, 915 F.3d 1147, 1149-51 (7th Cir. 2019) (holding that failing to provide halal meat is a substantial burden on an inmate's exercise of religion); *Haight v. Thompson*, 763 F.3d 554, 564-65 (6th Cir. 2014) (holding the same in regards to specific foods for Native American ritual); *McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987) (denying Kosher meals is evidence of a violation of the First Amendment, U.S. Constitution). During Congress's consideration of RFRA itself, coverage of claims for religious meals figured prominently, receiving four different mentions in the key nine-page Senate debate over RFRA's coverage of prisoners. *See* 139 Cong. Rec. S14462, S14467, S14468 (daily ed. Oct. 27, 1993).

2.    Prisoners may need access to a particular space in order to worship or conduct rituals. This Court and others regularly hold that denial of such access is a substantial burden. *See*, *e.g.*, *Yellowbear v. Lampert*, 741 F.3d 48, 53, 56 (10th Cir.

17

2014) (holding that it is a substantial burden when a prison declines to escort a Native American inmate to a sweat lodge); *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988-89 (9th Cir. 2008) (holding the same when a prison declines to escort inmate to group worship services); *Nance v. Miser*, 700 F. App'x 629, 632 (9th Cir. 2017) (same when prison declines to allow purchase of prayer oils). Well before RFRA, the Supreme Court held that a Buddhist prisoner who alleged that he was denied access to the prison chapel, among other things, stated a claim for a denial of free exercise under the First and Fourteenth Amendments. *Cruz v. Beto*, 405 U.S. 319, 320, 322 (1972) (per curiam). The Senate committee report on RFRA cited *Cruz* as the example of prisoners' "right to freely exercise their religions," which the statute aimed to protect. Senate Report, *supra*, at 8 n.22.

3.     Prison officials sometimes confiscate or destroy inmates' religious property. *See*, *e.g.*, *DeMarco v. Davis*, 914 F.3d 383, 389-90 (5th Cir. 2019) (seizing religious books); *Harris v. Escamilla*, 736 F. App'x 618, 620 (9th Cir. 2018) (damaging a copy of the Qur'an); *see also Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) (flushing Qur'ans down toilet), *vacated on other grounds and remanded*, 555 U.S. 1083 (2008). The Supreme Court in *Tanzin* described such cases, along with religiously burdensome autopsies, as "violations" for which RFRA should provide effective remedies. 141 S. Ct. at 492 (citing *DeMarco*, 914 F.3d at 390).

4.     Most recently, the Supreme Court held that a death-row inmate is entitled under RLUIPA to have a spiritual advisor pray aloud with him and touch him during the lethal injection. *Ramirez*, 142 S. Ct. at 1280-81. In that case, only the spiritual advisor, not Ramirez, would have faced prison penalties or sanctions barring him from the chamber or penalizing him for misbehavior.  *See id.* at 1274. The only harm to Ramirez was that he could not have his pastor present. Nevertheless, it was undeniable that "Texas's policy substantially burden[ed] [Ramirez's] exercise of religion" because "he will be unable to engage in protected religious exercise in the final moments of his life." *Id.* at 1278, 1282.

In none of the above cases is a prisoner presented with a choice between fidelity to his religious convictions and a governmental benefit, nor is he coerced to act contrary to his religious beliefs under threat of a penalty. Rather, the government simply prevents the prisoner from practicing his faith because officials control the resources essential to his practice and deny access to those resources.

The same is true here: the government will prevent Native Americans from practicing their faith, not because it denies them a benefit or imposes a penalty, but rather because it controls access to their essential sacred sites and is about to take action that will destroy those sites. The restrictive definition of "substantial burden" erroneously excludes both prisoner claims and Native American claims.

### 3. *Land-use Regulations Substantially Limiting Religious Buildings.*

Finally, RFRA also had the clear purpose of preventing unnecessary governmental interference with the use of land by religious organizations. The Supreme Court in *City of Boerne* noted that RFRA's legislative record focused not only on autopsies, but "on zoning regulations and historic preservation laws . . . which, as an incident of their normal operation, have adverse effects on churches and synagogues." 521 U.S. at 530-31 (citing seven witnesses' hearing testimony and both Senate and House reports). The legislative record frequently asserted that RFRA was needed to prevent municipalities from burdening religion by excluding houses of worship from a significant range of locations. *See*, *e.g.*, Senate Report, *supra*, at 8 (citing, as one example of *Smith*'s negative effects, that "[c]hurches have been zoned even out of commercial areas" (internal quotation marks omitted)).

Such restrictions can have a severe effect on the exercise of religion, as this Court and others have recognized. For example, in *International Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067-69 (9th Cir. 2011), this Court held that the city imposed a substantial burden under RLUIPA by denying a church's application to rezone its parcel of land in order to construct a church building. The court recognized that the right to "a place of worship . . . consistent with . . . theological requirements" is "at the very core of the free

20

exercise of religion." *Id.* at 1069 (internal quotation marks omitted); *see also Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 981-82, 987-89 (9th Cir. 2006).

But the restrictive definition of "substantial burden" followed by the panel here would likely exclude many circumstances that Congress intended to be covered by RFRA and RLUIPA. In general, neither the denial of a zoning permit nor a government prohibition on certain land uses compels a choice between "following the tenets of their religion and receiving a governmental benefit," Panel Op. 25. Such situations involve no governmental benefit, nor is the religious organization presented with any choice. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007) ("When a municipality denies a religious institution the right to expand its facilities . . . the renovation simply cannot proceed.").

Likewise, in many cases of land-use regulations, the church or religious organization is not "coerce[d] to act contrary to [its] religious beliefs by the threat of civil or criminal sanctions," Panel Op. 25. The denial of an organization's zoning application does not necessarily involve any civil or criminal sanctions. And although the denial may cause a religious organization to change its behavior—for example, to find a new site to build on or stop plans to build altogether—it does not necessarily coerce it to act contrary to its beliefs. In many

cases, a congregation cannot show that its beliefs require it to locate in any particular place.

The land-use cases, like the autopsy and prison cases, show that the restrictive definition of "substantial burden" undercuts RFRA's purposes. For the same reasons, it is error to apply the restrictive definition to bar claims by Native Americans when government prevents them from worshiping at their sacred sites.

**B.** **It Is No Answer to Say That RLUIPA Protects Claims Concerning Prisons and Land-Use Regulations.**

The panel majority essentially accepted that its restrictive definition of "substantial burden" would deny relief in many prison and land-use cases. Panel Op. 28-30. But it said that this presented no problem because those cases are covered by RLUIPA, which has the broader, more flexible definition. *Id.* at 29-30 (refusing to "equate[ ] the two contexts covered by RLUIPA—prisons and local land regulation—to situations involving 'Native American sacred sites on government land,'" which are covered solely by RFRA, and arguing that RLUIPA caselaw "casts no doubt on how *Navajo Nation* defined that term as to RFRA").

That response is far off base, however, for the following three reasons:

1.     First, as already discussed, RFRA and RLUIPA are parallel statutes employing virtually identical language. Their common terms should have the same definition. *See supra* pp. 9-12.

22

2.    Moreover, the question in this case is not what RLUIPA does now, but what RFRA's "plain meaning [was] at the time of [its] enactment." *Tanzin*, 141 S. Ct. at 491; *see also Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("As usual, our job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'"). At that time, RLUIPA did not exist; RFRA alone covered prisoner and land-use claims against all levels of government. A narrow RFRA standard that undermines that coverage misinterprets the meaning of RFRA "as of the time of [its] enactment," *Tanzin*, 141 S. Ct. at 491. The fact that Congress later enacted RLUIPA does not cure the misinterpretation of RFRA.

3.    Even today, RFRA provides the only statutory protection for some claims—those challenging regulations in federal prisons or land-use actions by the District of Columbia or U.S. territories. That is because "government" as defined in RLUIPA's substantive provisions on land use and "institutionalized persons," 42 U.S.C. §§ 2000cc, 2000cc-1, includes only states and their subdivisions. 42 U.S.C. § 2000cc-5(4)(A) (defining "government" to include "a State, county, municipality, or other governmental entity created under the authority of a State," or any branch or official of such entities, or "any other person acting under color of State law"); *accord Ish Yerushalayim v. United States*, 374 F.3d 89, 92 (2d Cir.

2004) ("RLUIPA clearly does not create a cause of action against the federal government or its correctional facilities.").[8]

Religious freedom claims by inmates in federal or D.C. institutions—which necessarily are RFRA claims—arise regularly. *See*, *e.g.*, *Sabir v. Williams*, 52 F.4th 51 (2d Cir. 2022) (federal prisoners); *Mack*, 839 F.3d 286 (same); *Patel*, 515 F.3d 807 (same); *Kikumura v. Hurley*, 242 F.3d 950, 953 (10th Cir. 2001) (same); *Abdulkadir v. Hardin*, 2021 WL 9406649 (M.D. Fla. Apr. 13, 2021) (immigration detainees); *Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 345-46, 370 (D.N.J. 2004) (same); *Gartrell v. Ashcroft*, 191 F. Supp. 2d 23, 24, 36-37 (D.D.C. 2002) (D.C. prisoners). If RFRA has a higher coverage threshold than RLUIPA, as the panel asserts, then federal prisoners have lesser rights than state prisoners.

Likewise, both the District of Columbia and territorial governments can impose burdensome land-use restrictions, as one prominent early RFRA case shows. *See Western Presbyterian Church v. Bd. of Zoning Adjustment*, 862 F. Supp. 538, 540-41, 547 (D.D.C. 1994) (entering injunction against zoning prohibition of church soup kitchen that had operated safely for 10 years); *see also Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002) (finding that RFRA applies to the territory of Guam).

---

[8] Only for two limited purposes, not applicable here, does RLUIPA's definition of "government" include federal entities. *See* 42 U.S.C. § 2000cc-5(4)(B).

RLUIPA is inadequate to explain prisoner and land-use cases because that statute gives no relief for burdens imposed in federal settings. RFRA was meant to provide the very relief that the panel majority said is provided by RLUIPA. That fact confirms that the panel majority's restrictive reading of RFRA is erroneous.

## III. UNDER ANY PROPER STANDARD, THE DESTRUCTION OF PLAINTIFFS' SACRED SITES IMPOSES A SUBSTANTIAL BURDEN.

### A. The Destruction of Plaintiffs' Sites Imposes a Substantial Burden Under the Plain, Ordinary Meaning.

Under the proper definition, the government's challenged action unquestionably imposes a substantial burden by hindering or oppressing Native American religious exercise to a considerable degree. *See supra* pp. 6-7. In fact, the government action at issue does not merely inhibit or limit the exercise of religion; it outright denies the members of the Apache Stronghold the ability to practice their religion by both effectively barring religious exercise and destroying the site of such religious exercise.

The panel dissent aptly summarized these effects as follows:

As the district court found, the "evidence . . . shows that the Apache peoples have been using Oak Flat as a sacred religious ceremonial ground for centuries." And the Oak Flat location is not fungible with other locations for purposes of the Apaches' religious activities. The Apaches perform ceremonies at Oak Flat because they believe the site to be "a 'direct corridor' to the Creator's spirit."

Panel Op. 78 (Berzon, J. dissenting) (internal citation omitted). Without Oak Flat, the Western Apaches cannot practice their faith.

As the dissent explained, the district court further found that this essential site "'will be all but destroyed to install a large underground mine, and Oak Flat will no longer be accessible as a place of worship.'" *Id.* (internal citation omitted). As the Forest Service itself recognized in its Final Environmental Impact Statement, once mining begins, "[a]rcheological sites cannot be reconstructed," "[s]acred springs would be eradicated," and there will be "[c]hanges that permanently affect the ability of tribal members to use [the site] for cultural and religious purposes." 2 Final Environmental Impact Statement, U.S. Dep't Agriculture ¶ 3.12.4.10 (2021), *available at* https://www.resolutionmineeis.us/ documents/final-eis. Simply put, "[t]he Western Apaches' exercise of religion at Oak Flat will not be burdened—it will be obliterated." Panel Op. 79 (Berzon, J., dissenting) (quoting Order Den. Emergency Mot. Inj. Pending Appeal [Doc. No. 26] at 9, *Apache Stronghold v. United States*, No. 21-15295 (9th Cir. Mar. 5, 2021) (Bumatay, J., dissenting)).

By destroying essential sites for religious practice and barring plaintiffs from accessing these sites, the government action would plainly constitute a substantial burden on their religious exercise.

**B.** **This Case Involves a Substantial Burden Even Under the *Navajo Nation* and *Lyng* Decisions.**

Neither this Court's ruling in *Navajo Nation* nor the Supreme Court's ruling in *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988), requires denying that a substantial burden on religious exercise exists here. This case is factually distinguishable from both *Navajo Nation* and *Lyng*. Neither of them involved the physical destruction of a sacred site: *Navajo Nation* involved pouring recycled wastewater as artificial snow onto the relevant mountain, and *Lyng* involved disturbance to the peace of the site from a nearby logging road. Both decisions emphasized that if—as here—the challenged action *had* involved the physical destruction of sacred sites and objects, the cases would have been quite different. *See Navajo Nation*, 535 F.3d at 1063 (finding no substantial burden where "no plants, springs, natural resources, shrines with religious significance, or religious ceremonies . . . would be *physically* affected" and "no places of worship made *inaccessible*" (emphasis added)); *Lyng*, 485 U.S. at 454 ("No sites where specific rituals take place were to be disturbed.").

Similarly, neither case involved actions that would block the access of Native worshipers to the sacred site. *Navajo Nation* noted that the plaintiffs there still had "virtually unlimited access to the mountain" to "continue to pray, conduct their religious ceremonies, and collect plants for religious use." 535 F.3d at 1063. *Lyng* emphasized that if the challenged action "prohibit[ed] the Indian respondents

27

from *visiting*" the sacred site—as is the case here—it "would raise a different set of constitutional questions." 485 U.S. at 453 (emphasis added).

*Navajo Nation* also is distinguishable because it is far from clear that the opinion there strictly limited "substantial burden" to the two categories of denials of benefits and imposition of sanctions. In fact, *Navajo Nation* said that those two categories merely set a minimum for the degree of oppression necessary to constitute a substantial burden. 535 F.3d at 1070 ("Any burden imposed on the exercise of religion *short of* that described by *Sherbert* and *Yoder* is not a 'substantial burden' within the meaning of RFRA." (emphasis added)).

But if *Navajo Nation* does restrict the definition of "substantial burden" to the two categories stated by the panel majority, then *Navajo Nation* should be overruled. As we have shown, the restrictive definition conflicts with both the plain language and the purposes of RFRA.

## <u>CONCLUSION</u>

This Court should adopt the same definition of "substantial burden" for RFRA cases that it uses for RLUIPA cases. Applying that standard, this Court

should reverse the judgment of the district court and remand for entry of the

preliminary injunction requested by Plaintiffs.

Respectfully submitted.

s/ Miles E. Coleman
*Counsel of Record*
Nelson Mullins Riley & Scarborough, LLP
2 W. Washington St., Fourth Floor
Greenville, SC 29601
(864) 373-2352
miles.coleman@nelsonmullins.com

Thomas C. Berg
Religious Liberty Appellate Clinic
University of St. Thomas
School of Law
MSL 400, 1000 LaSalle Ave.
Minneapolis, MN 55403-2015
(651) 962-4918
tcberg@stthomas.edu

W. Thomas Wheeler
Fredrikson & Byron, P.A.
200 South Sixth St., Suite 4000
Minneapolis, MN 55402-1425
(612) 492-7460
twheeler@fredlaw.com

January 9, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the length limitation of Ninth Circuit R. 29-2(c)(3), concerning *amicus curiae* briefs filed after the Court has voted to rehear a case en banc, because it contains 6,440 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

<u>s/ Miles E. Coleman</u>
Miles E. Coleman

C-1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2023, I electronically filed the foregoing brief with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Miles E. Coleman
Miles E. Coleman

## **APPENDIX**

*Amici* Religious Liberty Law Scholars are:

Thomas C. Berg, James L. Oberstar Professor of Law and Public Policy, University of St. Thomas School of Law (Minnesota).

Alan Brownstein, Professor Emeritus, University of California (Davis) School of Law.

Angela C. Carmella, Professor of Law, Seton Hall University School of Law.

Ronald J. Colombo, Professor of Law and Associate Dean for Distance Education, Hofstra University, Maurice A. Deane School of Law.

Michael J. Perry, Robert W. Woodruff Professor of Law, Emory University School of Law.