No. 21-15295

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

APACHE STRONGHOLD,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA, ET AL.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Arizona
No. 2:21-cv-00050-PHX-SPL (Hon. Steven P. Logan)

## BRIEF *AMICUS CURIAE* OF
## THE MENNONITE CHURCH USA
## AND THE PACIFIC SOUTHWEST MENNONITE CONFERENCE
## SUPPORTING PLAINTIFF-APPELLANT

David T. Raimer
Megan Lacy Owen
Anika M. Smith
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
dtraimer@jonesday.com

*Counsel for* Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1, I certify that

*amici* have no parent corporation and no stock.

*/s/ David T. Raimer*
David T. Raimer

*Counsel for* Amici Curiae
*Mennonite Church USA and*
*Pacific Southwest Mennonite Conference*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTERESTS OF *AMICI* .................................................................1

SUMMARY OF ARGUMENT ...............................................................3

ARGUMENT ..............................................................................4

I. GOVERNMENT ACTION THAT DESTROYS A SINGULARLY IMPORTANT APACHE WORSHIP SITE SUBSTANTIALLY BURDENS THE APACHES' RELIGIOUS EXERCISE UNDER RFRA ..................................................4

    A. The Panel Majority Improperly Limited the Scope of the Substantial Burden Standard ....................................................5

    B. Destruction of Oak Flat Would Impose a Substantial Burden on Apache Religious Exercise ..............................................10

II. RECOGNIZING THE GOVERNMENT'S SUBSTANTIAL BURDEN ON APACHE RELIGIOUS EXERCISE WOULD NOT INVITE LIMITLESS RFRA CLAIMS ............13

CONCLUSION ..........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
611 F.3d 248 (5th Cir. 2010) ...............................................17

*Apache Stronghold v. United States*,
38 F.4th 742 (9th Cir. 2022) ........................................*passim*

*Burwell v. Hobby Lobby*,
573 U.S. 682 (2014)......................................................*passim*

*Capitol Hill Baptist Church v. Bowser*,
496 F. Supp. 3d 284 (D.D.C. 2020)......................................10

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
218 F. Supp. 2d 1203 (C.D. Cal. 2002) ...............................11

*Gonzales v. O Centro Espirita Beneficente Uniao*,
546 U.S. 418 (2006)...........................................13, 14, 15

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*,
326 F. Supp. 2d 1140 (E.D. Cal. 2003) ...............................11

*Haight v. Thompson*,
763 F.3d 554 (6th Cir. 2014) .................................................9

*Holt v. Hobbs*,
574 U.S. 352 (2015)...............................................................6

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
673 F.3d 1059 (9th Cir. 2011) ............................................10

*Johnson v. Baker*,
23 F.4th 1209 (9th Cir. 2022) ...............................................9

*Korte v. Sebelius*,
735 F.3d 654 (7th Cir. 2013) ...............................................17

*Mintz v. Roman Catholic Bishop of Springfield*,
424 F. Supp. 2d 309 (D. Mass. 2006)..................................11

*Navajo Nation v. U.S. Forest Serv.*,
535 F.3d 1058 (9th Cir. 2008) (en banc) ......................*passim*

*Ramirez v. Collier*,
142 S. Ct. 1264 (2022)...........................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*San Jose Christian Coll. v. City of Morgan Hill*,
 360 F.3d 1024 (9th Cir. 2004) ............................................6

*Sherbert v. Verner*,
 374 U.S. 398 (1963)...............................................8, 9, 15

*Tanzin v. Tanvir*,
 141 S. Ct. 486 (2020)........................................................5

*United States ex rel. Zuni Tribe of N.M. v. Platt*,
 730 F. Supp. 318 (D. Ariz. 1990) .................................18

*United States v. Ped*,
 943 F.3d 427 (9th Cir. 2019) ..........................................7

*United States v. Rutherford Cnty.*,
 No. 3:12-0737, 2012 WL 2930076 (M.D. Tenn. July 18, 2012)......................10

*United States v. Zimmerman*,
 514 F.3d 851 (9th Cir. 2007) (per curiam) ......................17

*Wisconsin v. Yoder*,
 406 U.S. 205 (1972)........................................................8, 9

*Yellowbear v. Lampert*,
 741 F.3d 48 (10th Cir. 2014) .....................................6, 15

## STATUTES

42 U.S.C. § 2000bb-1 ...............................................4, 5, 17

## OTHER AUTHORITIES

Stephanie H. Barclay & Mark L. Rienzi, *Constitutional Anomalies
 or As-Applied Challenges? A Defense of Religious Exemptions*,
 59 B.C. L. Rev. 1595 (2018).............................................16

Stephanie H. Barclay & Michalyn Steele, *Rethinking Protections
 for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021) .....................12, 13

Jon W. Bruce & James W. Ely, Jr.,
 The Law of Easements and Licenses in Land ....................................19

Fed. R. App. P. 29 ...........................................................1

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353 (2018) ..........................................................16

Patrick E. Reidy, C.S.C., *Condemning Worship: Religious Liberty Protections and Church Takings*, 130 Yale L.J. 226 (2020).......................11, 12

## INTERESTS OF *AMICI*

*Amici* are the Mennonite Church USA and the Pacific Southwest Mennonite Conference.[1] *Amici* submit this brief to highlight the importance of protecting the religious rights of minority religious groups and land-based religious practices.

The Mennonite Church USA ("MC USA") is the largest Mennonite denomination in the United States, rooted in the Anabaptist movement, and committed to nonviolence, religious liberty, and social justice.

The Pacific Southwest Mennonite Conference ("PSMC") is a community of Mennonite congregations across Arizona and California and an area conference of the MC USA. Its mission is to create Spirit-filled healing community across boundaries, sharing God's love, justice, and peace with each other and with neighbors, including the Apaches.

Mennonites like *amici* have long suffered persecution for their religious beliefs. *Amici* and other Mennonites have thrived in the United States, after fleeing such persecution in other countries, because of the protections this country's laws provide for religious freedom. In the interest of justice, *amici* wish to see those same

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4), *amici* state that no party's counsel authored this brief in part or in whole, and no person (other than *amici*, their members, and their counsel) has contributed money to fund the preparation or submission of this brief.

protections extended to their Native American brothers and sisters who seek to practice their religion on their ancestral lands.

## SUMMARY OF ARGUMENT

The Religious Freedom Restoration Act ("RFRA") protects the religious freedom of all people, including minority religious groups, by requiring the federal government to satisfy strict scrutiny when it imposes a substantial burden on religious exercise. The panel opinion undermined RFRA's protections by holding that the planned destruction of Oak Flat—a sacred site of Native American religious exercise since time immemorial—would not impose such a burden. But under precedents of the Supreme Court, this Court, and other circuit courts, RFRA's substantial burden standard is not so limited. As Apache Stronghold's briefs amply demonstrate, if (as no one disputes) RFRA guards against government action that imposes a penalty or withholds a benefit, then it necessarily applies to conduct that creates an even greater burden by altogether precluding the exercise of religion. Courts routinely recognize such burdens when the claim at issue involves private houses of worship used by other religious traditions. The Apaches' sacred sites should receive similar protection.

In holding otherwise, the panel majority set forth a parade of horribles that would purportedly follow were the Apaches to prevail. But the Supreme Court itself has rejected reliance on these kinds of slippery-slope arguments in the RFRA context. And in any event, the Apaches' historic and persistent religious use of the land at Oak Flat belies any concern that crediting the RFRA claim in this case would

3

subject government land-use decisions to "the personalized oversight of millions of citizens." *Apache Stronghold v. United States*, 38 F.4th 742, 756 (9th Cir. 2022), *reh'g en banc granted, opinion vacated*, No. 21-15295, 2022 WL 16986232 (9th Cir. Nov. 17, 2022).

## ARGUMENT

The planned destruction of Oak Flat would impose a substantial burden on Apache religious exercise because that religious exercise is inherently tied to the sacred place where it occurs. The panel majority was wrong to conclude otherwise by reasoning that the government here has neither imposed a penalty nor withheld a benefit. Nor, as the panel majority concluded, would recognizing the government's substantial burden on religious exercise open the floodgates to RFRA claims or give one sect an effective veto over public land-use determinations.

## I. GOVERNMENT ACTION THAT DESTROYS A SINGULARLY IMPORTANT APACHE WORSHIP SITE SUBSTANTIALLY BURDENS THE APACHES' RELIGIOUS EXERCISE UNDER RFRA.

Congress enacted RFRA "to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby*, 573 U.S. 682, 693 (2014). Recognizing that even neutral laws might nevertheless inhibit the free exercise of religion, Congress provided that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability[.]" 42 U.S.C. § 2000bb-1(a). Under the sole exception to this rule, the government can justify a

substantial burden on religious exercise by demonstrating that the burden satisfies strict scrutiny—that is, it furthers a "compelling governmental interest" through the "least restrictive means" available. *Id.* § 2000bb-1(b)(1)–(2). The Apaches undisputedly exercise their religion at Oak Flat; the dispute here concerns whether Oak Flat's destruction amounts to a "substantial burden" under RFRA. Government action that precludes religious exercise entirely by providing for destruction of the location where it must necessarily occur imposes just such a substantial burden.

### A. The Panel Majority Improperly Limited the Scope of the Substantial Burden Standard.

The panel majority was wrong to reason that Oak Flat's destruction would impose no substantial burden on Apache religious exercise because it involves no denial of a government benefit or imposition of a government penalty. To the contrary, the destruction of Oak Flat would not only substantially burden but prevent entirely the Apaches' religious exercise at that sacred site.

Although RFRA does not define the phrase "substantial burden," decisions of the Supreme Court, this Court, and other federal circuits demonstrate that the destruction of a religious place of worship plainly falls within its scope. The Supreme Court has explained that when RFRA leaves a statutory phrase undefined, courts must apply "the phrase's plain meaning." *Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020). That is true even though a body of judicial precedent had grown up around some terms used in the statute before its enactment. *See Hobby Lobby*, 573

U.S. at 714 ("It is simply not possible to read these provisions as restricting the concept of the 'exercise of religion' to those practices specifically addressed in our pre-*Smith* decisions."). Accordingly, this Court has interpreted the plain meaning of the phrase "substantial burden" in the RLUIPA context, explaining that a burden on religious exercise is "substantial" under that statute when it is "considerable in quantity or significantly great." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks and citations omitted).[2] As then-Judge Gorsuch similarly explained, the government imposes a substantial burden on religious exercise when it "prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief." *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014). That, of course, is exactly what the destruction of Oak Flat would do here.

Nothing in *Navajo Nation v. United States Forest Service*, 535 F.3d 1058 (9th Cir. 2008) (en banc), compels departure from this straightforward conclusion. As

---

[2] As Judge Bumatay explained in his dissent from this Court's order denying a stay pending appeal, both RFRA and RLUIPA use the same "substantial burden" language, and thus, require application of the "same standard." *See* Dkt. 26, Order Denying Injunction Pending Appeal, at 8 n.2, No. 21-15295 (Bumatay, J., dissenting) (quoting *Holt v. Hobbs*, 574 U.S. 352, 258 (2015)); *see also* 38 F.4th at 779 (Berzon, J., dissenting) ("there is no reason to believe that 'substantial burden' means something different under RFRA and RLUIPA"); Dkt. 65, Reply Brief, at 9 n.2 (citing six circuits agreeing that RFRA and RLUIPA impose the same "substantial burden" standard).

Judges Berzon and Bumatay have explained at length, this Court's conclusion in that case is "of little help here." Dkt. 26, Order Denying Injunction Pending Appeal, at 11, No. 21-15295 (Bumatay, J., dissenting). Consider first *Navajo Nation*'s facts. That case involved the government's plan to distribute artificial snow—which included a small amount of recycled wastewater—at a public recreation facility near another Native sacred site. *See Navajo Nation*, 535 F.3d at 1064–65. Such conduct notably did not involve the physical destruction of the site in question: indeed, access to that site "for religious and cultural purposes," including to "pray, conduct . . . religious ceremonies, and collect plants for religious use," could continue "virtually unlimited." *Id.* at 1063. Here, in contrast, the transformation of Oak Flat into a mining crater would completely cut off the Apaches' access to the site, making their exercise of religion a physical impossibility. *Navajo Nation* had no occasion to consider whether this type of objective deprivation of the ability to engage in religious exercise would amount to a substantial burden. *Cf. United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

In any event, the panel majority was wrong to conclude that the legal test articulated in *Navajo Nation* bars this Court from finding that the planned destruction of Oak Flat would impose a substantial burden. According to the panel majority,

under *Navajo Nation*, the government imposes a "substantial burden" under RFRA "in two—and only two—circumstances: when the government 'force[s individuals] to choose between following the tenets of their religion and receiving a governmental benefit' and when then government 'coerce[s individuals] to act contrary to their religious beliefs by the threat of civil or criminal sanctions.'" 38 F.4th at 756–57. The panel majority reasoned that these two types of burdens on religious exercise were the two at issue in Supreme Court precedents codified in RFRA. *See id.* at 757 (citing *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)).

As Judge Berzon argued, *Navajo Nation* does not compel that conclusion. *See* 38 F.4th at 780 (Berzon, J., dissenting). To the contrary, *Navajo Nation* explained that burdens "short of" those described in *Sherbert* and *Yoder* are not "'substantial burden[s]' within the meaning of RFRA." 535 F.3d at 1070. But the complete destruction of a sacred site—which would prohibit the religious exercise in question *entirely*—does not fall "short of" the withholding of unemployment benefits or the imposition of a penalty for violating truancy law. The "denial of access to religious resources may result in a *greater* burden on religious exercise—potentially preventing religious practice altogether—than when it influences religious exercise indirectly by withholding benefits or threatening penalties." 38 F.4th at 780 (Berzon, J., dissenting). In other words, as the Sixth Circuit has explained, "[t]he greater

8

restriction (barring access to the practice) includes the lesser one (substantially burdening the practice)." *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014).

That explanation is consistent with this Court's own explanations and applications since *Navajo Nation*: "Of course, when a regulation outright bans religious exercise, it amounts to a substantial burden." *Johnson v. Baker*, 23 F.4th 1209, 1215 (9th Cir. 2022) (internal quotation marks and citations omitted). And that is why, as Judge Berzon noted, both the Supreme Court and this Court have recognized substantial burdens beyond the specific burdens at issue in *Sherbert* and *Yoder*. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1278 (2022) (concluding prisoner was "likely to succeed" in demonstrating a substantial burden where pastor was not permitted to lay hands on prisoner during execution); 38 F.4th at 779–80 (Berzon, J., dissenting) (discussing cases finding substantial burden). This should not be surprising: to hold otherwise would create a bizarre scenario in which RFRA could preclude the government from imposing a five-dollar fine on the Apaches for attending religious ceremonies at Oak Flat, *cf. Yoder*, 406 U.S. at 208, but have nothing whatsoever to say about the complete denial of access to that location. That cannot be the law.

In light of all this, the substantial burden inquiry should not be limited to whether the government has imposed a penalty or withheld a benefit. Where, as here, the government has imposed a burden *greater* than either of those types of harm,

RFRA's proscription on "substantial" burdens that do not meet strict scrutiny is readily satisfied.

**B.     Destruction of Oak Flat Would Impose a Substantial Burden on Apache Religious Exercise.**

The manner in which courts treat claims involving houses of worship shows that the substantial burden standard necessarily applies beyond the strict dichotomy envisioned by the panel majority. The same logic that protects churches, mosques, and synagogues for purposes of assessing substantial burden ought to apply to the sacred sites of Indigenous peoples.

In particular, this Court and others have recognized the significance of physical location to the free exercise of religion. For many faith communities—including Mennonite communities like these *amici*—"a place of worship . . . is at the very core of the free exercise of religion." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1069 (9th Cir. 2011) (internal quotation marks and citations omitted); *cf. Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 296 (D.D.C. 2020) (finding RFRA violation when a government order "foreclosed the Church's *only* method to exercise its belief in meeting together as a congregation"). Not surprisingly, therefore, courts routinely protect the religious exercise of faith communities by protecting their houses of worship, including by recognizing that the inability to gather in such locations amounts to a "substantial burden" on religious exercise. *See, e.g.*, *United States v. Rutherford Cnty.*, No. 3:12-

0737, 2012 WL 2930076, at *1 (M.D. Tenn. July 18, 2012) (finding city violated RLUIPA by failing to process the certificate of occupancy necessary to open a new mosque); *Mintz v. Roman Catholic Bishop of Springfield*, 424 F. Supp. 2d 309, 321 (D. Mass. 2006) (quoting statement in RLUIPA's legislative history explaining that "[c]hurches and synagogues cannot function without physical space adequate to their needs and consistent with their theological requirements. The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes."); *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 326 F. Supp. 2d 1140, 1151 (E.D. Cal. 2003) (finding the denial of an approved conditional-use permit for a Sikh gurudwara violated RLUIPA), *aff'd*, 456 F.3d 978 (9th Cir. 2006); *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1226 (C.D. Cal. 2002) ("Preventing a church from building a worship site fundamentally inhibits its ability to practice its religion. Churches are central to the religious exercise of most religions. If Cottonwood could not build a church, it could not exist.").

Indeed, in light of this critical tie between religious exercise and physical place, "[w]hen it comes to church takings, courts rarely move beyond the substantial burden on religious exercise, consistently interpreting constitutional and statutory religious liberty protections to prevent condemnation." Patrick E. Reidy, C.S.C., *Condemning Worship: Religious Liberty Protections and Church Takings*, 130 Yale

L.J. 226, 253 (2020). Courts "interpret[] 'religious exercise' in relation to worship and ritual," so that the buildings where congregations worship "cannot be condemned without substantially burdening the faith communities that own them." *Id.* at 252.

Conveying Oak Flat for destruction imposes a substantial burden on the Apaches' religious exercise no less than interference with any other congregation's access to its physical place of worship. The spiritual importance of Oak Flat to the Apaches "cannot be overstated." 1-ER-12. There is an inherent connection between their religious practice and Oak Flat's physical location. *See* 3-ER-374. For the Apaches, Oak Flat is where the Ga'an descend, where the world began, and the place their children must visit in order to continue as a people. *See* 3-ER-363. Because of its sacred significance, the Western Apaches have held religious ceremonies at Oak Flat "[f]or as long as may be recalled." 3-ER-358.

That these sacred rituals happen outside on ancestral land now owned by the government rather than inside a privately owned building should not change this analysis. To hold otherwise ignores the reality that in many cases, "this sacred land now belongs to the government only because it was taken from Indigenous peoples, often by coercive means." Stephanie H. Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1322 (2021). It also creates an "egregious double standard" whereby the law affords "expansive"

protection for the "sacred spaces" of "other religious traditions" and "much narrower" relief "when it comes to Indigenous sacred sites." *Id.* at 1301, 1331. Simply put, the protection RFRA affords to one should apply with equal force the other. *See id.*; *cf. id.* at 1322 (explaining that in a "world in which the government had, through a variety of means, obtained title to the majority of Christian pilgrimage sites in the country, it's hard to believe that courts would so dismissively ignore the need of Christians to continue to access those sacred spaces"). The panel majority's approach fails to afford the Apaches such equal treatment.

## II. RECOGNIZING THE GOVERNMENT'S SUBSTANTIAL BURDEN ON APACHE RELIGIOUS EXERCISE WOULD NOT INVITE LIMITLESS RFRA CLAIMS.

The panel majority feared that recognizing a substantial burden on Apache religious exercise in this case would invite a flood of RFRA claims, subjecting the federal government's land-use decisions to "the personalized oversight of millions of citizens.'" 38 F.4th at 766–67 (quoting *Navajo Nation*, 535 F.3d at 1063). It saw an untenable risk of "giving one religious sect a veto over the use of public park land" and found that "RFRA cannot require the government to satisfy strict scrutiny every time that the government, through the management of its own land, interferes with religion . . . ." *Id.* at 767. But the Supreme Court has rejected the use of "slippery-slope argument[s]" as grounds to deny otherwise valid RFRA claims. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436

13

(2006). And in any event, the nature of the Apaches' interest in Oak Flat should minimize these concerns.

**A.**     As an initial matter, this so-called "practical basis," 38 F.4th at 756, for the panel majority's analysis is misplaced. "The majority's concern[s have] nothing to do with whether the Apaches' religious exercise is substantially burdened and everything to do with how [courts are to] address competing demands for [scarce] resources." *Id.* at 783 (Berzon, J., dissenting). By framing the "question [as] whether there is a 'substantial burden' on the Apaches' religious exercise, and not whether the government has shown a compelling interest in putting the site to a different use," the panel "avoid[ed] a transparent inquiry into the considerations that should determine the allocation of resources for which there are competing demands, one of which is religion-based." *Id.*; *cf. Hobby Lobby*, 573 U.S. at 729 n.37 (explaining that concerns regarding burdens imposed on third parties should be analyzed under RFRA's strict scrutiny, rather than substantial burden, prong).

But even properly situated in the compelling interest analysis, the panel majority's fears are unfounded. They are, after all, hardly novel. In many ways, they "echo[] the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *O Centro*, 546 U.S. at 436. As the Supreme Court has noted, these sorts of "slippery-slope concerns . . . could be invoked in response to any RFRA claim." *Id.* at 435–36. In

enacting RFRA, however, Congress expressly "mandate[ed] consideration" of such claims, and "determined that the legislated test is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." *Id.* at 436 (citation omitted). And the Supreme Court has repeatedly affirmed the "feasibility of case-by-case consideration of religious exemptions," *id.*, while rejecting government rejoinders premised on fears of hypothetical future harms, *e.g.*, *Sherbert*, 374 U.S. at 407 (rejecting as "no more than a possibility" the State's concern that granting the claim would lead to "the filing of fraudulent claims by unscrupulous claimants feigning religious objections to Saturday work" that would "dilute the unemployment compensation fund"). As then-Judge Gorsuch explained, "[i]t can't be the case that the speculative possibility that one exception conceivably might lead to others is *always* reason enough to reject a request for the first exception." *Yellowbear*, 741 F.3d at 62. Instead, courts must assess "requested exceptions . . . on a 'case-by-case' basis, taking each request as it comes: accommodations to avoid substantial burdens must be made until and unless they impinge on a demonstrated compelling interest." *Id.*

As it turns out, there is good reason the Court looks with disfavor on such speculative claims: they frequently fail to materialize. For example, in the wake of the Supreme Court's decision in *Hobby Lobby*, 573 U.S. 682, many predicted "a tidal wave of litigation by an endless line of religious objectors who [would] become

a law unto themselves and strike down government action at every turn." Stephanie H. Barclay & Mark L. Rienzi, *Constitutional Anomalies or As-Applied Challenges? A Defense of Religious Exemptions*, 59 B.C. L. Rev. 1595, 1598 (2018). But as empirical analysis of cases in one federal circuit has subsequently shown, "[c]ontrary to predictions that *Hobby Lobby* would open the floodgates of religious liberty litigation, these cases remain scarce, making up only 0.6% of the federal docket." Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353, 356 (2018). And "successful cases are even scarcer"; fewer than half the plaintiffs in the Tenth Circuit obtained any form of relief. *Id.* at 356, 380; *see also* Barclay & Rienzi, *supra*, at 1599, 1639–44 (demonstrating in a survey of all federal cases that post-*Hobby Lobby*, "expressive claims [remained] much more pervasive than religious claims, both in absolute terms and as a percentage of all reported cases," and that "*Hobby Lobby* does not appear to have significantly changed the government's win rate"). The panel majority offered no reason to believe the result would be any different with respect to its prognostications in the case at hand.

**B.**     Even if the panel majority's slippery slope was legally sound, the nature of the religious exercise here suggests that those concerns are misplaced.

*First*, to prevail on a RFRA claim, a plaintiff must do more than simply show that his religious exercise has been substantially burdened: courts must additionally

"[c]heck[] for sincerity" "to weed out sham claims," *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013), and assess whether the burden is the least restrictive means of furthering a compelling interest, 42 U.S.C. § 2000bb-1(b); *see also United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007) (per curiam) (remanding for a determination of whether the beliefs at issue were sincerely held). Here, the panel majority flagged only one of these safeguards—strict scrutiny—before launching into its parade of horribles. *Cf.* 38 F.4th at 767 (considering only whether "government action swept into RFRA by a more expansive 'substantial burden' definition would survive strict scrutiny"). But the other requirement—sincerity—would preclude many of the hypothetical claims the panel majority posited: it offered no reason to believe there are thousands of potential litigants waiting in the wings with *sincere* religious objections to "[e]very new hiking path, ranger station, or 'Keep Off the Grass' sign in every National Park." *Id.*

In contrast, the record here leaves no room to doubt the sincerity of the Apaches' religious beliefs, a fact illustrated by the duration and continuity of the Apaches' religious exercise at Oak Flat. *See, e.g.*, *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 262 (5th Cir. 2010) (noting consistency of practice as a marker of sincerity); *cf. Zimmerman*, 514 F.3d at 854 (noting reservations as to sincerity in light of inconsistent practice, while reserving possibility that claimants' "beliefs ha[d] changed over time."). The Apaches "have

come together" at Oak Flat "[f]or as long as may be recalled." 3-ER-358; *see also* 3-ER-360 ("Apache religious ceremonies will be held at Oak Flat this Spring, just as similar ceremonies and other religious and traditional practices have been held for a long as long as Apaches can recall."); 3-ER-366 ("For at least a half millennium through to the present day, members of our Tribe have utilized the Oak Flat area for traditional religious ceremonies"). And the purpose for which the Apaches seek to use the land itself is limited, mitigating any concerns that their religious practice would preclude the government from making other land-use decisions across the board. Recognizing a substantial burden in light of this historical record would not subject the federal government's land-use decisions to the "personalized oversight of millions of citizens." 38 F.4th at 766–67. Instead, few claimants could establish such a record of continuous practice at particular sites subject to federal land-use decisions.

Indeed, in the context of Native religious practices occurring on private land, courts have recognized that such ancient and continuous use of the land supports an easement for the purpose of religious exercise. *See, e.g.*, *United States ex rel. Zuni Tribe of N.M. v. Platt*, 730 F. Supp. 318, 322–24 (D. Ariz. 1990). While cases involving federal lands may involve different considerations, the Apaches' religious exercise at Oak Flat—like practices that may otherwise justify treatment as an easement—has been apparent, continuous, and necessary for their use and

enjoyment of the land as a sacred site. *See, e.g.*, Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land §§ 4:2, 4:15. The destruction of Oak Flat by government transfer thus imposes a burden on Apache religious exercise distinct from other claimants who cannot demonstrate the Apaches' prior continuous use. The very characteristics of historical and limited use that permit such easements should allay any concerns that finding a substantial burden in this case would open the floodgates of RFRA litigation.

*Second*, the Apaches' claim is categorically different from the types of claims the panel majority hypothesized. *See* 38 F.4th at 767. This case involves not just any burden on religious exercise—like one potentially posed by a hiking path, ranger station, or sign, *see id.*—but *wholesale destruction* of the place where that practice necessarily occurs. Like the artificial snow in question in *Navajo Nation*, the panel majority's posited land-use decisions would not make Oak Flat "inaccessible." *Navajo Nation*, 535 F.3d at 1063. They likewise would not "deny access to or destroy" a religious site, as Judge Berzon observed. 38 F.4th at 781 (Berzon, J., dissenting). As a result, these hypotheticals do not involve the "objectiv[e] and sever[e] interfere[nce] with a plaintiff's access to religious locations or resources" as would the complete destruction of Oak Flat. *Id*. This difference in kind mitigates any concerns about a proliferation of RFRA claims.

19

## CONCLUSION

The panel majority erred by asking only whether the government here has imposed a penalty or withheld a benefit from the Apaches. The government has imposed a far greater burden than that by conveying Oak Flat for destruction. That action will impose on the Apaches the same kind of substantial burden courts recognize when government action limits access to houses of worship used by other religious traditions. And recognizing that burden in this case will not, as the panel majority feared, invite limitless RFRA litigation. The en banc court should thus reverse the district court's denial of Apache Stronghold's motion for a preliminary injunction.

January 9, 2023                          Respectfully submitted,

                                         */s/ David T. Raimer*
                                         David T. Raimer
                                         Megan Lacy Owen
                                         Anika M. Smith
                                         JONES DAY
                                         51 Louisiana Ave., N.W.
                                         Washington, D.C. 20001
                                         Telephone: (202) 879-3939
                                         Facsimile: (202) 626-1700
                                         dtraimer@jonesday.com

                                         *Counsel for* Amici Curiae
                                         *The Mennonite Church USA and*
                                         *The Southwest Pacific Mennonite*
                                         *Conference*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this *amicus* brief complies with Federal Rule of Appellate Procedure 29(a)(5) and 9th Circuit Rule 32-3(2) as it contains 4,512 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Times New Roman, a proportionally spaced font.

Dated: January 9, 2023
　　　　　　　　　　　　　　*/s/ David T. Raimer*
　　　　　　　　　　　　　　David T. Raimer

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 9, 2023. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: January 9, 2023                    */s/ David T. Raimer*
                                          David T. Raimer