No. 21-15295

───────────────────────

# United States Court of Appeals for the Ninth Circuit

APACHE STRONGHOLD,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Arizona
No. 2:21-cv-00050-PHX-SPL
Hon. Steven P. Logan

**BRIEF OF THE SIKH COALITION AS AMICUS CURIAE IN
SUPPORT OF PLAINTIFF-APPELLANT**

JOSHUA C. MCDANIEL
 *Counsel of Record*
KELSEY BAER FLORES
MATTHEW E. MYATT
PARKER W. KNIGHT III
HARVARD LAW SCHOOL
 RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1(a), the Sikh Coalition certifies that it is a nonprofit organization. It has no parent corporation and no stock, so no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ..................................................................... iii

INTEREST OF AMICUS CURIAE ............................................................ 1

INTRODUCTION ...................................................................................... 2

ARGUMENT ............................................................................................. 5

    I.   In passing RFRA and RLUIPA, Congress sought to robustly protect religious freedom by ensuring judicial review when the government substantially burdens religion. .......................... 5

    II.  The panel majority erred by holding that "substantial burden" in RFRA means something different than it does in RLUIPA. ... 8

        A.  RFRA's prefatory purpose statement doesn't trump its operative text............................................................................. 9

        B.  Congress didn't give the term "substantial burden" a specialized term-of-art meaning........................................... 13

        C.  Applying different substantial burden standards in RFRA and RLUIPA cases would lead to arbitrary results. ............ 17

CONCLUSION ........................................................................................ 22

CERTIFICATE OF COMPLIANCE ....................................................... 24

CERTIFICATE OF SERVICE ............................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulhaseeb v. Calbone,*
　600 F.3d 1301 (10th Cir. 2010) .......................................................... 19

*Ackerman v. Washington,*
　16 F.4th 170 (6th Cir. 2021) ............................................................... 18

*Apache Stronghold v. United States,*
　38 F.4th 742 (9th Cir. 2022) ...................................................... *passim*

*A–Z Int'l v. Phillips,*
　323 F.3d 1141 (9th Cir. 2003) ............................................................. 6

*Bob Jones Univ. v. United States,*
　461 U.S. 574 (1983) ........................................................................... 15

*Bowen v. Roy,*
　476 U.S. 693 (1986) ........................................................................... 15

*Braunfeld v. Brown,*
　366 U.S. 599 (1961) ........................................................................... 15

*Burwell v. Hobby Lobby Stores, Inc.,*
　573 U.S. 682 (2014) ................................................................ 5, 7, 13

*Cantwell v. Connecticut,*
　310 U.S. 296 (1940) ........................................................................... 15

*Cavin v. Michigan Dep't of Corr.,*
　927 F.3d 455 (6th Cir. 2019) ............................................................. 18

*City of Boerne v. Flores,*
　521 U.S. 507 (1997) ........................................................................... 10

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
218 F. Supp. 2d 1203 (C.D. Cal. 2002) ............................................ 20

*Cutter v. Wilkinson*,
544 U.S. 709 (2005) ............................................................................ 7

*Dorman v. Aronofsky*,
36 F.4th 1306 (11th Cir. 2022) ........................................................ 19

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
884 F.3d 560 6th Cir. 2018) ............................................................... 9

*Emp. Div., Dep't of Hum. Res. v. Smith*,
494 U.S. 872 (1990) ...................................................................... 5, 11

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ...................................................................... 14

*Fortress Bible Church v. Feiner*,
694 F.3d 208 (2d Cir. 2012) .............................................................. 19

*Gillette v. United States*,
401 U.S. 437 (1971) ............................................................................ 15

*Goldman v. Weinberger*,
475 U.S. 503 (1986) ............................................................................ 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) .............................................................................. 8

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ................................................................ 12

*Greene v. Solano Cnty. Jail*,
513 F.3d 982 (9th Cir. 2008) ............................................................. 18

*Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*,
456 F.3d 978 (9th Cir. 2006) ............................................................. 19

iv

*Hobbie v. Unemployment Appeals Comm'n*,
    480 U.S. 136 (1987) ............................................................ 15

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ........................................... 9

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ...................................................... 7, 17

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*,
    915 F.3d 256 (4th Cir. 2019) .............................................. 19

*Johnson v. Baker*,
    23 F.4th 1209 (9th Cir. 2022) ............................................ 18

*Johnson v. Robison*,
    415 U.S. 361 (1974) .......................................................... 15

*Kaplan v. City of North Las Vegas*,
    323 F.3d 1226 (9th Cir. 2003) ............................................. 8

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ...................................................... 16

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ............................................... 9

*LeBaron v. Spencer*,
    527 F. App'x 25 (1st Cir. 2013) ......................................... 18

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) ..................................................... 11, 15

*Mack v. Warden Loretto FCI*,
    839 F.3d 286 (3d Cir. 2016) ................................................ 9

*Madison v. Riter*,
    355 F.3d 310 (4th Cir. 2003) ............................................... 9

v

*McCurry v. Tesch*,
738 F.2d 271 (8th Cir. 1984) ............................................................. 21

*McDaniel v. Paty*,
435 U.S. 618 (1978) ........................................................................... 15

*Midrash Sephardi, Inc. v. Town of Surfside*,
366 F.3d 1214 (11th Cir. 2004) .......................................................... 19

*Navajo Nation v. U.S. Forest Serv.*,
535 F.3d 1058 (9th Cir. 2008) .................................................. 9, 13, 22

*O'Lone v. Est. of Shabazz*,
482 U.S. 342 (1987) ........................................................................... 11

*Patel v. U.S. Bureau of Prisons*,
515 F.3d 807 (8th Cir. 2008) ................................................................ 9

*Powell v. City of Long Beach*,
No. 2:16-cv-2966 (C.D. Cal. Apr. 29, 2016).................................... 21

*Sabir v. Williams*,
52 F.4th 51 (2d Cir. 2022) ................................................................... 9

*San Jose Christian Coll. v. City of Morgan Hill*,
360 F.3d 1024 (9th Cir. 2004) .......................................................... 6, 8

*Sherbert v. Verner*,
374 U.S. 398 (1963) ................................................................. *passim*

*Smith v. City of Jackson*,
544 U.S. 228 (2005) ............................................................................. 7

*Sturgeon v. Frost*,
139 S. Ct. 1066 (2019) ....................................................................... 12

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile*,
980 F.3d 821 (11th Cir. 2020) ............................................................ 19

vi

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981) ............................................................. 14

*U.S. Navy Seals 1–26 v. Biden*,
27 F.4th 336 (5th Cir. 2022).................................................. 9

*United States v. Lee*,
455 U.S. 252 (1982) ............................................................. 15

*United States v. Nishiie*,
996 F.3d 1013 (9th Cir. 2021) ............................................... 7

*W. Presbyterian Church v. Bd. of Zoning Adjustment*,
862 F. Supp. 538 (D.D.C. 1994) .......................................... 20

*Washington v. Klem*,
497 F.3d 272 (3d Cir. 2007)................................................ 18

*West v. Radtke*,
48 F.4th 836 (7th Cir. 2022)................................................ 18

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ................................................... *passim*

*World Outreach Conf. Ctr. v. City of Chicago*,
787 F.3d 839 (7th Cir. 2015) ............................................... 19

*Yellen v. Confederated Tribes of Chehalis Rsrv.*,
141 S. Ct. 2434 (2021) ........................................................ 14

*Yellowbear v. Lampert*,
741 F.3d 48 (10th Cir. 2014) ................................................. 4

## Statutes

42 U.S.C. § 2000bb(a)(4)–(5) ................................................... 11

42 U.S.C. § 2000bb(b)(1)................................................... 10, 11

42 U.S.C. § 2000bb-1 ............................................................. 6, 13

Religious Freedom Restoration Act,
    42 U.S.C. § 2000bb *et seq.* ........................................... *passim*

Religious Land Use and Institutionalized Persons Act,
    42 U.S.C. § 2000cc *et seq.* ........................................... *passim*

## Other Authorities

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*
    (2012) ..................................................................... 12

Frederick Mark Gedicks, *"Substantial" Burdens: How Courts May (and
    Why They Must) Judge Burdens on Religion Under RFRA*, 85 Geo.
    Wash. L. Rev. 94 (2017) ................................................. 16

John Washington, *Border Patrol Agents Are Trashing Sikh Asylum-
    Seekers' Turbans*, The Intercept (Aug. 2, 2022) ................. 21

Michael A. Helfand, *Substantial Burdens as Civil Penalties*,
    108 Iowa L. Rev. (forthcoming 2023) ............................... 15

Michael C. Dorf, *Incidental Burdens on Fundamental Rights*,
    109 Harv. L. Rev. 1175 (1996) ........................................ 14

Religious Freedom Restoration Act of 1993,
    139 Cong. Rec. H2356-03 (statement of Rep. Charles Schumer) ....... 6

Religious Freedom Restoration Act of 1993,
    139 Cong. Rec. H2356-03 (statement of Rep. Hamilton Fish) .......... 5

Religious Land Use and Institutionalized Persons Act,
    146 Cong. Rec. E1563 (Sept. 22, 2000) (extension of remarks of Rep.
    Canady) .................................................................. 7

Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for
    Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021) ......... 21

Thomas C. Berg, *Minority Religions and the Religion Clauses*,
    82 Wash. U.L.Q. 919 (2004) ............................................................. 21

## INTEREST OF AMICUS CURIAE[1]

The Sikh Coalition defends the civil rights and liberties of all people, promotes community empowerment and civic engagement within the Sikh community, creates an environment where Sikhs can lead a dignified life unhindered by bias and discrimination, and educates the broader community about Sikhism to promote cultural understanding and create bridges across communities. Ensuring religious liberty for all people is a cornerstone of the Sikh Coalition's work.

The Sikh Coalition submits this brief to urge this en banc court to harmonize how this circuit interprets the "substantial burden" term in RFRA and its sister statute, RLUIPA. By reading the term in both statutes according to its plain meaning, this Court will carry out Congress's intent to ensure the Apaches and other minority religious groups are not left out of RFRA's broad religious freedom protection.

---

[1] All parties have consented to the filing of this brief. *See* 9th Cir. R. 29-2(a). No party's counsel authored this brief in whole or in part, and no person or entity other than amicus curiae or its counsel contributed money intended to fund preparing or submitting this brief.

## INTRODUCTION

In its now-vacated decision, the panel majority doubled down on a strained reading of RFRA. Rejecting a "plain meaning" interpretation of the statute's substantial burden element, the panel reasoned that RFRA addresses government actions that discourage or penalize religious practice but not government actions that outright *prevent* such practice. *Apache Stronghold v. United States*, 38 F.4th 742, 759 (9th Cir. 2022). As a result, the panel greenlighted a federal land transfer that would make a two-mile-wide crater of a site held sacred by the Apache people for centuries.

That ruling is wrong as a textual matter. But worse, it creates a glaring inconsistency in how this circuit interprets RFRA and its sister statute, RLUIPA. Indeed, the panel majority recognized that its interpretation of "substantial burden" in RFRA could not be squared with this circuit's interpretation of parallel language in RLUIPA. *See id.* Even so, the panel brushed the difference aside, reasoning that "[w]hile a 'substantial burden' under RLUIPA is defined by the 'plain meaning' of the phrase 'substantial burden,'" *id.* (citation omitted), RFRA adopted a different, "term of art" meaning, *id.* at 754.

The panel's reasons for adopting different standards for the two statutes are unavailing. First, the panel heavily relied on RFRA's statement of purpose—and RLUIPA's lack of one. But a prefatory purpose statement can't override plain language in a statute's operative text. And even if it could, the panel reads too much into Congress's statement. Its stated purpose was to restore the *compelling interest test* from prior case law, not to limit what counts as a "substantial burden" to the kinds of burdens at issue in earlier cases.

Second, the panel reasoned that Congress must have understood "substantial burden" as a term of art with a meaning different from its plain meaning. But that theory can't explain why, just seven years later when it passed RLUIPA, Congress *sub silentio* dropped the term of art and employed the term in its plain-meaning sense. In any case, the panel's term-of-art theory lacks evidentiary support. Before Congress passed RFRA, the Supreme Court described the burden element of a Free Exercise claim in a multitude of ways. It hardly ever used the term "substantial burden."

Third, the panel attempted to distinguish RLUIPA, reasoning that the land exchange here "involves neither prisons nor local land

3

regulation"—the two areas of government action covered by RLUIPA. *Id.* at 759. But the panel overlooked that RFRA covers those same areas. RFRA applies to all federal action, which means it applies to federal prisons and federal land use restrictions. As a result, the panel's restrictive substantial burden standard for RFRA cases would lead to anomalous results in those overlapping contexts. It would mean, for example, that prisoners in federal custody would fare better than similarly situated prisoners in state custody. That couldn't have been Congress's intent.

Interpreting "substantial burden" according to its plain meaning—as this Court already does under RLUIPA—makes this an easy case. *See Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014) (Gorsuch, J.) (denying "*any* access" to a religious activity "easily" constitutes a substantial burden). Because the land transfer makes it not just burdensome but impossible for the Apaches to practice their religious beliefs at Oak Flat, the transfer imposes a clear substantial burden—just as would a blanket denial of religious diets, meetings, or materials in prison, or a law excluding a religious group from building a church, synagogue, or temple in the land use context. Put simply, there is no

burden more substantial than one that leaves a plaintiff with no ability (and thus no choice) to engage in a core religious activity. *See Apache Stronghold*, 38 F.4th at 784 (Berzon, J., dissenting).

This Court should reject the panel majority's atextual coercion framework and interpret RFRA's "substantial burden" element according to its plain meaning.

## ARGUMENT

## I.   In passing RFRA and RLUIPA, Congress sought to robustly protect religious freedom by ensuring judicial review when the government substantially burdens religion.

Congress enacted RFRA to ensure broad protection of religious believers' right to exercise their faith. Recognizing that many believers were "largely . . . without recourse" after the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), Congress sought to restore (and even expand) the rights and remedies that had been in place before *Smith*. Religious Freedom Restoration Act of 1993, 139 Cong. Rec. H2356-03 (statement of Rep. Hamilton Fish); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 n.3 (2014) (noting that RFRA "provide[s] even broader protection for religious liberty than was available" before

5

*Smith*). In the words of then-Representative Chuck Schumer, RFRA's lead sponsor in the House, RFRA was designed to ensure "maximum religious freedom." 139 Cong. Rec. H2356-03 (statement of Rep. Charles Schumer).

One way RFRA did so was by requiring judicial review whenever the federal government imposes a "substantial burden" on religious belief or practice. 42 U.S.C. § 2000bb-1. But aside from requiring the government-imposed burden to be substantial, Congress placed no limits on what types of burdens would trigger scrutiny.

Although Congress left "substantial burden" undefined, this Court has recognized (in the RLUIPA context) that the term has an "ordinary, contemporary, common meaning." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (quoting *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1146 (9th Cir. 2003)). The term plainly—and simply—refers to any government action "that imposes a 'significantly great' restriction or onus on 'any exercise of religion.'" *Id.* at 1034–35.

Congress carried that meaning forward seven years later when it included the same "substantial burden" language in RLUIPA. *See* 42 U.S.C. § 2000cc *et seq.*; *see also* 146 Cong. Rec. E1563 (Sept. 22, 2000)

6

(extension of remarks of Rep. Canady) ("Section 3(a) [of RLUIPA] applies the RFRA standard to protect the religious exercise of persons residing in or confined to institutions . . . such as prisons . . . ."); *Hobby Lobby*, 573 U.S. at 695 ("[RLUIPA] imposes the same general test as RFRA . . . ."). RLUIPA did not alter RFRA's standard. It contained only two substantive differences—it focused on the prisoner and land use contexts and it shifted the source of Congress's power to pass the Act. *See Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) (in contrast to RFRA, RLUIPA "targets two areas"—land use regulation and prisons—and "invok[es] federal authority under the Spending and Commerce Clauses").

Because "Congress use[d] the same language in two statutes having similar purposes," this Court starts with the "presum[ption] that Congress intended that text to have the same meaning in both statutes." *United States v. Nishiie*, 996 F.3d 1013, 1026 (9th Cir. 2021) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005)). Nothing in RLUIPA suggests Congress sought to adopt a different understanding of "substantial burden" from RFRA. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (RLUIPA's substantial burden provision "mirrors RFRA");

7

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 436 (2006) (RFRA and RLUIPA use "the same standard").

In short, by using the identical, undefined term "substantial burden" in both RFRA and RLUIPA, Congress invoked the term's words in their plain and ordinary sense. This Court's task is thus simple: its "sole function . . . is to enforce [the statute] according to its terms." *San Jose Christian Coll.*, 360 F.3d at 1034 (quoting *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231–32 (9th Cir. 2003)).

## II. The panel majority erred by holding that "substantial burden" in RFRA means something different than it does in RLUIPA.

No one—including the panel majority—disputes that the wholesale destruction of an important and longstanding Indigenous sacred site amounts to "impos[ing] a 'significantly great' restriction or onus" on religious exercise. *Id.* at 1034–35 (citations omitted). Thus, under a plain-meaning approach, the government action here is a clear-cut substantial burden. The panel majority sidestepped that approach, however, by concluding that while RLUIPA uses "substantial burden" in its plain-meaning sense, RFRA does not. *Apache Stronghold*, 38 F.4th at 759. Instead, the panel majority reasoned, RFRA narrows the term to include

8

only burdens like those in *Sherbert* and *Yoder*. *Id.* But the panel majority's reasons for reading the two statutes' identical language differently do not hold up to scrutiny. This en banc court should reject those reasons and read RFRA and RLUIPA in harmony—just as at least eight other circuit courts do.[2]

## A. RFRA's prefatory purpose statement doesn't trump its operative text.

The panel anchored its differential treatment of the two statutes on a statement of purposes in RFRA's preface. *Apache Stronghold*, 38 F.4th at 753 (relying on "RFRA's stated statutory purpose"); *accord Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc) (same). That statement explains that RFRA sought "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S.

---

[2] *See, e.g.*, *Sabir v. Williams*, 52 F.4th 51, 60 & n.5 (2d Cir. 2022) (applying RLUIPA's substantial burden precedent to a RFRA claim); *U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) (per curiam) (same); *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 587 (6th Cir. 2018) (same); *Korte v. Sebelius*, 735 F.3d 654, 682–83 (7th Cir. 2013) (same); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 & n.13 (10th Cir. 2013) (same); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (same); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 n.103 (3d Cir. 2016) (same) ("[T]he two statutes are analogous for purposes of the substantial burden test."); *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003) (RLUIPA "reinstate[d] RFRA's protection against government burdens" and "mirror[s]" its provisions).

398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). It mattered to the panel that RFRA mentions *Sherbert* and *Yoder* but RLUIPA does not. *See Apache Stronghold*, 38 F.4th at 759 ("[U]nlike RFRA, RLUIPA's text does not even mention, much less cite, either *Sherbert* or *Yoder*."). The panel viewed this distinction as "*Navajo Nation*'s key inference." *Id.*

But RLUIPA didn't cite *Sherbert* or *Yoder* in its statement of findings and purposes like RFRA did for a simple reason: RLUIPA doesn't *have* a statement of findings and purposes. Nor is the absence of such a statement remarkable. One would expect Congress to have described its findings and purposes in RFRA—a pathbreaking religious freedom statute that enshrined the compelling interest test for government-imposed burdens on religion into statutory law. But not so with RLUIPA. There, Congress was merely *reapplying* RFRA's mandate to states and localities in two contexts after the Supreme Court limited RFRA's scope to the federal government in *City of Boerne v. Flores*, 521 U.S. 507, 512 (1997). For that reason, virtually every word of RFRA's findings and

purposes applies equally to RLUIPA. *See* 42 U.S.C. § 2000bb. Little can be read into Congress's decision not to repeat itself.

Even if RFRA's purpose statement did some work here, it wouldn't do what the panel majority says it does. The statement refers only to the *Sherbert*/*Yoder* "compelling interest test," not any supposed substantial burden standard from those cases. *Id.* § 2000bb(b)(1). And that makes sense. Congress passed RFRA in the wake of a string of Supreme Court decisions—culminating in *Smith*—that virtually eliminated the compelling interest standard in free exercise cases. *See Smith*, 494 U.S. 872; *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988); *O'Lone v. Est. of Shabazz*, 482 U.S. 342 (1987); *Goldman v. Weinberger*, 475 U.S. 503, 504 (1986). In response, RFRA sought to restore *that* standard as it had been set forth in *Sherbert* and *Yoder*. 42 U.S.C. § 2000bb(b)(1); *see id.* § 2000bb(a)(4)–(5) (RFRA finding that "the compelling interest test as set forth in prior [f]ederal court rulings is a workable test"). Though the panel majority tethered its entire substantial burden analysis to the mention of *Sherbert* and *Yoder* in RFRA's prefatory statement, RFRA's text is plain that Congress wanted to hold

11

governments to the task of showing a compelling and narrowly tailored interest, not to freeze in time what constitutes a substantial burden.[3]

What's more, the panel majority also used nonbinding language in RFRA's preface to supplant express terms in the statute's main text. But it's well-established that "an expression of specific purpose in [a statute's] prologue will not limit a more general disposition that the operative text contains." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 219 (2012). Both this Court and the Supreme Court have been clear on this point. *See, e.g.*, *Sturgeon v. Frost*, 139 S. Ct. 1066, 1086 (2019) ("[S]tatements of purpose, . . . by their nature, 'cannot override a statute's operative language.'" (quoting Scalia & Garner, *supra*, at 220)); *Gonzalez v. Google LLC*, 2 F.4th 871, 889 (9th Cir. 2021) ("Preambles and prefatory language are insufficient to alter the substance of the phrases they precede . . . .").

_____

[3] Notably, no court has applied the panel majority's freezing-in-time interpretation to limit the kinds of *compelling interests* that could justify burdening religious practice to just those recognized in *Sherbert* and *Yoder* (or other pre-*Smith* cases)—despite RFRA's stated intent to restore the compelling interest test from those cases. Nor would it make sense to do so. Reducing RFRA's broad protections to an "ossified" understanding of pre-*Smith* precedent would be "absurd." *Hobby Lobby*, 573 U.S. at 685; *see also id.* at 706 n.18.

Here, RFRA's plain text provides broad relief for anyone whose religious exercise is substantially burdened by the government. *See* 42 U.S.C. § 2000bb-1. Its operative text does not mention *Sherbert* or *Yoder*, and nothing in that text even hints that the term "substantial burden" should be confined to the burdens at issue in those cases. *See id.*

At bottom, "[w]hen Congress wants to link the meaning of a statutory provision to a body of [Supreme Court] case law, it knows how to do so." *Hobby Lobby*, 573 U.S. at 714. It did not do so here.

## B. Congress didn't give the term "substantial burden" a specialized term-of-art meaning.

The panel majority (and *Navajo Nation*) also reasoned that Congress used the term "substantial burden" as a term of art. *See Apache Stronghold*, 38 F.4th at 754–55 (reasoning that Supreme Court cases "mandate" a "settled definition of a 'substantial burden' in the Free Exercise context"); *see also Navajo Nation*, 535 F.3d at 1074–75. But the evidence that the term had acquired a "settled meaning" at odds with its plain meaning falls far short. *Apache Stronghold*, 38 F.4th at 755.

To be sure, statutory language can be read as a term of art, but "only when the language was used in that way at the time of the

statute's adoption." *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2445 (2021). And it must be clear that Congress meant to invoke that understanding. Courts do not "ordinarily imbue statutory terms with a specialized . . . meaning when Congress has not itself invoked" one. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2365 (2019).

Here, nothing in RFRA's text or legislative history suggests Congress understood "substantial burden" as a term of art restricted to the types of burdens at issue in *Sherbert* and *Yoder*. Far from it, in fact. To begin with, neither *Sherbert* nor *Yoder* even used the term "substantial burden." *See Sherbert*, 374 U.S. at 403–06 (using the terms "incidental burden," "burden," and "substantial infringement" interchangeably); *Yoder*, 406 U.S. at 214, 218 ("impinges, "impact[s]," "substantially interfer[es]"); *see* Michael C. Dorf, *Incidental Burdens on Fundamental Rights*, 109 Harv. L. Rev. 1175, 1213–14 (1996) (noting how *Sherbert* "provides little guidance for the substantiality inquiry" and that *Yoder* is "equally unilluminating"). Other cases used the variation "substantial pressure." *See Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981); *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S.

14

136, 141 (1987) (quoting *Thomas*). As might be expected of a concept

that hadn't crystallized into term-of-art status, courts routinely framed

the concept in their own words.[4]

    Only two pre-RFRA decisions in fact used the term "substantial

burden." *See Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989); *Jimmy

Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384–85 (1990)

(quoting *Hernandez*); *see also* Michael A. Helfand, *Substantial Burdens

as Civil Penalties*, 108 Iowa L. Rev. (forthcoming 2023) (manuscript at

5) ("[T]he phrase 'substantial burden' rarely appeared in pre-*Smith*

Supreme Court decisions—and when it did, with very little

elaboration."). And the same is still true today. Just recently, the

Supreme Court required a plaintiff to show only a "burden[]" to trigger

---

[4] For other variations, see *Lyng*, 485 U.S. at 465–66 (Brennan, J., dissenting) ("governmental burdens," "religious burdens"); *Bowen v. Roy*, 476 U.S. 693, 706 (1986) ("governmental burden"); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983) ("burden"); *United States v. Lee*, 455 U.S. 252, 257 (1982) ("burdens"); *McDaniel v. Paty*, 435 U.S. 618, 633 (1978) (Brennan, J., concurring) ("burden"); *Johnson v. Robison*, 415 U.S. 361, 387 (1974) (Douglas, J., dissenting) ("impermissible burden"); *Gillette v. United States*, 401 U.S. 437, 462 (1971) ("burden"); *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) ("burden"); *Cantwell v. Connecticut*, 310 U.S. 296, 307 (1940) ("forbidden burden").

review under the Free Exercise Clause. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022).

The judicial record alone is enough to rebut the idea that "substantial burden" was a term of art in 1993. But if not, the congressional record further disproves the theory. For one thing, were substantial burden a specialized term of art, one would expect RFRA's drafts to have consistently reflected as much. But for almost the entire drafting process RFRA simply required a "burden" on religious exercise. *See* Frederick Mark Gedicks, *"Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 Geo. Wash. L. Rev. 94, 118 (2017). The qualifier "substantial" wasn't added until "very late" in the enactment process, after the bill first passed the House. *Id.* So either "substantial burden" didn't have a settled term-of-art meaning or (far less likely) it acquired that meaning in the eleventh hour.

For another, even if "substantial burden" suddenly took on a term-of-art meaning at that late stage, then that settled understanding would have only further solidified by the time RLUIPA was passed seven years later. Yet the panel majority concluded the opposite—that "substantial burden" achieved term-of-art status by 1993 but then

somehow lost that status by 2000. *Apache Stronghold*, 38 F.4th at 759. Such a quick about-face is implausible.

The better explanation is the simpler one: Congress understood "substantial burden" in 1993 the same way it did in 2000. At both times, and in both statutes, Congress used the term according to its plain meaning. *See Holt*, 574 U.S. at 361–62 (using RLUIPA's text alone to interpret "substantial burden"). This Court should do likewise.

### C. Applying different substantial burden standards in RFRA and RLUIPA cases would lead to arbitrary results.

There is yet another problem with the panel majority's approach. By requiring different substantial burden standards under RFRA and RLUIPA—a narrow "coercion" test for RFRA plaintiffs and a more protective plain-meaning test for RLUIPA plaintiffs—the panel majority's approach would lead to strange inconsistencies that Congress didn't intend.

Take the prison context, for example. Say two Muslim prisoners—one in federal prison and the other in state prison—are both denied access to prayer oils. Both have identical claims. But under the panel majority's view, the two cases would reach different outcomes. The federal prisoner would likely lose under RFRA because his substantial burden

claim doesn't involve either the denial of a government benefit or the threat of a government penalty. *See Apache Stronghold*, 38 F.4th at 754. The state prisoner, by contrast, would almost surely prevail. Applying the plain meaning of "substantial burden" in the RLUIPA context, this Court has had "little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008); *see Johnson v. Baker*, 23 F.4th 1209, 1214–16 (9th Cir. 2022) (prison's refusal to provide Muslim inmate with access to prayer oils constitutes a substantial burden because it "prevents [the inmate] from praying according to his faith"). There is no principled basis for treating the two prisoners differently—and certainly not one Congress would have expected.[5]

---

[5] Case law is replete with other examples. *See, e.g.*, *LeBaron v. Spencer*, 527 F. App'x 25, 29 (1st Cir. 2013) (denying an inmate access to a synagogue and "completely barr[ing]" group prayer is a substantial burden); *Washington v. Klem*, 497 F.3d 272, 281 (3d Cir. 2007) (prison policy limiting the number of books in a cell "constitutes a substantial burden which impedes [plaintiff] from exercising his professed religion"); *Ackerman v. Washington*, 16 F.4th 170, 184 (6th Cir. 2021) (preventing access to religiously required food is a substantial burden); *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458–59 (6th Cir. 2019) (prison policy "[b]arring group worship and preventing access to [religious] supplies" is a substantial burden); *West v. Radtke*, 48 F.4th 836, 845 n.3 (7th Cir. 2022) ("A substantial burden might also arise when a prison declines to provide an

Or consider RLUIPA's second application: land use. In that context, RLUIPA prohibits states and localities from not only coercing but excluding religious groups or even just making it harder for them to build a place to worship. *See, e.g.*, *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 989–92 (9th Cir. 2006) (finding a substantial burden where a county's permit denials hindered a Sikh organization's ability to build a temple).[6] If, for example, a local government seizes a Sikh gurdwara by eminent domain, that is a substantial burden under

---

inmate access to something that will allow him to exercise his religion."); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317 (10th Cir. 2010) (denying a Muslim inmate a halal diet constitutes a substantial burden); *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile*, 980 F.3d 821, 830 (11th Cir. 2020) ("complete[] prevent[ion]" of religious exercise is an "example of the sort of conduct that clearly satisfies the substantial-burden standard"); *see also Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) (the coercion-based "formulations are only examples—and not prerequisites—of a substantial burden").

[6] *See also, e.g.*, *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 261–62 (4th Cir. 2019) ("prevent[ing]" or "barr[ing]" church from using a property for religious exercise is a substantial burden); *World Outreach Conf. Ctr. v. City of Chicago*, 787 F.3d 839, 843 (7th Cir. 2015) ("frivolous suit aimed at preventing a religious organization from using its only facility" imposed substantial burden); *Fortress Bible Church v. Feiner*, 694 F.3d 208, 219 (2d Cir. 2012) (substantial burden exists where church faced a "complete denial" and could not construct another "adequate facility to accommodate its religious practice"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (substantial burden includes a regulation that "completely prevents the individual from engaging in religiously mandated activity").

RLUIPA. *See Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1227–28 (C.D. Cal. 2002) (finding substantial burden when locality seized church property to build a Costco in its place). But if the *federal* government does the same and gives the gurdwara to a copper mine, then under the panel majority's view the government gets a free pass under RFRA.

Taken to its logical end, that reasoning means the same land use regulation could be "substantial" in Montgomery County, Maryland (under RLUIPA) but not a mile away in the District of Columbia (under RFRA). *See W. Presbyterian Church v. Bd. of Zoning Adjustment*, 862 F. Supp. 538, 546 (D.D.C. 1994) (applying RFRA to a D.C. land use ordinance and enjoining the ordinance's prohibition of a church soup kitchen). Congress surely did not intend arbitrary differences like these when it adopted the same substantial burden language in RLUIPA that it had used in RFRA.

That arbitrariness is compounded here, because worship at sacred sites like Oak Flat is a unique and central aspect of many Indigenous religions. *See* Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1304–

07 (2021). The destruction of one of those sacred sites is at least as harmful as locking a church—except that churchgoers could open another church elsewhere. *See McCurry v. Tesch*, 738 F.2d 271, 275 (8th Cir. 1984) (locking a church and denying access violates the First Amendment). The destruction of Oak Flat means permanently ending a centuries-old aspect of the Apaches' religious practice.

Beyond this, limiting substantial burdens to *coercive* government conduct would also give broad leeway for the federal government to be more oppressive—particularly towards religious minorities, who often lack the "de facto protection" that comes with political influence. Thomas C. Berg, *Minority Religions and the Religion Clauses*, 82 Wash. U.L.Q. 919, 925 (2004). Just this past summer, federal border patrol agents forcibly removed turbans from dozens of Sikh men seeking asylum, tossing the turbans in a trash pile. John Washington, *Border Patrol Agents Are Trashing Sikh Asylum-Seekers' Turbans*, The Intercept (Aug. 2, 2022), https://perma.cc/J38N-6T97. Muslims have faced similar treatment. *See* Compl., *Powell v. City of Long Beach*, No. 2:16-cv-2966 (C.D. Cal. Apr. 29, 2016), ECF No. 2 (government forcibly removed a woman's hijab); Notice of Settlement, *Powell* (C.D. Cal. June 28, 2017),

ECF No. 34. Because the panel majority's coercion framework does not account for the many ways the government can simply put an end to religious activity, adopting that framework would give the federal government an easy means to evade judicial scrutiny.

These troubling outcomes can be avoided if this Court clarifies that RFRA's and RLUIPA's identical substantial burden language should be read identically—according to its plain meaning.

## CONCLUSION

RFRA and RLUIPA should be read in tandem. The substantial burden language in both statutes protects against more than just the indirect use of "carrots and sticks." *Apache Stronghold*, 38 F.4th at 780 (Berzon, J., dissenting). When read according to its plain and ordinary meaning, it also protects against government action that outright prevents or thwarts religious practice.

This en banc court should reject the panel majority's contrary reasoning (as well as that of *Navajo Nation*) and reverse the district court's rejection of plaintiff's RFRA claim.

Respectfully submitted,

/s/ *Joshua C. McDaniel*
JOSHUA C. MCDANIEL
   *Counsel of Record*
KELSEY BAER FLORES
MATTHEW E. MYATT
PARKER W. KNIGHT III
HARVARD LAW SCHOOL
  RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 29-2(c)(3) because it contains 4,657 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a) because it has been prepared in a proportionally spaced, 14-point Century Schoolbook font.

Dated: January 9, 2023

/s/ *Joshua C. McDaniel*
Joshua C. McDaniel

## CERTIFICATE OF SERVICE

I certify that on January 9, 2023, I served this document on all parties or their counsel of record via CM/ECF.

Dated: January 9, 2023

/s/ *Joshua C. McDaniel*
Joshua C. McDaniel