No. 21-15295

## In the United States Court of Appeals for the Ninth Circuit

APACHE STRONGHOLD,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the District of Arizona
Honorable Steven P. Logan
(2:21-cv-00050-PHX-SPL)

**BRIEF OF *AMICI CURIAE*
PROTECT THE FIRST FOUNDATION AND THE
JEWISH COALITION FOR RELIGIOUS LIBERTY
SUPPORTING PLAINTIFF-APPELLANT**

GENE C. SCHAERR
 *Counsel of Record*
EDWARD H. TRENT
JOSHUA J. PRINCE
MEGAN SHOELL
SCHAERR | JAFFE LLP
1717 K St. NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for* Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici* have no parent corporation and no stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF AUTHORITIES ...................................................... iii

SUMMARY OF ARGUMENT AND INTEREST OF *AMICUS* ................1

ARGUMENT.........................................................................3

I.   This Court Should Hold That Government Action That Makes a Particular Form of Religious Exercise Impossible Imposes a Substantial Burden.........................................................3

II.   If *Navajo Nation* Requires a Different Conclusion, This Court Should Overrule It. ...........................................12

    A. An overbroad reading of *Navajo Nation* would unduly narrow RFRA's text. ...................................13

    B. Any correct interpretation of RFRA would take guidance from RLUIPA precedents. .......................................17

CONCLUSION ..........................................................19

CERTIFICATE OF COMPLIANCE........................................21

CERTIFICATE OF SERVICE.............................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apache Stronghold v. United States*,
    519 F. Supp. 3d 591 (D. Ariz. 2021) ............................................ 10, 11

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ........................................................... 4, 10, 17, 19

*Employment Division v. Smith*,
    494 U.S. 872 (1990) .................................................................... 14

*Espinoza v. Montana Dep't of Revenue*,
    140 S. Ct. 2246 (2020) ................................................................. 6

*Haight v. Thompson*,
    763 F.3d 554 (6th Cir. 2014) ....................................................... 15

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ............................................ 5, 14, 15

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
    141 S. Ct. 2172 (2021) ................................................................. 5

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ................................................................. 7, 17

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
    673 F.3d 1059 (9th Cir. 2011) ............................................. 6, 17, 18

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) .................................................................... 6

*McDaniel v. Paty*,
    435 U.S. 618 (1978) .................................................................... 8

*Navajo Nation v. U.S. Forest Serv.*,
    535 F.3d 1058 (9th Cir. 2008) ............................................. 1, 4, 12

*Ramirez v. Collier*, 142 S. Ct. 1264 (2022) ........................................... 18

*San Jose Christian Coll. v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004) ................................................. 6, 18

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) .................................................................... 13

*Sherbert v. Verner,*
    374 U.S. 398 (1963) ................................................................ 13

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020) ............................................................... 5

*Trinity Lutheran Church of Columbia v. Comer, Inc.,*
    137 S. Ct. 2012 (2017) .............................................................. 6

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ................................................................ 13

*Yellowbear v. Lampert,*
    741 F.3d 48 (10th Cir. 2014) .................................................... 7

**Statutes**

42 U.S.C. § 2000bb-1(a) ................................................... 4, 13, 14

42 U.S.C. § 2000bb-1(b) ......................................................... 4

42 U.S.C. § 2000cc-3(g) ......................................................... 17

**Other Authorities**

Stephanie Hall Barclay & Michalyn Steele,
    *Rethinking Protections for Indigenous Sacred Sites,*
    134 Harv. L. Rev. 1294 (2021) ............................................... 16

Antonin Scalia & Bryan A. Garner,
    *Reading Law: The Interpretation of Legal Texts* (2012) .................... 19

iv

### SUMMARY OF ARGUMENT AND INTEREST OF *AMICUS*[1]

This is a critical case for all people and communities of faith because it raises a fundamental question of what constitutes a "substantial burden" on the "exercise of religion" under the Religious Freedom Restoration Act (RFRA). All agree that, for members of the Apache Stronghold, Oak Flat is a space of paramount and unique religious importance where members of the community have worshipped for centuries. All further agree that the government's transfer of Oak Flat for mining operations will permanently destroy Oak Flat, effectively prohibiting the Apache from engaging in religious worship there ever again. The question is whether these circumstances constitute a "substantial burden" on the Apache's religious exercise. And the answer should be obvious—of course.

Yet despite the obvious answer, the panel erroneously concluded that the Apache will not be "substantially burdened" as defined by RFRA. Because the panel considered itself bound by this Court's decision in *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) (en

---

[1] All parties agree to this brief's filing. No party's counsel authored any part of this brief. No party or party's counsel, or person other than *amici*, contributed money to the brief's preparation.

banc), it applied that case's definition of what constitutes a "substantial burden" under RFRA. *Apache Stronghold v. United States*, 38 F.4th 742, 754–55 (9th Cir. 2022). For reasons more fully addressed by the Appellant, the panel misapplied *Navajo Nation*. Appellant's Br. in Support of Reh'g En Banc at 14–17, Dkt. 93. But, if true that *Navajo Nation* required the result reached here, then this Court should overturn it because it would mean that *Navajo Nation* has adopted an erroneous and unduly narrow understanding of what a substantial burden is—an understanding that cannot be squared with the text or purpose of RFRA or Supreme Court precedent. Indeed, if *Navajo Nation* truly does preclude finding a substantial burden here, it would improperly limit the religious rights of people of faith throughout the Ninth Circuit.

That is why this case is so important to *Amici*. *Amicus* Protect the First Foundation (PT1) is a 501(c)(3) organization dedicated to preserving the religious freedoms that this case implicates. PT1 believes it is important to defend the religious liberty of minority faiths and religious communities like the Apache Stronghold—because the religious liberties of all rise or fall together. *Amicus* the Jewish Coalition for Religious Liberty is an association of American Jews concerned with the

current state of religious liberty jurisprudence. The Coalition aims to protect the ability of all Americans to practice their faith freely and to foster cooperation between Jews and other faith communities. It has filed amicus briefs in the Supreme Court of the United States and federal courts of appeals, published op-eds in prominent news outlets, and established an extensive volunteer network to promote support for religious liberty within the Jewish community.

*Amici* are deeply interested in preventing the harms that would flow from an expansive reading of *Navajo Nation* to people of faith living in the Ninth Circuit. To prevent those harms, this Court should narrowly read *Navajo Nation* and, if necessary, overturn it.

## ARGUMENT

### I. This Court Should Hold That Government Action That Makes a Particular Form of Religious Exercise Impossible Imposes a Substantial Burden.

At bottom, this case asks whether—in a RFRA case—government action that makes the free exercise of a particular religious practice impossible substantially burdens religious exercise. The answer is plainly yes.

1. Under RFRA (like RLUIPA), a claim for governmental interference with religious free exercise has two steps. The first requires the plaintiff to show that the government's actions, even if implemented through a law of general applicability, create a "substantial burden" on the plaintiff's "exercise of religion." *Navajo Nation,* 535 F.3d at 1068. Once a plaintiff carries his burden of showing a substantial burden, the burden then shifts to the government to show that its actions further a "compelling governmental interest" by using the "least restrictive means." 42 U.S.C. § 2000bb-1(b).

Because the government has not even "attempted to satisfy the compelling interest test," *Apache Stronghold*, 38 F.4th at 784 (Berzon, J., dissenting), this appeal turns on the first step. RFRA's text forbids the Government from "substantially burden[ing] a person's exercise of religion *even if the burden results from a rule of general applicability*." 42 U.S.C. § 2000bb-1(a) (emphasis added). The statute neither defines "substantial burden" nor enumerates (or limits) the ways in which a substantial burden might arise. *See id.*; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1130 (10th Cir. 2013) (en banc) (*Hobby Lobby I*), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682

(2014) (*Hobby Lobby II*). When interpreting other statutes, the Supreme Court has repeatedly instructed courts to apply the statute's plain meaning. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2176 (2021) ("Where Congress does not furnish a definition of its own, we generally seek to afford a statutory term its ordinary or natural meaning." (cleaned up)). RFRA is not exempt from that general instruction: The Court has applied that principle to undefined RFRA terms. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020).

2. Since RFRA does not define "substantial burden," this Court should follow the Supreme Court's guidance and apply the ordinary or natural meaning of that term. To do so here would naturally lead to only one conclusion—that government action that makes a particular religious practice impossible, even in the land use context, imposes a substantial burden on religious exercise.

That conclusion is compelled, first, by RFRA's text. By its terms, RFRA's qualification that a "burden" must be "substantial" obviously goes to the *degree* of the burden. Thus, when applying the identical term in a RLUIPA case, this Court has correctly understood the modifier "substantial" to require merely that the government-imposed burden "be

'oppressive' to a 'significantly great' extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (*ICFG*) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). So too with RFRA. Beyond its requirement that a burden on religion be substantial, RFRA does not constrict the origins, forms, or categories of what constitutes a substantial burden.

To be sure, substantial burdens include both direct and "indirect" penalties—that is, putting the religious adherents to some choice as a price for their devotion. But—as Appellant correctly explains, Dkt. 33 at 31—substantial burdens also include "outright prohibitions" on particular forms of religious exercise. *See Trinity Lutheran Church of Columbia v. Comer, Inc.*, 137 S. Ct. 2012, 2022 (2017) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). For example, in the First Amendment context, the Supreme Court has explained that, when the government puts a person "*to a choice* between being religious or receiving government benefits," the sovereign substantially burdens that person's religious exercise. *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2257 (2020) (emphasis added). Similarly, when the government puts a Muslim prisoner to a

choice between shaving his beard or facing discipline, the government's action "easily" constitutes a substantial burden. *Holt v. Hobbs*, 574 U.S. 352, 357, 361 (2015).

But those two examples are merely illustrative. They do not create an exhaustive list of ways the government can substantially burden religion. Sometimes the government—through its actions—makes the free exercise of a particular religious practice impossible. In such circumstances, resolution of the burden question should be even easier. While serving on the Tenth Circuit, then-Judge Gorsuch correctly stated the pertinent principle: Whenever the Government "*prevents* the plaintiff from participating in [a religious] activity," giving the plaintiff no "degree of choice in the matter," that action "easily" imposes a substantial burden on religious exercise. *Yellowbear v. Lampert*, 741 F.3d 48, 55–56 (10th Cir. 2014) (emphasis added). Though *Yellowbear* was a RLUIPA case, nothing in RFRA's text compels a contrary conclusion in RFRA cases. With RLUIPA, as with RFRA, it takes a tortured interpretation of "substantial burden" to conclude that government action that makes an act of worship impossible fails to even implicate RFRA.

In similar settings, Supreme Court precedent recognizes as much. In *McDaniel v. Paty*, for example, the Court recognized that a Tennessee law forbidding religious ministers from serving as delegates to the state constitutional convention imposed a substantial burden on the Free Exercise of a minister's religion. *See* 435 U.S. 618, 629 (1978).[2] This was an outright ban on a particular aspect of the faithful's religious exercise, and the Court thus found that an outright ban on a particular religious practice constitutes a "substantial" burden.

Yet the panel here concluded that the destruction of Oak Flat, the most sacred site of the Western Apache and one where they feel compelled by their religious beliefs to worship regularly, would not substantially burden their religious exercise. The panel defended its conclusion on the ground that in *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988), as in *Bowen v. Roy*, 476 U.S. 693 (1986), the Supreme Court found no "valid Free Exercise claim" because there was no denial of benefits or imposition of penalties because

---

[2] By finding that the Tennessee rule violated the First Amendment, the Court necessarily found a substantial burden on the right protected by the Free Exercise Clause.

of religion. *Apache Stronghold,* 38 F.4th at 755. *Lyng*, however, does not control here for at least two reasons.

*First*, as Appellant explains, Dkt. 33 at 36–37, *Lyng*—a case involving the development of government land *around* religious sites— did not involve the *destruction* of those sites. To the contrary, the route chosen in *Lyng* did not disturb any sites at all, as it included "one-half mile protective zones around all the religious sites." 485 U.S at 443. That difference alone should caution against using *Lyng* as a barrier to finding substantial burdens in cases where religious land is physically destroyed.

*Second*, the *Lyng* majority was interpreting the text of the First Amendment, and not RFRA. In response to Justice Brennan's claim that the First Amendment was "directed against any form of governmental action that frustrates or inhibits religious practice," 485 U.S at 459 (Brennan, J., dissenting), the Court explained that the First Amendment "says no such thing" but instead forbids the government from "'*prohibiting* the free exercise [of religion],'" 485 U.S. at 456.

Whatever *Lyng*'s continuing validity as a matter of constitutional interpretation, its conclusions do not extend to RFRA because of the

plain meaning of the text Congress used. Whereas *Lyng* turned on the First Amendment's use of the word "prohibiting," RFRA's use of "substantially burden" imposes a far broader regulation of government activity. Indeed, as Appellant explained in its brief supporting *en banc* rehearing, "RFRA doesn't 'merely restor[e] … pre-*Smith* decisions in ossified form,' but instead goes 'far beyond what this Court has held' previously." Appellant's Br. in Support of Reh'g En Banc at 2, Dkt. 93 (quoting *Hobby Lobby II*, 573 U.S. at 706, 715). When interpreting RFRA, its plain, broader meaning—and not the Supreme Court's interpretation of different terms in *Lyng*—controls.

3. Affording "substantial burden" its plain meaning, the government's proposed destruction of Oak Flat substantially burdens the free exercise of the Western Apaches. The district court itself found that, to the Western Apache, "Oak Flat [i]s a 'direct corridor' to the Creator's spirit." *Apache Stronghold v. United States*, 519 F. Supp. 3d 591, 604 (D. Ariz. 2021) (citation and subsequent history omitted). This is because, in the district court's words, "Apache individuals pray at [Oak Flat] and speak to their Creator through th[ose] prayers." *Ibid*. Oak Flat, as the district court acknowledged, "embodies the spirit of the

Creator," a corollary of which is that, "without [Oak Flat and everything attending it], specifically [its] plants, because they have that same spirit," the land is "like a dead carcass." *Ibid.* (citation omitted).

If Oak Flat were destroyed, moreover, the record is clear that the Western Apaches could not find a viable substitute in which to commune with the Divine. Appellant's Br. at 9, Dkt. 33. It follows that a destroyed Oak Flat would devastate the Western Apache much like an obliterated Vatican for Catholics, a demolished Kaaba (in Mecca) for Muslims, or a dismantled temple for members of the Church of Jesus Christ of Latter-day Saints. But the burden imposed on the Western Apache would be worse still than even the destruction of religious buildings, because their religion is rooted in the land itself, not just buildings that have been built there. As the district court acknowledged, "Resolution Copper's planned mining activity on the land will close off a portal to the Creator forever and will completely devastate the Western Apache's spiritual lifeblood." *Apache Stronghold*, 519 F. Supp. 3d at 604 (citation omitted).

If the burden that will be imposed on the Western Apache following the destruction of Oak Flat is not "a significantly great restriction or onus upon [religious] exercise," *ICFG*, 673 F.3d at 1067, then nothing is.

Here, as is often the case, the most reasonable interpretation is also the correct one: By permanently, entirely, and irretrievably depriving the Western Apaches of their key place of worship, the Government is substantially burdening their religious exercise.

## II. If *Navajo Nation* Requires a Different Conclusion, This Court Should Overrule It.

Despite RFRA's plain terms, the panel erroneously concluded that, under RFRA, governmental devastation of the Apache's sacred land is *not* a substantial burden on religious exercise. In reaching this conclusion, the panel relied on the conclusion in *Navajo Nation v. United States Forest Service* that the government imposes a substantial burden on religion "only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or [are] coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." 535 F.3d at 1070. Because the government here did not (a) deny any governmental benefits or (b) coerce individuals or institutions via civil or criminal penalties, the panel concluded that the government's actions could not constitute a substantial burden. *See Apache Stronghold*, 38 F.4th at 754–55. For the reasons addressed in Part I, that limited view of what constitutes a substantial burden under

12

RFRA is wrong. And, as shown below, if the Court believes *Navajo Nation* requires that result, this Court should overrule that decision.[3]

### A.  An overbroad reading of *Navajo Nation* would unduly narrow RFRA's text.

Contrary to the suggestion in *Navajo Nation*, Congress did not limit RFRA's "substantial burdens" to the benefit and penalty categories at issue in *Sherbert v. Verner,* 374 U.S. 398 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205 (1972). As discussed above, RFRA's text—the best indicator of its scope, *see Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 n.13 (1985)—states that the government may not "substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a). The breadth of RFRA's text has three pertinent implications that foreclose the panel's approach.

*First*, Congress made clear in RFRA that the compelling interest test in *Sherbert* and *Yoder* applies to substantial burdens on religious

---

[3] Judges Berzon and Bumatay, as well as the Appellant, correctly recognize that *Navajo Nation* can be read to permit courts to find substantial burdens that are more burdensome than the denial of benefits or the imposition of penalties. *Apache Stronghold,* 38 F.4th at 774 (Berzon, J., dissenting); Order at 10–12 (Bumatay, J., dissenting), Dkt. 26; Appellant's Br. in Support of Reh'g En Banc at 15, Dkt. 93.

exercise created by laws of neutral or general applicability. 42 U.S.C. § 2000bb-1(a). RFRA was a response to the Supreme Court's earlier decision in *Employment Division v. Smith*, which had held that such rules were generally exempt from strict scrutiny. 494 U.S. 872, 879 (1990). That RFRA *explicitly* includes "rules of general applicability" as circumstances that can impose substantial burdens strongly suggests that Congress did not limit the meaning of substantial burden to the cases involving penalties or the denial of benefits—the way some argue it was defined in the First Amendment context in *Lyng*. Generally applicable laws, after all, will rarely—if ever—punish someone's religious exercise as such or deprive a person of government benefits for exercising their religion.

*Second*, under RFRA, *how* a substantial burden is imposed is irrelevant. RFRA itself does not attempt to list the ways that the government might substantially burden religious exercise. *See* 42 U.S.C. § 2000bb-1(a); *Hobby Lobby I*, 723 F.3d at 1130. The lack of limiting language forecloses any argument that Congress somehow narrowed the bases for claiming a substantial burden to only the two circumstances set out in *Navajo Nation*. Indeed, as the Tenth Circuit has recognized,

Congress is "quite capable of narrowing the scope of a statutory entitlement," including RFRA's substantial-burden clause, "when it wants to," and it did not do so here. *Hobby Lobby I*, 723 F.3d at 1130.

*Third*, at its very foundation, the panel's analysis—guided by *Navajo Nation*—is logically flawed: While denying someone government benefits or coercing individuals or institutions via civil or criminal penalties will *suffice* to substantially burden a religious exercise, the panel ignores the reality that there are *other* ways, including the governmental plan to have Oak Flat mined into destruction, for religious exercise to be substantially burdened. Certainly "[t]he greater restriction (barring access to [a] practice) *includes* the lesser one (substantially burdening the practice)." *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (emphasis added). So, because a lesser restriction on the *use* of sacred space—such as imposing penalties for its use—would substantially burden a religious practice under RFRA, it necessarily follows that completely denying access to that space must also substantially burden religious practice—even when the burden is not due to the denial of a governmental benefit or to the threat of a penalty.

15

The panel itself highlighted the irony of *Navajo Nation*'s conclusion by acknowledging that "this definition [of substantial burden] contains no exceptions for burdens on religion thought to be quantitatively 'greater' than the burdens in *Sherbert* and *Yoder* or for burdens that neither impose a penalty nor deny a benefit but 'objectively' or 'physically' interfere with religious exercise in an incidental way." *Apache Stronghold,* 38 F.4th at 762. But Congress made it unambiguously clear that the compelling interest test should be applied in *all* cases, such as this one, where the burden on the Apache is substantial and, indeed, quantitatively greater than the prospect of a penalty or the denial of a benefit. *See, e.g.,* Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021). Indeed, as addressed above, the government's action here makes it impossible for the Apache to worship on Oak Flat because "the land over the mine would eventually subside, profoundly and permanently altering the landscape." *Apache Stronghold,* 38 F.4th at 762 (cleaned up). If *Navajo Nation* truly does require the conclusion reached by the panel, then it should be overruled to clear up the logical inconsistency that it—not RFRA—creates.

**B.** **Any correct interpretation of RFRA would take guidance from RLUIPA precedents.**

Further illuminating the panel's error is its failure to follow precedent interpreting RLUIPA. The Supreme Court has made clear that RFRA and RLUIPA should be interpreted consistently. *Holt*, 574 U.S. at 356–57 (a RLUIPA case invoking RFRA cases to apply RLUIPA); *Hobby Lobby II*, 573 U.S. at 695, 729 n.37 (an RFRA case invoking RLUIPA to apply RFRA).

RLUIPA, moreover, provides that the "protection of religious exercise" is to be "maxim[ally]" "broad." 42 U.S.C. §2000cc-3(g). Applying that standard, when a California city denied a church's request to expand its operations on the only suitable space in the city, this Court correctly found this denial to substantially burden the church's religious exercise. *See ICFG*, 673 F.3d at 1066–70 (citation omitted). The Court concluded that what mattered was that the faithful's right to "a place of worship . . . consistent with . . . theological requirements" is "at the very core of the free exercise of religion." *Id.* at 1069–70. This meant that the lack of viable site alternatives for the church's expansion made the permit denial a substantial burden. *See id.* at 1068–69. So too here. The

17

deprivation of the Western Apache's "place of worship . . . consistent with their theological requirements" is dispositive. *Id.* at 1069.

Supreme Court precedent compels a similar conclusion. Last term, in *Ramirez v. Collier*, an RLUIPA case, the Supreme Court found a substantial burden on a prisoner's religious exercise when Texas denied his request to have his pastor place hands on him and pray vocally during his execution even though that situation did not involve either the denial of a benefit or the threat of a penalty. 142 S. Ct. 1264, 1277–78 (2022).

Despite *Ramirez*'s guidance, the panel here declared that these "sister statutes" should be interpreted differently, limiting RFRA to the "*Sherbert/Yoder* framework" while interpreting RLUIPA "by the 'plain meaning' of the phrase 'substantial burden.'" *Apache Stronghold,* 38 F.4th at 759 (quoting *San Jose Christian Coll.*, 360 F.3d at 1034). While RLUIPA does not reference *Sherbert* or *Yoder* like RFRA does, neither statute defines "substantial burden" or provides any statutory text to limit the definition of "substantial burden" beyond its "plain meaning." Even so, the panel, guided by *Navajo Nation*, implausibly concluded that, although Congress used the same term in each statute, the term

18

has a different meaning in RLUIPA cases than in RFRA cases. *Id.* That conclusion departs from both Supreme Court precedent and the presumption of consistent usage, which "applies also when different sections of … [a] code are at issue," particularly where, as here, there is a recognized "connection" between "the cited statute" and "the statute under consideration." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172–73 (2012). Under that settled principle, it is implausible to read "substantial burden" more narrowly in RFRA cases than it is routinely read in RLUIPA cases.

## CONCLUSION

Congress enacted RFRA to "provide very broad protection for religious liberty." *Hobby Lobby II*, 573 U.S. at 693. Under RFRA's plain terms, this Court should find that the government will substantially burden the religious exercise of the Western Apache if it proceeds with its plan to lease the land to a mining company determined to destroy it. And, if the panel's contrary conclusion is indeed required by *Navajo Nation*, this Court should overrule that decision and categorically hold that government action that makes a particular type of religious exercise impossible imposes a substantial burden on that religious exercise.

19

Respectfully submitted,

*/s/ Gene C. Schaerr*

GENE C. SCHAERR
 *Counsel of Record*
EDWARD H. TRENT
JOSHUA J. PRINCE
MEGAN SHOELL
SCHAERR | JAFFE LLP
1717 K St. NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

January 9, 2023

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Federal Rule of Appellate Procedure 29(a)(5) and 9th Circuit Rule 32-3(2) as it contains 3,806 words, excluding the portions exempted by Fed. R. App. P. 32(f).

The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.

Dated: January 9, 2023

*/s/ Gene C. Schaerr*
Gene C. Schaerr
*Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: January 9, 2023        */s/ Gene C. Schaerr*
Gene C. Schaerr
*Counsel for* Amici Curiae