No. 21-15295

## In the United States Court of Appeals for the Ninth Circuit

APACHE STRONGHOLD,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, ET AL.,

Defendant-Appellee.

Appeal from the United States District Court
for the District of Arizona
(2:21-cv-00050-PHX-SPL)

**BRIEF FOR THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS; THE GENERAL CONFERENCE OF
SEVENTH-DAY ADVENTISTS; THE ISLAM AND RELIGIOUS
FREEDOM ACTION TEAM OF THE RELIGIOUS FREEDOM
INSTITUTE; AND THE CHRISTIAN LEGAL SOCIETY AS
*AMICI CURIAE* SUPPORTING APPELLANT AND REVERSAL**

James C. Phillips
Chapman University*
Dale E. Fowler School of Law
1 University Dr.
Orange, CA 92866

*Institutional affiliation for
identification purposes only

Alexander Dushku
R. Shawn Gunnarson
Justin W Starr
Jarom Harrison
KIRTON | MCCONKIE
36 South State Street
Suite 1900
Salt Lake City, UT 84111
(801) 328-3600
adushku@kmclaw.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 29(a)(4)(A) and 26.1, amici represent that they have no parent entities and issue no stock.

Dated: January 9, 2023

*/s/ Alexander Dushku*
Alexander Dushku
Kɪʀᴛᴏɴ | McCᴏɴᴋɪᴇ
36 South State Street
Suite 1900
Salt Lake City, UT 84111
(801) 328-3600
adushku@kmclaw.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF *AMICI CURIAE* ................................. 1

SUMMARY OF ARGUMENT .................................................. 1

ARGUMENT ............................................................... 4

    I. RFRA APPLIES TO EVERY KIND OF "SUBSTANTIAL BURDEN" IMPOSED BY THE FEDERAL GOVERNMENT ON RELIGIOUS EXERCISE—NOT ONLY BURDENS THAT APPEAR AS A PENALTY OR DENIAL OF BENEFITS ................................................. 4

        A. RFRA Offers Relief Whenever the Federal Government "Substantially Burdens the Exercise of Religion." ....... 4

        B. The Panel's Reading of "Substantial Burden" Wars Against RFRA's Text and Supreme Court Precedent .. 9

        C. Distorting the Substantial Burden Test Is Unnecessary to Avoid Impeding Critical Governmental Interests ..................................................... 14

        D. This Court Should Hold That the Land Exchange Involving Oak Flat Will Substantially Burden the Apache's Religion ......................................... 16

    II. APPLYING RFRA HERE DOES NOT CONFLICT WITH THE PRINCIPLE THAT ONE CONGRESS CANNOT BIND A LATER CONGRESS ................................................................ 17

        A. Applying the Anti-Entrenchment Principle to RFRA Would Conflict with Decisions of the Supreme Court and This Circuit ......................................... 18

        B. The Contested Land Transfer Provision Does Not Repeal RFRA Expressly ............................................. 21

        C. Interpreting Section 539p as an Implied Repeal of RFRA Would Violate the Presumption Against Implied Repeals ..................................................... 22

i

D. Applying RFRA Here Satisfies the Specific-Controls-the-General Canon .......................................................27

III. SUPREME COURT PRECEDENTS TEACH THAT RFRA SHOULD BE INTERPRETED AND APPLIED AS WRITTEN ..................................28

CONCLUSION...........................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Ass'n of Civilian Technicians, Silver Barons Chapter v. Fed. Lab. Rels. Auth.*,
200 F.3d 590 (9th Cir. 2000) ........................................................... 23–24

*Bloate v. United States*,
559 U.S. 196 (2010) ................................................................................ 28

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020) .................................................................... 19, 33

*Bowen v. Roy*,
476 U.S. 693 (1986) ............................................................................... 12

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ...................................................................... *passim*

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
482 U.S. 437 (1987) ............................................................................... 27

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.*,
14 F.4th 916 (9th Cir. 2021) ................................................................ 22

*Dorsey v. United States*,
567 U.S. 260 (2012) ............................................................................... 21

*Emp. Division, Dep't of Hum. Res. of Oregon v. Smith*,
494 U.S. 872 (1990) ...................................................................... *passim*

*Fernandez v. Mukasey*,
520 F.3d 965 (9th Cir. 2008) ............................................................... 20

*Gonzales v. O Centro Espirita Beneficente Unio do Vegetal*,
546 U.S. 418 (2006) ...................................................................... *passim*

*Green v. Sola Cnty. Jail,*
    513 F.3d 982 (9th Cir. 2008) ................................................................. 9

*Hawaii v. Off. of Haw. Affs.,*
    556 U.S. 163 (2009) ............................................................................ 23

*Holt v. Hobbs,*
    574 U.S. 352 (2015) .............................................................................. 9

*Int'l Church of the Foursquare Gospel v. San Leandro,*
    673 F.3d 1059 (9th Cir. 2011) ............................................................... 9

*Jimmy Swaggart Ministries v. Bd. of Equalization,*
    493 U.S. 378 (1990) ............................................................................ 11

*K Mart Corp. v. Cartier, Inc.,*
    486 U.S. 281 (1988) .............................................................................. 5

*Kaiser Steel Corp. v. Mullins,*
    455 U.S. 72 (1982) .............................................................................. 25

*Korte v. Sebelius,*
    735 F.3d 654 (7th Cir. 2013) ............................................................... 20

*Ledezma-Galicia v. Holder,*
    636 F.3d 1059 (9th Cir. 2010) ...................................................... 23, 24

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020) ........................................................................ 18

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988) ...................................................................... 12, 13

*Me. Cmty. Health Options v. United States,*
    140 S. Ct. 1308 (2020) ................................................................... 22–23

*Montana v. Blackfeet Tribe of Indians,*
471 U.S. 759 (1985) ................................................................ 26

*Morton v. Mancari,*
417 U.S. 535 (1974) ................................................................ 25

*N.L.R.B. v. SW Gen., Inc.,*
137 S. Ct. 929 (2017) .............................................................. 28

*Nat'l Ass'n of Home Builders v. Def'rs of Wildlife,*
551 U.S. 644 (2007) ........................................................... 23, 24

*Navajo Nation v. U.S. Forest Serv.,*
535 F.3d 1058 (9th Cir. 2008) ....................................... *passim*

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012) ................................................................ 28

*Rodriguez v. United States,*
480 U.S. 522 (1987) ................................................................ 25

*Rubin v. Islamic Republic of Iran,*
138 S. Ct. 816 (2018) .............................................................. 28

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod.,*
580 U.S. 328 (2017) ................................................................ 14

*Sherbert v. Verner,*
374 U.S. 398 (1963) ......................................................... *passim*

*Tenn. Valley Auth. v. Hill,*
437 U.S. 153 (1978) ................................................................ 23

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.,*
450 U.S. 707 (1981) .......................................................... 11, 32

*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy,*
232 F.3d 1300 (9th Cir. 2000) .......................................................24–25

*Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.,*
627 F.3d 1268 (9th Cir. 2010) .................................................................5

*Traynor v. Turnage,*
485 U.S. 535 (1988) ................................................................................22

*United States v. Christie,*
825 F.3d 1048 (9th Cir. 2016) ...........................................................15, 20

*United States v. O'Neill,*
2022 WL 1929068 (11th Cir. 2022).......................................................15

*United States v. Zimmerman,*
514 F.3d 851 (9th Cir. 2007) .................................................................20

*Wisconsin v. Yoder,*
406 U.S. 205 (1972) ......................................................................*passim*

*Ysleta del Sur Pueblo v. Texas,*
142 S. Ct. 1929 (2022) ...........................................................................26

**Statutes**

5 U.S.C. § 559 .........................................................................................19

16 U.S.C. § 539p ...........................................................................*passim*

42 U.S.C. § 2000bb..........................................................................*passim*

42 U.S.C. § 2000cc ...................................................................................9

50 U.S.C. § 1621.....................................................................................19

## Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law: The
  Interpretation of Legal Texts (2012) ..............................................22

Black's Law Dictionary (10th ed. 2014) ..................................................6

Cong. Rec. (daily ed.) ..........................................................................22, 23

Eric A. Posner & Adrian Vermeule, *Legislative Entrenchment: A Reap-
  praisal*, 111 Yale L.J. 1165 (2002)........................................................21

Oxford English Dictionary (2d ed. 1989) ............................................6

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

Amici are religious organizations representing millions of Americans from diverse faith communities. While we cherish different religious convictions, we are united in our commitment to defend religious freedom. This case holds implications beyond its effect on Native American worship. At stake is whether the Religious Freedom Restoration Act (RFRA) will remain a vibrant shield for religious freedom within this circuit. Because the panel's decision contradicts the statutory text and Supreme Court precedent, it should be rejected.

## SUMMARY OF ARGUMENT

RFRA is one of America's premier civil rights laws. It prescribes the compelling interest test as "a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(5). Before applying that test, a court must determine whether the government has "substantially burden[ed] a person's

---

[1] Both parties have consented to the filing of this amicus brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), amici affirm that no counsel for a party authored this brief in whole or in part and that no person other than amici or their counsel have made any monetary contributions intended to fund the preparation or submission of this brief.

1

exercise of religion." *Id.* § 2000bb-1(a). That determination is the gateway to review and potential relief.

A divided panel of this Court held that RFRA offers no possibility of relief from government-created burdens on the exercise of religion "unless the government imposes a penalty or denies a benefit." Op. at 34 n.10. That holding misreads RFRA. Nowhere does the statute limit what kind of government burdens merit relief—other than that they must be substantial. Nor is an artificial limit on the meaning of *substantial burden* the right way to avoid interfering with compelling government interests. RFRA obligates a court to acknowledge when government action puts a substantial burden on religious practice even if the government can justify that action under the compelling interest test. The panel was wrong to short-circuit the analysis that RFRA prescribes.

The government pressed a second argument that would likewise eviscerate RFRA. The United States contends that RFRA's rule of construction, which requires courts to apply RFRA to every provision of federal law unless Congress exempts it expressly, conflicts with the principle that no Congress may bind a later Congress. This argument, if accepted, would prevent RFRA from safeguarding religious freedom for

2

government actions undertaken after the statute's adoption. But the principle is irrelevant here. Supreme Court decisions apply RFRA to later-enacted statutes, and RFRA does not *bind* later congresses. Congress is free to exempt a statute from RFRA or to modify or repeal it.

Nor did the contested land exchange bill repeal RFRA's express rule of construction by implication. Implied repeals are generally disfavored and they require the later statute to express any implied repeal "manifestly" and "clearly." The land exchange involving Oak Flat does neither; it says nothing about RFRA or religious freedom. Not only that, but the exchange appears in an appropriations rider—a legislative enactment that almost never repeals an earlier statute by implication.

Finally, it is worth recalling that the Supreme Court consistently interprets RFRA generously and in keeping with its text. Proposed interpretations distorting *substantial burden* or relaxing the government's duty to identify a truly *compelling interest* have been sternly rebuffed. Rather, the Court has described RFRA as a robust protection for religious freedom—a characterization that the Court's precedents have made a living reality. Since the panel diminished RFRA through misconstruction, its decision should be rejected and the district court reversed.

# ARGUMENT

## I. RFRA APPLIES TO EVERY KIND OF "SUBSTANTIAL BURDEN" IMPOSED BY THE FEDERAL GOVERNMENT ON RELIGIOUS EXERCISE—NOT ONLY BURDENS THAT APPEAR AS A PENALTY OR DENIAL OF BENEFITS.

### A. RFRA Offers Relief Whenever the Federal Government "Substantially Burdens the Exercise of Religion."

A divided panel of this Court held that the contested exchange of federal lands "does not substantially burden Apache Stronghold within the meaning of RFRA, even if [that exchange] does make it 'impossible' for Apache Stronghold's members to worship on Oak Flat." Op. 44. This startling conclusion—that RFRA is impotent when the federal government makes longstanding religious exercise impossible—is wrong. That ruling rests on the false premise that RFRA does not operate unless the government imposes a penalty or denies a benefit. It should be rejected.

1. Proving that a federal law "substantially burden[s]" a person's exercise of religion is a precondition for invoking RFRA's protections. 42 U.S.C. § 2000bb-1(a). Without such proof, there is no claim. It is vital for the Ninth Circuit to get the substantial test right, or courts within this circuit will routinely deny legal protection that RFRA guarantees.

2. A well-established canon of statutory construction holds that when a statute does not define disputed terms, courts give those terms

4

"their ordinary, contemporary, common meaning." *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1270 (9th Cir. 2010) (internal quotation marks and citations omitted). In that quest, courts "may consult dictionary definitions." *Id.* Courts also consider the "language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Since RFRA does not define *substantial burden*, discerning its meaning begins by looking at how the phrase appears in the statute:

- Start with RFRA's chief rule and exception. The rule is that "Government shall not *substantially burden* a person's exercise of religion even if the burden results from a rule of general applicability" unless an exception allows it. 42 U.S.C. § 2000bb-1(a) (emphasis added). The sole exception says, "Government may *substantially burden* a person's exercise of religion only if it" satisfies the compelling-interest test. *Id.* § 2000bb-1(b) (emphasis added).

- Among other congressional findings, RFRA declares that "governments should not *substantially burden* religious exercise without compelling justification." *Id.* § 2000bb(a)(3) (emphasis added).

- One of RFRA's purposes is "to provide a claim or defense to persons whose religious exercise is *substantially burdened* by government." *Id.* § 2000bb(b)(2) (emphasis added).

- Another stated purpose is "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is *substantially burdened*." *Id.* § 2000bb(b)(1) (emphasis added). (More on this provision later.)

5

Wherever *substantially burdened* and its cognates appear, RFRA adds no qualifications other than uniting the noun *burden* with the adjective *substantial*.[2]

A standard legal definition of *burden* is "[s]omething that hinders or oppresses." *Burden*, BLACK'S LAW DICTIONARY (10th ed. 2014). RFRA attaches no condition to the kind of hindrance or oppression that it protects against. Any hindrance to or oppression on the exercise of religion caused by the federal government comes within the definition. The word *substantially* ensures that RFRA's protections are not triggered by trivial or negligible burdens. *See* 17 OXFORD ENGLISH DICTIONARY 67 (2d ed. 1989) (describing *substantial* as an "ample or considerable amount"). But that is the sole limitation.

Thus, statutory text and context, plus common usage, illuminate the ordinary meaning of *substantially burden*. Any type of nontrivial, considerable hindrance of the claimant's exercise of religion by the federal government satisfies the threshold inquiry under RFRA.

---

[2] The judicial relief provision adds nothing to this understanding. A burden on religious exercise "in violation of this section" is self-evidently a substantial burden on religious exercise that the government does not justify under the compelling interest test. *Id.* § 2000bb-1(c).

6

This understanding is confirmed by *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). There, the United States contended that there was no substantial burden on businesses who raised religious objections to an administrative mandate requiring employee healthcare plans to cover contraception: in the government's opinion, "the connection between what the objecting parties must do … and the end that they find to be morally wrong … is simply too attenuated." *Id.* at 723. The Supreme Court rejected this argument as a distraction from the pertinent inquiry under RFRA—"whether the [government action] imposes a *substantial burden* on the ability of the objecting parties to conduct business in accordance with *their religious beliefs*." *Id.* at 724 (emphasis in original, punctuation altered). RFRA requires courts to measure whether a burden on religious practice is substantial by its effect on the exercise of religion. *Hobby Lobby* rightly concluded that the burden on objecting businesses was substantial because the government threatened multi-million-dollar fines for noncompliance. *Id.* at 726. This objective standard excludes specious arguments by the government and religious claimants alike. The government cannot twist the meaning of *substantial* to justify significant burdens on religious exercise. At the same time, religious

7

claimants cannot invoke the compelling interest test to challenge legal requirements that cause only trivial burdens.

3. Consider how the panel's interpretation of *substantially burden* would affect RFRA's operation even where the statute does not mention that term. A provision labeled "Applicability" is a case in point. 42 U.S.C. § 2000bb-3. It states that RFRA "applies to all Federal law, and the implementation of that law." *Id.* § 2000bb-3(a). Obeying that categorical requirement would be impossible if RFRA covered only rigid categories like penalties and the denial of benefits. Another provision clarifies that "Federal statutory law adopted after November 16, 1993 [RFRA's adoption date] is subject to [RFRA], unless such law explicitly excludes such application by reference to [RFRA]." *Id.* § 2000bb-3(b). This provision would also depart from the text if RFRA did not apply to certain kinds of burdens on religious exercise caused by the federal government.[3]

---

[3] RFRA's categorical bar on "burden[ing] any religious belief" has no relevance in this case. Apache Stronghold's claim arises out of a government burden on its religious practices. *Id.* § 2000bb-3(c).

8

## B. The Panel's Reading of "Substantial Burden" Wars Against RFRA's Text and Supreme Court Precedent.

Despite this statutory text and structure, the panel concluded that *substantial burden* covers only government actions that deny religious believers a government benefit (as in *Sherbert*) or threaten them with government penalties (as in *Yoder*). Op. 25. This truncated conception of *substantial burden* does not reflect the statutory text.[4] RFRA mentions these decisions only once, where it says that the statute aims "to restore the compelling interest test as set forth in [*Sherbert* and *Yoder*] and to guarantee its application in all cases where free exercise of religion is *substantially burdened*." 42 U.S.C. § 2000bb(b)(1) (emphasis added). This

---

[4] The panel's decision likewise contradicts virtually identical language in the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Compare* 42 U.S.C. § 2000cc(a) and 1(a) *with id.* § 2000bb-1(a). These statutes operate under "the same standard." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzales v. O Centro Espirita Beneficente Unio do Vegetal*, 546 U.S. 418, 436 (2006)). That RFRA mentions *Sherbert* and *Yoder*, while RLUIPA does not, is a red herring. *See* Op. at 30. The panel decision sets these two statutes on a collision course by denying relief to Apache Stronghold for the complete destruction of sacred property despite circuit precedents under RLUIPA holding that similar losses constitute substantial burdens. *See Int'l Church of the Foursquare Gospel v. San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation omitted) (substantial burden is a "significantly great restriction or onus"); *Green v. Sola Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (an "outright ban on a particular religious exercise" was a substantial burden).

provision refutes the panel's interpretation. RFRA describes *Sherbert* and *Yoder* as the source of the compelling interest test—not as the source of what "substantially burden" means. Any doubt on that point vanishes with the final clause. It declares that RFRA seeks to "guarantee" the "application" of the compelling interest test "in *all cases* where free exercise of religion is *substantially burdened.*" *Id.* (emphasis added). Nothing in there hints that *substantial burden* is limited to situations like *Sherbert* and *Yoder*. Op. 27. RFRA references these decisions in passing as the source of "the compelling interest test" that the statute was adopted "to restore," 42 U.S.C. § 2000bb(b)(1)—not as a way to limit when that test applies. No other mention of those decisions appears in the statute.

To support its result, the panel heavily leaned on *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008), *see* Op. 18–23. It holds that RFRA "expressly adopted and restored" *Sherbert* ("governmental benefits") and *Yoder* ("civil or criminal sanctions"). 535 F.3d at 1069–70 (citing 42 U.S.C. § 2000bb(b)(1)). Under this interpretation, even devastating burdens on religion—burdens that "would in fact make Apache Stronghold's members' worship 'impossible'"—lie beyond RFRA's protective orbit unless they resemble the facts in *Sherbert* and *Yoder*. Op. 25.

Consider the extreme implications of this reasoning. If federal officials arbitrarily dynamited a synagogue on private property or barred entrance into a church for Sunday services, depriving hundreds of the ability to worship, the panel's reading would afford no relief under RFRA because the government's action would neither deny "governmental benefits" nor impose "civil or criminal sanctions." The same would follow if the federal Department of Education enacted a regulation forbidding teachers from calling upon religious students. By the panel's logic, these and any number of other governmental actions that create serious—even dire—religious hardships do not "substantially burden" the exercise of religion. That is simply wrong under any ordinary reading.

By repeating the errors of *Navajo Nation*, the panel misconstrued Supreme Court precedent. *Id.* at 21. Specifically, the panel cited decisions issued before *Employment Division v. Smith*, 494 U.S. 872 (1990) to support the view that *substantial burden* is a "term of art" limited to government benefits and penalties. Op. 20–21 (citing *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 391–92 (1990) and *Thomas v. Rev. Bd.*, 450 U.S 707, 717–18 (1981)). The panel added that

*Navajo Nation* finds support in *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988) and *Bowen v. Roy*, 476 U.S. 693 (1986). Op. 22. These extrapolations from Supreme Court precedent are deeply flawed.

First, none of these decisions limits the meaning of *substantially burden* to situations involving government penalties or the denial of benefits. That *Sherbert* and *Yoder* happened to involve these particular burdens on religious exercise says nothing about the meaning of substantial burden, generally speaking.

Second, those pre-*Smith* decisions do not mark RFRA's outer boundaries. The Supreme Court itself explained that "the results would be absurd if RFRA merely restored this Court's pre-*Smith* decisions in ossified form and did not allow a plaintiff to raise a RFRA claim unless that plaintiff fell within a category of plaintiffs one of whom had brought a free-exercise claim that this Court entertained in the years before *Smith*." *Hobby Lobby*, 573 U.S. at 715–16. Here, the panel decision excludes as insubstantial any burden on religion unlike the burdens addressed in *Sherbert* and *Yoder*. That tactic is merely another way of using pre-*Smith* precedent to harden RFRA in "ossified form." *Id.* aTht

715. Such a result is inconsistent with *Hobby Lobby* and its textually centered understanding of RFRA as "a law enacted to provide *very broad protection for religious liberty*." *Id.* (emphasis added).

Third, *Bowen* and *Lyng* are readily distinguishable. *Bowen* involved the government's use of Social Security numbers in its "internal affairs," not a measure preventing religious worship. 476 U.S. at 699. In *Lyng*, the government took steps to avoid disturbing "sites where specific rituals take place" when building a road on federal land; here, the government's action will destroy a worship site. 485 U.S. at 454. And neither case involved RFRA, which controls here.

Judge Berzon rightly dissented from the panel's decision. She criticized the decision for embracing a "flawed test" that generates the "absurd result" that "destroying a sacred site where [the Apache] have performed religious ceremonies for centuries does not substantially burden their religious exercise." Op. 58 (Berzon, J., dissenting). Seizing the panel's logic by the roots, she explained that RFRA's reference to *Sherbert* and *Yoder* only serves to codify the compelling interest test and that decisions following *Sherbert* and *Yoder* tend to construe *substantial burden* broadly. *Id.* at 58–59, 63. She added that other Supreme Court

13

decisions offer "no reason to believe" that RFRA is "limited to situations that fall squarely within the holdings of pre-*Smith* cases" and that if *Navajo Nation* actually contradicts those decisions, it should be considered overruled by intervening Supreme Court precedent. *Id.* at 64 (quotation omitted).

**C. Distorting the Substantial Burden Test Is Unnecessary to Avoid Impeding Critical Governmental Interests.**

Policy concerns evidently drove the panel's adherence to *Navajo Nation* and its tragically abridged conception of substantial burden. "Were the scope of a substantial burden under RFRA broader than the *Sherbert/Yoder* framework, any action the federal government were to take, including action on its own land, would be subject to the personalized oversight of millions of citizens." *Id.* at 24 (citation omitted). Avoiding that result was thought to give the panel's construction of *substantial burden* "a strong practical basis." *Id.*

But rewriting federal statutes to avoid seemingly undesirable policy results lies beyond the judicial ken. Federal courts "cannot overrule Congress's judgement based on [their] own policy views." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod.*, 580 U.S. 328, 345 (2017).

14

Distorting RFRA to avoid undue restrictions on federal authority is not only illegitimate, but unnecessary. Congress crafted the statute to allow for the government to exercise authority despite real burdens on religious practice—if the government can satisfy the compelling interest test. Congress deemed this tradeoff "workable" and invited courts to "strik[e] sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(5); *see, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (sustaining marijuana laws against religious group); *United States v. O'Neill*, 2022 WL 1929068, at *2 (11th Cir. 2022) (sustaining the prosecution of pacificist believers for vandalizing Navy equipment). Here, the government's interest in managing federal lands already gets accounted for under the compelling interest test. *See* Op. 77 (Berzon, J., dissenting). The government has never tried to satisfy that test. Until it does, the panel's prediction of unjustified interference with the government's management of federal lands is premature. Altering the meaning of *substantial burden* to avoid a result that RFRA might not require is unnecessary.

15

### D. This Court Should Hold That the Land Exchange Involving Oak Flat Will Substantially Burden the Apache's Religion.

Without the distraction of *Navajo Nation*, determining whether the proposed land exchange will substantially burden the religious exercise of Apache Stronghold members becomes straightforward. The right question is whether that exchange will hinder the Apache's exercise of religion to a considerable degree. No one disputes that it will. Solely because of a land exchange adopted by Congress, lands used by the Apache people for worship will eventually be destroyed.

*Hobby Lobby* rebuts the panel's contrary decision. Its holding that RFRA does not simply codify pre-*Smith* decisions "in ossified form" severely undercuts the panel's reasoning. *Hobby Lobby*, 573 U.S. at 715. Equally problematic for the panel decision is *Hobby Lobby*'s holding that a burden on religious exercise is substantial when the government hinders the exercise of a sincerely held religious belief to a considerable extent. 573 U.S. at 726. If imposing a multi-million-dollar penalty for exercising religion counts as a substantial burden, surely federal action that will lead to the destruction of an ancient worship site is a substantial burden too. Acknowledging the devastating effects on the Apache's religious exercise as a substantial burden deservedly opens the door to

16

potential relief under RFRA, even if it remains possible for the government to justify its actions under the compelling interest test.

## II. APPLYING RFRA HERE DOES NOT CONFLICT WITH THE PRINCIPLE THAT ONE CONGRESS CANNOT BIND A LATER CONGRESS.

RFRA plainly declares that it applies to federal statutes enacted after RFRA's adoption "unless such [later-enacted] law explicitly excludes such application." 42 U.S.C. § 2000bb-3(b). The United States and some amici argue that this rule of construction conflicts with the anti-entrenchment principle, which says that no Congress can validly bind a future Congress. *See* Gov't Opp. to Rehearing En Banc at 16–19; Appellees' Answering Brief at 16 n.3; American Exploration & Mining Association Amicus Br. at 6–11. They also maintain that the land exchange is exempt from RFRA based on an implied conflict between them. But these contentions overread and misapply the anti-entrenchment principle. Although the panel did not take up this issue, the implications of disregarding RFRA's rule of construction are too serious to be ignored.

## A. Applying the Anti-Entrenchment Principle to RFRA Would Conflict with Decisions of the Supreme Court and This Circuit.

### 1. Supreme Court precedent

Since RFRA's adoption, the Supreme Court has never applied the principle of legislative anti-entrenchment to block or curb its application. Later-enacted statutes have been consistently subject to RFRA. Take *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020). It held that federal agencies properly considered RFRA when issuing a religious exemption from the Affordable Care Act's contraceptive mandate. The Court identified certain guideposts as decisive: (1) "RFRA specifies that it 'applies to all Federal law, and the implementation of that law, whether statutory or otherwise,'" *id.* (quoting 42 U.S.C. § 2000bb-3(a)); (2) "RFRA also permits Congress to exclude statutes from RFRA's protections," *id.* (citing 42 U.S.C. § 2000bb-3(b)); (3) "[i]t is clear from the face of the statute that the contraceptive mandate is capable of violating RFRA," *id.*; and (4) "[t]he ACA does not *explicitly* exempt RFRA," *id.* (emphasis added). None of this reasoning makes sense if the anti-entrenchment principle impliedly nullifies the requirement for Congress to exempt RFRA expressly.

18

Or consider *Hobby Lobby*, 573 U.S. at 682. It brushed aside as irrelevant a rejected amendment to the Affordable Care Act "because any Federal statutory law adopted after November 16, 1993 is subject to [RFRA] unless such law *explicitly excludes* such application by reference to [RFRA]." *Id*. at 719 n.30 (citation omitted) (emphasis in original). The Court explained that "[i]t is not plausible to find such an explicit reference in the meager legislative history on which the dissent relies." *Id*. at 719 n.30. Once again, the Court accepted RFRA's command that later-enacted statutes can avoid applying RFRA only by saying so explicitly. Missing was any suggestion RFRA's express-statement provision somehow offends the anti-entrenchment principle.

Likewise, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020), says that "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases." *Id*. (citing 42 U.S.C. § 2000bb-3). If the Court understood RFRA to be modified by the anti-entrenchment principle, surely it would have included some modifier before "federal laws" like

19

"pre-RFRA" or "older." While Title VII pre-dates RFRA, *Bostock* implies that RFRA validly applies to statutes enacted after its adoption.[5]

### 2. Ninth Circuit precedent

This Court's decisions deny that RFRA violates the anti-entrenchment principle. One case said that "RFRA amends the entire United States Code." *Christie*, 825 F.3d at 1065 n.6. That statement is unqualified; *Christie* underscores that this Court takes RFRA's temporal reach seriously. Similarly, in *United States v. Zimmerman*, 514 F.3d 851 (9th Cir. 2007), the Court remanded a case to reconsider a RFRA defense to a 2004 statute, *see id.* at 855–56—a futile proceeding if RFRA did not apply to later-enacted statutes. *See also Fernandez v. Mukasey*, 520 F.3d 965, 966 (9th Cir. 2008) (discussing RFRA as a defense to a later-enacted 1996 immigration amendment).

---

[5] These decisions under RFRA are unsurprising since other federal statutes also direct Congress to apply a law unless expressly exempted. *See, e.g.*, Administrative Procedure Act, 5 U.S.C. § 559 (no later statute will "supersede or modify" certain provisions relating to administrative law judges "except to the extent that it does so expressly"); National Emergencies Act, 50 U.S.C. § 1621(b) (no later-enacted statute "shall supersede this subchapter unless it does so in specific terms").

### 3. Seventh Circuit precedent

Embracing the government's anti-entrenchment argument would create an intercircuit split. In *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013), the Seventh Circuit rejected the same arguments pressed by the government here. *Korte* began with the premise that "RFRA applies retrospectively and prospectively to 'all Federal law.'" *Id.* at 672 (quoting 42 U.S.C. § 2000bb-3(a)). The court then observed that "[p]rospective application is qualified by the rule that 'statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute as modified.'" *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 274 (2012)). But the court explained that "RFRA accounts for this principle too; the statute does not apply to a subsequently enacted law if it 'explicitly excludes such application by reference to this chapter.'" *Id.* at 672–73 (quoting 42 U.S.C. § 2000bb-3(b)).

## B. The Contested Land Transfer Provision Does Not Repeal RFRA Expressly.

Even without contrary precedent, it is hard to see how RFRA violates the anti-entrenchment principle. Requiring Congress to state

explicitly when RFRA does not apply does not subtract from Congress's authority. RFRA leaves Congress free to determine whether and how far RFRA applies to later-enacted statutes. *See generally* Eric A. Posner & Adrian Vermeule, *Legislative Entrenchment: A Reappraisal*, 111 YALE L.J. 1665, 1697–99 & n.94 (2002) (rejecting the anti-entrenchment principle as a reason to question rules like RFRA's).

There is no express repeal of RFRA in this case. Nothing in the Oak Flat land-transfer rider (known as Section 539p) expresses an overt intent to disregard RFRA, since it says nothing about RFRA, religious liberty, religion, or sacred sites. *See* 16 U.S.C. § 539p. Nor does Section 539p's legislative history say anything about RFRA. None of this should be surprising because the rider was "jammed into th[e] defense bill … without debate." 160 CONG. REC. S6735 (daily ed. Dec. 12, 2014) (statement of Sen. Ron Wyden).

## C. Interpreting Section 539p as an Implied Repeal of RFRA Would Violate the Presumption Against Implied Repeals.

Lacking an express repeal, the government insists that any inconsistency with Section 539p renders RFRA repealed by implication. But that argument offends the canon against implied repeals. *See* ANTONIN

SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 279 (2012). Under that canon, it is a "cardinal rule that repeals by implication are not favored." *Traynor v. Turnage*, 485 U.S. 535, 536 (1988) (cleaned up). The Supreme Court has expressed "'especially strong' aversion to implied repeals of standalone laws through appropriation riders." *Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916, 932 n.7 (9th Cir. 2021) (quoting *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020)). This "especially strong aversion" to finding implied repeals in appropriations riders makes good sense for land-transfer riders. Courts do not assume that members of Congress "review exhaustively the background of every [rider] before voting on [it]." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 190 (1978). That assumption is spot-on here. Congress voted on the Oak Flat land transfer without debating its rationale and lawfulness. *See* 160 CONG. REC. S6735 (daily ed. Dec. 12, 2014) (statement of Sen. Ron Wyden) ("Neither the Senate Energy and Natural Resources Committee nor the House of Representatives has approved that provision this Congress, yet it is being jammed into this defense bill today without debate.").

23

Settled rules for discerning an implied repeal are "extremely strict." *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1069 (9th Cir. 2010). Implied repeals "will not be presumed unless the intention of the legislature to repeal [is] clear and manifest." *Hawaii v. Off. of Haw. Affs.*, 556 U.S. 163, 175 (2009) (quoting *Nat'l Ass'n of Home Builders v. Def'rs of Wildlife*, 551 U.S. 644, 662 (2007)); *accord Ass'n of Civilian Technicians, Silver Barons Chapter v. Fed. Lab. Rels. Auth.*, 200 F.3d 590, 592 (9th Cir. 2000) (observing that to find repeal by implication "Congress's intent to replace the existing statute" must be "unambiguous").

In this circuit, "such an intention [to repeal a prior statute] is not 'clear and manifest' simply because 'the two statutes produce differing results when applied to the same factual situation'" since "that no more than states the problem." *Ledezma-Galicia*, 636 F.3d at 1070 (citation omitted). Finding a repeal by implication requires proof that "the later statute *expressly* contradicts the original act." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (cleaned up) (emphasis added). Absent an express repeal, any conflict between the statutes must be "irreconcilable"—meaning "such a construction is absolutely necessary in order that the words

24

of the later statute shall have any meaning at all"—to find an implied repeal. *Id*. at 662, 663 (cleaned up).

To determine whether Congress expressed a clear and manifest intention to "repeal or modify" an earlier statute, courts "focus on the language of the [later] statute." *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1307 (9th Cir. 2000). Insofar as that language is "ambiguous," courts also "consider the relevant legislative history." *Id*.

Construing the eleventh-hour appropriations rider embodied in Section 539p as an implicit repeal of RFRA—a statute that Congress adopted almost unanimously following intense congressional focus—would flout these principles. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("congressional silence" like this cannot be "read … as effectuating a repeal by implication"); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 88 (1982) ("The statutory language provides no basis for implying such a repeal, and nowhere in the legislative history is there any mention that [the later statute] might conflict with other laws.").

Nor does the land-exchange rider pose an irreconcilable conflict with RFRA. A side-by-side comparison with Section 539p discloses no

conflict at all, much less an irreconcilable one. As-applied conflicts like those identified by the government and its amici fail the standard for an implied repeal. *See, e.g.*, *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) ("Nothing in the language of these two provisions suggest the existence of [an] irreconcilable conflict.") (cleaned up). Given the absence of an express repeal and no text in Section 539p evincing an implied repeal, it follows that Section 539p was adopted subject to RFRA—like every other statute adopted by Congress since it passed RFRA in 1993.

Even if Section 539p were ambiguous, another canon of construction comes into play. "[S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985); *see also Ysleta del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1941 n.3 (2022) (characterizing this rule as "long established by our precedents"). Divining an implied repeal of RFRA from Section 539p would disregard the canon in favor of Native Americans and should be rejected for that reason alone.[6]

---

[6] Besides, the implied repeal argument is premature. If Section 539p satisfies the compelling interest test, there is no conflict with RFRA and the notion of an implied repeal is irrelevant.

### D. Applying RFRA Here Satisfies the Specific-Controls-the-General Canon.

Some amici further argue that Section 539p should repeal RFRA's rule of construction because of the canon that the specific controls the general. *See* American Exploration & Mining Association Amicus Brief, at 8–9. That argument is flawed in two respects.

First, amici confuse which statute is specific and which is general. Since this case is about a religious liberty claim against the federal government, it is RFRA—not Section 539p—that addresses the specific issue at hand. Section 539p speaks generally of "assess[ing] the effects of the mining and related activities … on the cultural and archeological resources that may be located on the Federal land" conveyed. 16 U.S.C. § 539p(c)(9)(C)(i). Viewed correctly, Section 539p is the general statute and RFRA the specific one.

Second, even if Section 539p were the specific statute, the canon of specific/general statutory priority is hardly a wooden rule. "[W]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (citation omitted) (emphasis in original). Congress expressed a "clear intention

27

otherwise" in RFRA by directing that it applies to "all Federal law," including statutes enacted after RFRA, "unless such law explicitly excludes such application." 42 U.S.C. § 2000bb-3(a) and (b). Since RFRA expresses a "clear intention" to apply to later-enacted statutes, the specific-controls-the-general canon does not apply.

Also, that canon most forcefully applies "when the two [statutes] are interrelated and closely positioned." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quotation omitted). In fact, the Supreme Court has tended to apply the canon to differing portions of the same statute rather than across different statutes. *See, e.g.*, *Bloate v. United States*, 559 U.S. 196, 207 (2010); *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017).[7] By that standard, the case for applying the canon fizzles out; any relation between RFRA and Section 539p is remote.

## III. SUPREME COURT PRECEDENTS TEACH THAT RFRA SHOULD BE INTERPRETED AND APPLIED AS WRITTEN.

The panel decision is objectionable not only because it flouts the statute's text and precedent in detail, but because it departs from the

---

[7] Declining to apply RFRA for either reason offends the canon against superfluity by nullifying the statute's express-reference requirement. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018).

Supreme Court's demonstrated commitment to read and apply RFRA as written. True, the Court has never addressed the precise issue here—whether the government imposes a substantial burden on religious practice only when it imposes a penalty or denies a benefit. But Supreme Court decisions repeatedly affirm RFRA as a broad protection for religious freedom and reject attempts to diminish or disregard the statute's actual terms through judicial construction. That text-centered approach to RFRA should heavily influence how this Court resolves the questions posed by the panel decision.

A. Take *O Centro*, 546 U.S. at 418. There, the Court unanimously held that RFRA requires courts to fashion exceptions to generally applicable federal laws that impose a substantial burden on religious practice, unless the government satisfies the compelling interest test. *See id.* at 439. *O Centro* elucidates the legal framework established by RFRA. In doing so, it exemplifies the Court's resolve to read and apply the statute as written.

*O Centro* arose when a small religious group sued to prevent the federal government from enforcing a federal ban on the use of a plant-

based hallucinogenic, *hoasca*, for sacramental tea. *Id.* at 425–26. The government admitted that this religious exercise was sincere, *id.* at 425–26, yet it claimed *any* use of *hoasca* violates the Controlled Substances Act, *id.* at 434. RFRA offered no defense, the government said, "because the Controlled Substances Act serves a compelling purpose and simply admits of no exceptions." *Id.* at 430.

The Court rejected this "categorical approach." *Id.* It explained that "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law … [to] the particular claimant whose exercise of religion is being substantially burdened." *Id.* at 430–31. Under RFRA, a court must "scrutinize[e] the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 431. The government's "mere invocation" of the dangers of using drugs prohibited by the Controlled Substances Act fails to identify "the harms posed by … the circumscribed, sacramental use of *hoasca*." *Id.* at 432. Since Congress exempted the religious use of peyote— another regulated drug—and allowed the Attorney General to "exempt[ ] certain people from its requirements," the case against exemptions was

30

weak. *Id.* at 433–34. Nor did the Court accept that the Controlled Substances Act is not "amenable to *judicially crafted* exceptions." *Id.* at 434 (emphasis in original). RFRA directs "courts [to] strike sensible balances, pursuant to a compelling interest test that requires the Government to address the particular practice at issue." *Id.* at 439. Since the government could not satisfy the compelling-interest test with respect to the sacramental use of *hoasca*, RFRA required the government not to prosecute objecting religious believers. *Id.*

B. Then there's *Hobby Lobby*, 573 U.S. at 682. At issue was whether RFRA shielded Christian businesses against a federal regulation requiring employers to provide abortifacient contraceptives to employees as part of their health plans. *Id.* at 691. The Court held that RFRA required the government to let Hobby Lobby and other religiously objecting businesses enjoy the same accommodation that HHS already devised for nonprofit organizations with religious objections to the contraceptive mandate. *Id.* at 730–31.

*Hobby Lobby* characterized RFRA as providing "*very broad protection for religious liberty*." *Id.* at 693 (emphasis added). Accordingly, it

rejected the argument that pre-*Smith* decisions circumscribe RFRA's full extent. *Id.* at 715–16.

*Hobby Lobby* likewise brushed aside the government's attempt to distort the substantial burden test. The government's "main argument" was that "the connection between what the objecting parties must do … and the end that they find to be morally wrong … is simply too attenuated." *Id.* at 723. The Court demurred. It found that the government's inquiry "dodges the question that RFRA presents (whether the HHS mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with *their religious beliefs*)." *Id.* at 724 (emphasis in original). Worse, the government's reading of "substantial burden" misdirects courts into asking "whether the religious belief asserted in a RFRA case is reasonable." *Id.* RFRA invites courts to adjudicate only whether an asserted religious belief reflects "an honest conviction." *Id.* at 725 (quoting *Thomas*, 450 U.S. at 716). Since the businesses' religious objections were indisputably sincere, it remained only to decide whether the burden was *substantial*. It was. "Because the contraceptive mandate forces them to pay … as much as $475 million per year

in the case of Hobby Lobby … the mandate clearly imposes a substantial burden on those [religious] beliefs." *Id.* at 726.

The panel decision conflicts with *Hobby Lobby* in two related respects. Where *Hobby Lobby* rejected attempts to confine RFRA to the facts of pre-*Smith* case law, the panel insisted that such facts conclusively fix the meaning of *substantial burden*. And where *Hobby Lobby* requires a court to measure substantial burden by the degree of government force deployed to compel legal compliance, the panel looked to rigid categories of government penalties and benefits.

C. And in *Bostock*, 140 S. Ct. at 1731, the Court called RFRA "a kind of super statute"—a law so potent that it "displac[es] the normal operation of other federal laws." *Id.* at 1754. That label is remarkable. First, it appears in a passage alongside other statutes and legal doctrines responding to the Court's "concern[ ] with preserving the promise of free exercise of religion enshrined in our Constitution." *Id.* Second, *Bostock* acknowledges that RFRA "might supersede Title VII's commands in appropriate cases"—even in cases alleging the denial of civil rights. *Id.*

These decisions show that the Supreme Court interprets and applies RFRA as a broad protection for the exercise of religion. Again and

33

again, the Court has repudiated efforts to dilute or distort the statute through judicial construction. That is why the Court rebuffed attempts to let the government satisfy the compelling interest test by reciting a statute's broad purposes or to dispute whether a RFRA claimant's sincere religious objections are reasonable. *See O Centro*, 546 U.S. at 431; *Hobby Lobby*, 573 U.S. at 724. The panel decision marches in the opposite direction by adopting a narrowing construction inconsistent with RFRA's language and precedent. Because it diminishes RFRA based on an interpretation at odds with the statutory text and Supreme Court precedent, that decision should be rejected and the district court reversed.

## CONCLUSION

For all these reasons, the Court should reverse the district court.

January 9, 2023                                Respectfully submitted,

                                               */s/ Alexander Dushku*

James C. Phillips                              Alexander Dushku
Chapman University*                            R. Shawn Gunnarson
Dale E. Fowler School of Law                   Justin W Starr
1 University Dr.                               Jarom Harrison
Orange, CA 92866                               KIRTON | MCCONKIE
                                               36 South State Street
*Institutional affiliation for                 Suite 1900
identification purposes only                   Salt Lake City, UT 84111
                                               (801) 328-3600
                                               adushku@kmclaw.com

*Counsel for Amici Curiae*

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**: No. 21-15295

I am the attorney or self-represented party.

**This brief contains <u>6,677</u> words,** including 0 words manually

counted in any visual images, and excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] is an **amicus** brief and complies with the word limit of Fed. R. App.
P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Dated: January 9, 2023          */s/ Alexander Dushku*
                                Alexander Dushku

                                *Counsel for Amici Curiae*