CASE NO. 21-15295

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

APACHE STRONGHOLD,
*Plaintiff/Appellant*,

v.

UNITED STATES OF AMERICA, ET AL.,
*Defendants/Appellees.*

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:21-cv-00050-PHX-SPL | Honorable Steven P. Logan

**BRIEF OF *AMICUS CURIAE*
ARIZONA CHAMBER OF COMMERCE AND INDUSTRY
IN SUPPORT OF APPELLEE UNITED STATES**

ANTHONY J. FERATE, OBA NO. 21171
ANDREW W. LESTER, OBA NO. 5388
COURTNEY D. POWELL, OBA NO. 19444
SPENCER FANE LLP
9400 N. Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114-7423
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
ajferate@spencerfane.com
alester@spencerfane.com
cpowell@spencerfane.com

JANUARY 23, 2023

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Arizona Chamber of Commerce and Industry ("Chamber") hereby certifies that it is a member-based nonprofit organization.  The Chamber is not publicly held. There is no parent corporation or any publicly held corporation that owns 10% or more of the Chamber's stock.

Dated: January 23, 2023                     Respectfully Submitted,

                                                              */s/ Anthony J. Ferate*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................... iii-v

STATEMENT OF INTEREST ............................................................................1

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT ..................................................................................................4

BACKGROUND: THE RELIGIOUS FREEDOM RESTORATION ACT OF 1993 ....................4

**I.** *LYNG* **REQUIRES DENIAL OF PLAINTIFF'S PRELIMINARY INJUNCTION REQUEST................................................................6**

**II.** **THE APACHE TREATY OF 1852 AND THE LACK OF LAND HELD IN TRUST EXHIBIT NO "CLEAR EXPRESSION" OF ANY RIGHT TO OAK FLAT.......13**

CONCLUSION ..............................................................................................15

CERTIFICATE OF COMPLIANCE ..................................................................17

CERTIFICATE OF SERVICE ..........................................................................18

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                   **PAGE(S)**

*Bowen v. Roy*,
    476 U.S. 693 (1986)....................................................... 7, 8, 10, 12, 13, 15, 16

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)....................................................................................5

*Carson v. Makin*,
    596 U.S. __, 142 S.Ct. 1987 (2022) ..........................................................2, 3

*Employment Division, Department of Human Resources v. Smith*,
    494 U.S. 872 (1990)......................................................................2, 4, 5, 6, 10

*Espinoza v. Montana Department of Revenue*,
    591 U.S. __, 140 S.Ct. 2246 (2020) ..........................................................2, 3

*Fulton v. City of Philadelphia*,
    593 U.S. __, 141 S.Ct. 1868 (2021) ..........................................................1, 3

*Kennedy v. Bremerton School District*,
    597 U.S. __, 142 S.Ct. 2407 (2022) ..........................................................2, 3

*Lockhart v. Kenops*,
    927 F.2d 1028 (8th Cir. 1991) ....................................................................12

*Lyng v. Northwest Cemetery Protective Ass'n*,
    485 U.S. 439 (1988).............................................................................. *passim*

*McGirt v. Oklahoma*,
    591 U.S. __, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020) ...........................13, 14

*Navajo Nation v. United States Forest Service*,
    535 F.3d 1058 (9th Cir. 2008) ........................................ 2, 8, 9, 10, 11, 12, 16

*Nw. Indian Cemetery Protective Ass'n v. Peterson*,
    565 F. Supp. 586 (N.D. Cal. 1983).........................................................11, 12

*Oklahoma v. Castro-Huerta*,
    597 U.S. __, 142 S.Ct. 2486 (2022) ............................................................. 14

*Prater v. City of Burnside, Ky.*,
    289 F.3d 417 (6th Cir. 2002) ...................................................................... 12

*Sherbert v. Verner*,
    374 U.S. 398 (1963) .......................................................................... 2, 4, 6, 12

*Slockish v. U.S. Federal Highway Administration*,
    No. 08-cv-01169, 2018 WL 2875896 (D. Or. June 11, 2018) ..................... 13

*Snoqualmie Indian Tribe v. FERC*,
    545 F.3d 1207 (9th Cir. 2008) ................................................ 2, 9, 12, 13, 16

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. __, 137 S.Ct. 2012 (2017) ......................................................... 2, 3

*United States v. Mitchell*,
    463 U.S. 206 (1983) .................................................................................... 15

*Washington State Department of Licensing v. Cougar Den, Inc.*,
    586 U.S. __, 139 S.Ct. 1000 (2019) ........................................................... 14

*Wilson v. Block*,
    708 F.2d 735 (D.C. Cir. 1983) .................................................................... 12

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ................................................................................. 2, 4, 6

## CONSTITUTION OF THE UNITED STATES

U.S. CONST. ART. IV ......................................................................................... 15

U.S. CONST. AM. 1 ........................................................................................... 4, 6

## FEDERAL STATUTES

18 U.S.C. § 1151 ........................................................................................ 14, 15

iv

42 U.S.C. §§ 2000bb, *et seq.*...........................................................................2, 4, 10

TREATY OF JULY 1, 1852,
  ratified March 25, 1853, 10 STAT. 979....................................................13, 14

## LEGISLATIVE MATERIALS

U.S. House Committee on the Judiciary Report No. 103-88 (May 11, 1993) ..........5

U.S. Senate Committee on the Judiciary Report No. 103-111 (July 27, 1993).........5

## OTHER AUTHORITIES

David F. Briggs, *Apaches Question Actions of their Leadership*, ARIZONA DAILY
INDEPENDENT NEWS NETWORK, July 8, 2015 ..........................................................7

Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous
Sacred Sites*, 134 Harv. L. Rev. 1294 (2021) ..........................................................8

## STATEMENT OF INTEREST

The Arizona Chamber of Commerce and Industry ("Chamber") is committed to ensuring economic growth and prosperity for all Arizonans. It advocates for free-market policies and works to advance Arizona as a leading player in the global economy. It further serves as the collective voice for Arizona businesses at the state legislature and on important economic issues, such as this matter, before the courts. The Chamber represents the interests of commerce and industry in an effort to further grow the state economy.

Given its economic mission, the Chamber represents a number of members that engage in diverse expressions of faith, as well as members that do not practice any faith. The Chamber recognizes that at the heart of our nation is a constitutional reverence that not only provides the foundation for economic stability, but also includes the right to freely exercise faith as one's conscience provides. Protected Free Exercise is guided by Congressional act and judicial precedent, including such precedent as that involved in this matter. The Chamber submits this brief to provide perspective on that precedent and how it should be applied to this case.

## SUMMARY OF THE ARGUMENT

Meaningful advances have been made in the protection of the free exercise of religion, particularly in protecting the involvement of religious institutions in adoption, *Fulton v. City of Philadelphia*, 593, U.S. __, 141 S.Ct. 1868 (2021), school

programs, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. __, 137 S.Ct. 2012 (2017), *Espinoza v. Montana Department of Revenue*, 591 U.S. __, 140 S.Ct. 2246, (2020), *Carson v. Makin*, 596 U.S. __, 142 S.Ct. 1987 (2022), and prayer by public employees, *Kennedy v. Bremerton School District*, 597 U.S. __, 142 S.Ct. 2407 (2022). Each of these cases was brought on questions for which the Court had not issued a bright-line rule. That, however, is not the situation in this case.

Both this Court and the Supreme Court have already provided clear guidance for this case. By enacting the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb, *et seq.*, Congress reinstated, as a matter of statutory right, the compelling interest test as it was understood prior to the Supreme Court's ruling in *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990), thereby returning the law governing free exercise claims against the federal government to its pre-*Smith* status. This included all pre-*Smith* Supreme Court precedent, such as *Sherbert v. Verner*, 374 U.S. 398 (1963), *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and especially pertinent to this case, *Lyng v. Northwest Cemetery Protective Ass'n*, 485 U.S. 439 (1988). Since RFRA's enactment, this Court ruled in *Navajo Nation v. United States Forest Service*, 535 F.3d 1058 (9th Cir. 2008) and *Snoqualmie Indian Tribe v. FERC*, 545 F.3d 1207 (9th Cir. 2008), that the tribes in those cases could not show a substantial burden exists because there was not a threat of sanctions or a conditioned government benefit that would violate the religious adherent's faith. The

2

rulings set a firm position within this circuit that is consistent with other circuits that have ruled on RFRA's application to non-trust federal land management.

Unlike *Kennedy*, *Fulton*, *Carson*, *Espinoza*, and *Trinity Lutheran*, this case involves no unanswered doctrinal question: Plaintiff must show that the government substantially burdened the religious exercise of Apache Stronghold's members with a Congressional sale of land, in accordance with the governing legal principles enunciated in pre-*Smith* precedent. Plaintiff has not shown — and cannot show — that the government coerced it, threatened them with sanctions, or otherwise substantially burdened the exercise of their religion.

The relief Plaintiff seeks would broadly expand RFRA to create a mechanism to thwart the federal government's nondiscriminatory use and disposition of its own property. It would open the door to a breadth of new RFRA challenges to federal projects across the panoply of practiced faiths. Any development of national security, energy, or highway projects could be brought to a standstill whenever a Free Exercise claim is filed. Supreme Court precedent is clear that Plaintiff cannot show that the government's nondiscriminatory management of its own land significantly burdens the practice of Plaintiff's members' religion. The requested relief should be denied.

## ARGUMENT

### BACKGROUND: THE RELIGIOUS FREEDOM RESTORATION ACT OF 1993

In 1990, the United States Supreme Court upended previous understandings of the Free Exercise Clause of the First Amendment to the Constitution of the United States under *Sherbert* and *Yoder*. In *Employment Division, Department of Human Resources*, 494 U.S. 872 (1990), the Court announced a profound shift in how the judiciary should examine the Free Exercise Clause, holding that a valid law of "general applicability" that incidentally burdens the free exercise of religion does not infringe on Free Exercise Clause rights. *Id*. at 879.

Immediately following the ruling in *Smith*, draft proposals circulated in Congress to restore the "pre-*Smith*" approach. In 1993, the Religious Freedom Restoration Act (RFRA) overwhelmingly passed both chambers, by a 97-3 margin in the Senate and by voice vote in the House. Congressional Committee reports stressed the plain language of the Act's findings. Sponsored by Rep. Chuck Schumer in the House and Sen. Ted Kennedy in the Senate, the Act declared that:

> (4) in *Employment Division v. Smith*, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and
> (5) the compelling interest test **as set forth in prior Federal court rulings** is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.

42 U.S.C. § 2000bb(a) (emphasis added).

4

The House Committee report explicitly declared that pre-*Smith* case law will remain the guiding star for analyzing Free Exercise claims:

> [T]he Committee's expectation [is] that the courts will look to free exercise of religion cases decided **prior to *Smith*** for **guidance in determining whether or not religious exercise has been burdened** and the least restrictive means have been employed in furthering a compelling governmental interest.

U.S. HOUSE COMMITTEE ON THE JUDICIARY REPORT NO. 103-88, 6-7, (May 11, 1993) (emphases added). The Senate Judiciary Committee echoed similar sentiments, stating, specifically with respect to the government's management of its land:

> [P]re-Smith case law makes it clear that strict scrutiny does not apply to government actions involving only management of internal Government affairs **or the use of the Government's own property or resources**.[1]

U.S. SENATE COMMITTEE ON THE JUDICIARY REPORT NO. 103-111, 9, (July 27, 1993) (emphasis added).

While Congress adopted RFRA as a fix to the perceived shortcomings of *Smith*, RFRA did not limit free exercise clause jurisprudence to an "ossified" pre-*Smith* form. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 715 (2014) (holding that relief under RFRA is not limited to the specific categories of claimants and religious exercises that had found success in pre-*Smith* free exercise cases). Nonetheless, the overarching Free Exercise Clause principles enunciated in pre-

---

[1] The Committee Report includes a footnote to this point that cites *Lyng*, 485 U.S. 439 (1988).

*Smith* cases such as *Sherbert, Yoder,* and *Lyng* remain authoritative precedent for RFRA claims.

## I. *LYNG* REQUIRES DENIAL OF PLAINTIFF'S PRELIMINARY INJUNCTION REQUEST.

Understanding *Lyng* is vital to the proper application of the law in this case. Plaintiff sought a preliminary injunction under the First Amendment, alleging the Free Exercise Clause restricted the government's ability to construct a road across non-trust federal land. In *Lyng*, decided prior to *Smith* when the *Sherbert* and *Yoder* compelling interest test had not yet been challenged, the Court rejected the notion that the "Free Exercise Clause" requires the government to "demonstrate a compelling need" for decisions about how to manage federal land. 485 U.S. at 447. In particular, the Court held:

> Whatever rights the Indians may have to the use of the area, however, those rights do not divest the Government of its right to use what is, after all, *its* land.

*Lyng*, 485 U.S. at 453.

There can be no confusion about the application of *Lyng* to the facts of this case. In *Lyng*, following issuance of an Environmental Impact Statement, the United States Forest Service determined to move forward with its decision to build a six-mile connection between two existing roads and allow timber harvesting. The tribes, supported by the State, raised Free Exercise Clause claims against the government, claiming construction of the road in Six Rivers National Forest would "physically

6

destro[y] the environmental conditions and the privacy without which the [religious] practices cannot be conducted." 485 U.S. at 449 (quoting Respondent Brief for California). The Supreme Court assumed as correct the Ninth Circuit's prediction that the road "will 'virtually destroy the [ ] Indians' ability to practice their religion[.]" 485 U.S. at 451 (quoting decision below).

The federal government owns both Six Rivers National Forest and Oak Flat. Neither property is held in trust or as restricted land on behalf of a tribe or tribal member. *Infra*, 13.

Similar to the claims brought in *Lyng* as to Six Rivers, Plaintiff here asserts that the sacred sites at Oak Flat will undergo "permanent and large scale destruction" and as a result, Plaintiff's members will face "an indescribable hardship."[2] Plaintiff's Emergency Motion for an Injunction Pending Appeal Under Circuit Rule 27-3, Dkt. No. 6, *12. But "[t]he Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986).

---

[2] These claims about the significance of the land at Oak Flat are a matter of dispute within the tribe. Karen Kitcheyan Jones, a member of the San Carlos Apache Reservation, has written that, "Oak Flat has no sacred significance to our Apache people… I support the quiet elder members who have said, 'Oak Flat is not sacred. There are no sacred songs or sacred prayers that say Oak Flat is a Holy Place.'" David F. Briggs, *Apaches Question Actions of their Leadership*, ARIZONA DAILY INDEPENDENT NEWS NETWORK, July 8, 2015. (Viewed at https://arizonadailyindependent.com/2015/07/08/apaches-question-actions-of-their-leadership/ on January 10, 2023.)

7

While "[t]he Free Exercise Clause affords an individual protection from certain forms of governmental compulsion[,] it does not afford an individual a right to dictate the conduct of the Government's internal procedures." *Id.*

Plaintiff argues that relief can be granted in its favor under existing case law. Yet a recent Harvard Law Review article supporting approaches such as that of Plaintiff shows otherwise. According to authors Stephanie Hall Barclay and Michalyn Steele, the legal principles adopted in *Lyng* and *Navajo Nation* mean that a "reconceptualized" approach would be necessary before plaintiff could be enabled "to prove a prima facie substantial burden much more easily." Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1343 (2021). In the context of federal land use issues under RFRA, such as this case, the authors show that "courts have made it essentially impossible for tribal plaintiffs to demonstrate a substantial burden in the context of sacred sites owned by the government." *Id.* at 1302.

Professors Hall and Steele's candor is an accurate reflection of Supreme Court case law. The Supreme Court's rulings in *Lyng* and *Bowen* do make relief in this case "impossible." This Court's decision in *Navajo Nation* confirms that understanding. This Court stated there that a public ski area on federal land that makes artificial snow using recycled wastewater does not substantially burden free exercise of Native Americans under RFRA. In so finding, the Court said that there

8

was "no showing the government has coerced the Plaintiffs to act contrary to their religious beliefs under the threat of sanctions, or conditioned a governmental benefit upon conduct that would violate the Plaintiffs' religious beliefs." *Id*. at 1063. The Court further found that "there is no 'substantial burden' on the exercise of their religion." *Id.*

The Supreme Court ruled the same way for the same reasons in *Lyng*. The Court concluded that the "building of a road or the harvesting of timber on publicly owned land cannot meaningfully be distinguished from the use of a Social Security number in *Roy*." 485 U.S. at 449. The Court recognized that "the challenged Government action" in both cases "would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs." *Id*. Much as this Court said in *Navajo Nation*, the Supreme Court went on to rule that "[i]n neither case, however, would the affected individuals be coerced by the government into violating their religious beliefs; nor would either governmental action penalize religious activity by denying any person an equal share of rights, benefits, and privileges enjoyed by other citizens." *Id.*

Similarly, in *Snoqualmie Indian Tribe*, this Court ruled that the tribe failed to show that federal lands registered under the National Historic Preservation Act, which included features such as waterfalls considered part of a tribe's origin story, did not "demonstrate a substantial burden that would meet the *Navajo Nation*

standard." *Id.* at 1210. Nor was it error for FERC to apply a more favorable "compelling government interest" standard, which benefitted the Snoqualmie, to arrive at its determination. *Id.*

The language of RFRA makes clear that *Lyng*, which pre-dated RFRA, continues to apply under that statute. RFRA explicitly incorporates pre-*Smith* holdings, including *Lyng*, stating that "the compelling interest test *as set forth in prior Federal court rulings*," 42 U.S.C. § 2000bb(a)(5) (emphasis added), is not changed under the Act.

Under *Lyng*, "[w]hatever may be the exact line between unconstitutional prohibitions on the free exercise of religion and the legitimate conduct by government of its own affairs, the location of the line cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." *Lyng*, 485 U.S. at 451. Where that line exists under RFRA and the Free Exercise Clause is straightforward. Without a showing that the government coerced or threatened sanctions on Plaintiff's members to act contrary to their religious beliefs, *see Navajo Nation*, 535 F.3d at 1063, *Lyng*, 485 U.S. at 449, an action relating to the decisions of the federal government on land it owns is not actionable under Free Exercise jurisprudence. *Bowen,* 476 U.S. at 706.

Plaintiff tries to avoid this jurisprudential rule by asking the Court to look past it and adopt its approach, claiming that neither "*Navajo Nation* nor *Lyng* involved

physical destruction." Plaintiff's Emergency Motion for an Injunction Pending Appeal Under Circuit Rule 27-3, Dkt. No. 6, *19. But that statement directly contradicts the positions taken by the plaintiffs against the government in both *Navajo Nation*[3] and *Lyng*.[4] Indeed, the *Lyng* Court emphasized that "[e]ven if we assume that [ ] the G-O road will 'virtually destroy the [ ] Indians' ability to practice their religion,' the Constitution simply does not provide a principle that could justify upholding [the plaintiff's] legal claims." 485 U.S. at 451-52 (citation omitted); *see also Nw. Indian Cemetery Protective Ass'n v. Peterson*, 565 F. Supp. 586, 594 (N.D. Cal. 1983) (*Lyng* district court found that the affected land "constitutes the center of the spiritual world" for the tribes, that "[n]o other geographic areas or sites hold equivalent religious significance," that "use of the high country is essential to performing the [ ] ceremonies [ ] which constitute the heart of the Northwest Indian religious belief system," and that the "Forest Service's own study concluded that '[i]ntrusions on the sanctity of the Blue Creek high country are [ ] potentially destructive of the very core of Northwest [Indian] religious beliefs and practices'").

---

[3] "*It will destroy Hopi culture and everything they are as a people* because the Peaks are sacred and powerful and give Hopi life." *Navajo Nation*, Joint Opening Brief of Appellants Hualapai Tribe, Norris Nez, and Bill Bucky Preston, 2006 WL 2429668. (emphasis added)

[4] "The study concluded that "[i]ntrusions on the sanctity of the Blue Creek high country are [ ] potentially *destructive of the very core of the Northwest [Indian] religious beliefs and practices*." *Lyng*, Brief of Indian Respondents, 1987 WL 880352, 11. (emphasis added)

*Id.* at 595.

In fact, *Lyng* expressly rejected a request "to distinguish [*Lyng*] from *Bowen* on the ground that the infringement on religious liberty [in *Lyng*] is significantly greater[,]" 485 U.S. at 449, because "we cannot say that one form of incidental interference with an individual's spiritual activities should be subjected to a different constitutional analysis than the other." *Id.* at 450.

It is unsurprising to recognize that this Court's rulings are aligned with precedents of other Circuits. In *Wilson v. Block*, 708 F.2d 735 (D.C. Cir. 1983), the Court resisted an effort like the one Plaintiff pushes here, noting:

> *Sherbert* and *Thomas* hold only that the government may not, by conditioning benefits, penalize adherence to religious belief. Many government actions may offend religious believers, and may cast doubt upon the veracity of religious beliefs, but unless such actions penalize faith, they do not burden religion.

*Wilson*, at 743. The Eighth Circuit denied a similar effort to block a land transaction, stating that limiting "the government's use of its own land to avoid disrupting religious ceremonies might well violate the first amendment as it would impose a 'religious servitude' on the property and subsidize the religion in question." *Lockhart v. Kenops*, 927 F.2d 1028 (8th Cir. 1991). *See also Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002) (municipal decision not to abandon municipal road did not violate RFRA).

Plaintiff would require this Court to overturn *Navajo Nation* and *Snoqualmie*

*Indian Tribe*, and to contradict *Lyng* and *Bowen*. Doing so, however, has no basis in the law.

The impact of what Plaintiff seeks would be to broadly expand RFRA authority by creating a mechanism to thwart federal projects. Expansive claims such as the one pressed by Mr. Wilbur Slockish, who went so far as to assert that the entirety of the states of Washington and Oregon are "very sacred," would suddenly require weighty legal consideration. *Slockish v. U.S. Federal Highway Administration*, 2018 WL 2875896, ECF 18-5 at 4-ER-716. Given the panoply of practiced faiths in the United States, Plaintiff's argument would bring to a halt the development of any national security, energy, or highway project because of the risk of a RFRA violation.

Plaintiff cannot show that a significant burden on the practice of members' faith exists. The requested preliminary injunction was properly denied.

## II.   THE APACHE TREATY OF 1852 AND THE LACK OF LAND HELD IN TRUST EXHIBIT NO "CLEAR EXPRESSION" OF ANY RIGHT TO OAK FLAT.

As noted, *supra*, at 7, the U.S. Government owns Oak Flat outright. It does not hold it in trust or as restricted land on behalf of any tribe or tribal individual. Nevertheless, Plaintiff claims *ipse dixit* that a treaty right to the land exists and that the land is held in trust for the Apache. Opening Brief of Apache Stronghold, 47. In doing so, they misapply *McGirt v. Oklahoma*, 591 U.S. __, 140 S.Ct. 2452 (2020).

First, no such trust involving the Oak Flat land exists. Just as "Congress knows

how to withdraw a reservation," *McGirt*, 140 S.Ct. at 2464, so too courts do not "speculat[e] about what Congress might have done had it faced a question that it never faced." *Oklahoma v. Castro-Huerta*, 597 U.S. __, 142 S.Ct. 2486, 2497 (2022) (cleaned up). There is no reason to believe that this land, transferred by the Mexican Government to the United States in 1848, is encumbered by treaty rights of the Apache, and the claim must be denied.

When the U.S. Senate ratified and President Fillmore signed the 1852 Treaty of Santa Fe with the Apache Nation of Indians, TREATY OF JULY 1, 1852, ratified March 25, 1853, 10 STAT. 979, it stated that "the government of the United States" will "designate, settle and adjust their territorial boundaries." No support exists for Plaintiff's vague assertion that Oak Flat has been placed in trust or that it should have been. In fact, Plaintiff does not even attempt to offer any evidence that its trust claim is "in accordance with the meaning [it was] understood to have by the tribal representatives at the council," *Washington State Department of Licensing v. Cougar Den, Inc.*, 586 U.S. __, 139 S.Ct. 1000, 1012 (2019).

No evidence exists, in the record of this case or in the treaty or in the Congressional record, that Oak Flat was placed in federal trust on behalf of the Apache as defined in 18 U.S.C. § 1151. Oak Flat is not within a reservation. Nor is it a dependent Indian community. And there is no evidence that it is an Indian allotment. The brief of *amici*, the Mennonite Church and the Pacific Southwest

Mennonite Conference, seems to recognize the lack of a tribal trust right to the land, yet suggests that there exists some sort of "easement" by adverse possession. Brief of *Amicus Curiae* of the Mennonite Church USA and the Pacific Southwest Mennonite Conference Supporting Plaintiff-Appellant, 18. No evidence of an easement or adverse possession, however, exists and such a position cannot be supported.

Citing *United States v. Mitchell*, 463 U.S. 206, 225 (1983), Plaintiff alternatively claims a "general trust relationship [exists] between the United States and the Indian people," requiring a generic duty to protect the land on behalf of the Plaintiff.[5] Yet again, no record exists of a possessory interest or trust right to Oak Flat. Instead, it is land received directly from the government of Mexico in 1848 and is owned and controlled exclusively by the United States government. Congress possesses the ability to sell it under its Article IV authority to "dispose of [ ] the territory or other property belonging to the United States." U.S. CONST. Art. IV, § 3. Congress has enacted the appropriate legislation to do so. Plaintiff's claim of a trust relationship is both incomplete and incorrect. Plaintiff is entitled to no relief.

## CONCLUSION

Plaintiff goes to great lengths in a vain attempt to circumvent *Lyng* and *Bowen*.

---

[5] *Mitchell* addressed *allotted* land under 18 U.S.C. § 1151(c). The Chamber agrees that the federal government maintains a trust responsibility over *allotted* lands. But Oak Flat was *never* held in trust, allotted or otherwise, for tribes or tribal members.

But none of its efforts to do so succeed. *Lyng* and *Bowen* are binding precedent and the legal principles they articulate govern this case. Further, a trust relationship over Oak Flat does not exist, nor does evidence exist in the record that such a relationship ever existed. The Court should follow Supreme Court precedents, take the opportunity to reaffirm its previous holdings in *Navajo Nation* and *Snoqualmie Indian Tribe*, and deny Plaintiff's requested relief.

Respectfully submitted,

*/s/ Anthony J. Ferate*
ANTHONY J. FERATE, OBA NO. 21171
ANDREW W. LESTER, OBA NO. 5388
COURTNEY D. POWELL, OBA NO. 19444
SPENCER FANE LLP
9400 N. Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114-7423
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
ajferate@spencerfane.com
alester@spencerfane.com
cpowell@spencerfane.com

16

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8: CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Circuit Case Number: 21-15295**

I am the attorney or self-represented party.

**This brief contains 3,764 words**, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

DATED: January 23, 2023     By: */s/ Anthony J. Ferate*_____

17

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 23, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

DATED: January 23, 2023          By: *<u>/s/ Anthony J. Ferate</u>*