No. 21-15295

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

APACHE STRONGHOLD,

*Plaintiff - Appellant*,

v.

UNITED STATES OF AMERICA, et al.,

*Defendants – Appellees.*

Appeal from the United States District Court
for the District of Arizona
Case No. 2:21-cv-00050-PHX-SPL | Hon. Steven P. Logan

## MOTION OF AMERICAN EXPLORATION & MINING ASSOCIATION, WOMEN'S MINING COALITION, AND ARIZONA ROCK PRODUCTS ASSOCIATION FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT AS *AMICI CURIAE* AND TO SHORTEN RESPONSE TIME TO MARCH 1, 2023

DAVID DEBOLD
THOMAS G. HUNGAR
MATTHEW S. ROZEN
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, DC 20036
Phone: 202.955.8551
E-mail: dedebold@gibsondunn.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae* American Exploration & Mining Association ("AEMA"), the Women's Mining Coalition ("WMC"), and the Arizona Rock Products Association ("ARPA") make the following disclosures:

AEMA is a nonprofit organization incorporated in the State of Washington.

WMC is a nonprofit corporation incorporated in the State of Nevada.

ARPA is a nonprofit corporation incorporated in the State of Arizona.

No Amicus has issued stock and therefore no publicly held corporation owns ten percent or more of any stock of an Amicus.

## INTRODUCTION

*Amici curiae* American Exploration & Mining Association ("AEMA"), Women's Mining Coalition ("WMC"), and Arizona Rock Products Association ("ARPA") respectfully move for leave to participate in oral argument in this case. Appellees consent to this motion and have agreed to cede seven minutes of their argument time to *amici curiae*. Thus, granting the motion would not affect the amount of time allotted for oral argument. Apache Stronghold opposes the motion. With the consent of all parties, *amici* filed their timely *amici curiae* brief on May 24, 2021, and provided additional paper copies for the *en banc* Court. To ensure that counsel for *amici* have sufficient time to prepare for oral argument after this Court's ruling on this motion, *amici* respectfully request that this Court shorten the time for Appellant to respond to this motion to 5 days after service of the motion (*i.e.*, March 1, 2023).[1]

---

[1] Apache Stronghold also opposes shortening its answer period on the ground that the motion should have been filed when the argument week was announced in November. But this motion was filed as soon as the circumstances allowed. Appellees deferred their decision whether to consent to this motion until after the Court allotted the number of minutes per side (which did not occur until February 17, 2023), and Appellees thereafter gave their consent today. *Amici* would not have filed this motion without Appellees' consent to share a portion of their argument time.

1

## ARGUMENT

*Amici's* collective membership includes businesses and persons actively involved in the mineral exploration and mining industries who are familiar with the practical and doctrinal issues that this case presents. *Amici* respectfully submit that their participation in oral argument will further aid the Court in considering the impact to the private sector of its ruling in this case.

This Court has repeatedly granted *amici* representing an affected industry leave to participate in oral argument at the *en banc* stage. *See, e.g.*, *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839 (9th Cir. 2017) (en banc); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (en banc); *Wilderness Soc'y v. U.S. Forest Serv.*, 640 F.3d 1173 (9th Cir. 2011) (en banc). The Court should do so here as well for two principal reasons.

**1.** *Amici* are uniquely positioned to present the perspective of businesses and individuals who rely on predictable federal land management decisions, including the disposition of public land. The ruling sought by Plaintiff would have substantial ramifications for *amici*'s members. Their perspective is an important consideration when this Court decides whether Congress intended to restrict or outright thwart the management and disposition of federal property based on religious objections.

Predictability is critical for many important projects and activities, such as mining, that depend on the purchase or use of federal land and require significant

investments of time and money before those projects can even begin. Mining is an "economically vulnerable activity" with "significant capital at risk." Andrew P. Morriss, et al., *Homesteading Rock: A Defense of Free Access Under the General Mining Law of 1872*, 34 Envtl. L. 745, 754 (Summer 2004). Discovering a mineral deposit that can be developed into an economically viable mine is a high risk, time consuming, and expensive endeavor that requires identifying and evaluating an average of 1,000 mineral targets. Nat'l Research Council, Nat'l Acad. of Scis., *Hardrock Mining on Federal Lands* 24 (1999). Before the average mining company even begins construction, it "will have seen outflows of $75-265 million, without any offsetting revenue." SNL Metals & Mining, *Permitting, Economic Value and Mining in the United States* 30 (June 19, 2015), https://nma.org/wp-content/uploads/2016/09/SNL_Permitting_Delay_Report-Online.pdf. For Resolution Copper, that outflow is already $2 billion. *See* Clifford Krauss, *A Copper Mine Could Advance Green Energy but Scar Sacred Land*, N.Y. Times (Jan. 27, 2023) https://www.nytimes.com/2023/01/27/business/energy-environment/copper-mine-arizona.html?smid=url-share.

Appellant presents a different picture, seeking injunctive relief on the ground that sacred land is at imminent risk of being altered. Dkt. 6-1, at 28 ("[T]he detriment to Plaintiffs' religious exercise" from the land transfer "is immediate,

3

permanent and irreversible.").[2] For the reasons just noted, that is a significant misconception. Once the land exchange takes place, Resolution Copper would need to engage in extensive and time-consuming post-conveyance "feasibility study work and detailed study of the geologic characteristics and mineralization of the orebody, as well as environmental studies," before any mining activity might occur. Dkt. 18-1, at 9. This further work could take years. The need for these steps simply reinforces the ways in which *private* use of land after the government has sold it to a private party cannot support a claim of substantial *government* burdens on religion.

The same misconception also highlights the importance to *amici* and others in the private sector of a ruling that provides necessary certainty and predictability in this area of the law. "The larger the number of factors" that are both unpredictable and external to the mining company, such as "[l]egal challenges," "the greater the risk for the investment." SNL Metals & Mining, *Permitting, Economic Value and Mining in the United States* 8 (June 19, 2015), https://nma.org/wp-content/uploads/2016/09/SNL_Permitting_Delay_Report-Online.pdf. And "[w]hen the permitting process becomes excessively long or unpredictable, it can lead to unexpected incremental costs, which have a serious impact on the economic viability of a project." *Id.* Secure and predictable rights to land and permits throughout the entire mining

---

[2] References to "Dkt." in this motion refer to entries on this Court's docket in this case.

4

lifecycle are therefore "critical to inducing investment in long-term mining operations." Nat'l Research Council, Nat'l Acad. of Scis., *Hardrock Mining on Federal Lands* 24 (1999).

The need for certainty and predictability is particularly compelling in this case, where a private company's reasonable reliance interests are supported by an Act of Congress explicitly mandating the land exchange that Appellant seeks to enjoin. A ruling permitting litigants to block even a congressionally approved project would have a devastating effect on the ability and willingness of private industry and investors to make capital investments in reliance on government approvals and assurances.

*Amici* can help explain how Apache Stronghold's misguided interpretation of the Religious Freedom and Restoration Act ("RFRA") would have highly disruptive effects on private-sector industries that depend on the purchase and use of federal land. Companies and investors would be reluctant to spend several years and massive amounts of money ($2 billion in this case) if, after all those efforts, their rights to purchase or use federal land can be eliminated by any person who raises religious-exercise objections. And such a decision would cast a cloud of legal uncertainty over the ongoing validity of land-use permits that the federal government has issued to private entities, from mining companies to ski mountains.

*Amici* are ideally situated to speak on behalf of the private industries that would be adversely affected by a decision in Apache Stronghold's favor. AEMA is a 1,700-member national trade association whose members are actively involved in prospecting, exploring, mining, and mine reclamation and closure activities on both private and federally administered land throughout the United States, and in supplying and servicing those activities. WMC is a grassroots organization of women across the country involved in every sector of the mining industry, including metal, coal, iron ore, construction-material, and industrial-mineral companies; manufacturers and suppliers; trade associations; and consultants. For more than 60 years, ARPA has represented companies producing nearly all the aggregate materials in Arizona, such as concrete and asphalt. *Amici* regularly represent the interests of their industries in litigation, in meetings with elected officials, and in public advocacy.

**2.** *Amici* are also well positioned to assist the Court in understanding why, as they argued in their brief, RFRA has no role to play in this case. *See* Dkt. 55, at 7–11. Apache Stronghold's position creates an irreconcilable conflict between RFRA and the 2014 Land Exchange Act, which specifically "directed" the Secretary of Agriculture to consummate the land exchange between the United States and Resolution Copper. *See* 16 U.S.C. § 539p(c)(1). Because the 2014 Land Exchange Act is a more specific, subsequently enacted statute, its unequivocal commands must prevail. Appellees raised this issue in their brief at the panel stage, Dkt. 51, at 16

n.3, and again in their supplemental brief opposing rehearing en banc. Dkt. 95, at 16–19. *Amici*, who developed the argument more extensively in their brief, are well-suited to address any questions the *en banc* Court may have on this independent ground to affirm.

## CONCLUSION

Given the significant interests of *amici curiae* and their members in the implications of this case and their familiarity with the legal issues presented, *amici curiae* respectfully submit that their participation in oral argument would materially assist the Court and respectfully request that they be granted leave to participate.

Dated: February 24, 2023    Respectfully submitted,

/s/ David Debold
DAVID DEBOLD
THOMAS G. HUNGAR
MATTHEW S. ROZEN
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, DC 20036
Phone: 202.955.8551
E-mail: dedebold@gibsondunn.com

*Counsel for Amici Curiae*

7

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 27(d) and Ninth Circuit Rule 27-1, the attached motion is proportionately spaced, has a typeface of 14 points, complies with the word limits set forth in Fed. R. App. P. 27(d) because it has 1,445 words as calculated by Microsoft Word 2019, and complies with the page limit set forth in Circuit Rule 27-1(1)(d) because it is 7 pages.

*/s/ David Debold*
DAVID DEBOLD
