**No. 21-15295**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

APACHE STRONGHOLD,

*Plaintiff/Appellant,*

v.

UNITED STATES OF AMERICA, et al.

*Defendants/Appellees*

On Appeal from the United States District Court
for the District of Arizona
No. 21-cv-50 (Hon. Steven P. Logan)

---

### MOTION OF RESOLUTION COPPER MINING, LLC
### TO INTERVENE AS DEFENDANT/APPELLEE

---

Michael R. Huston
Christopher D. Thomas
Andrea J. Driggs
Samantha J. Burke
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Phone:   +1.602.351.8000
E-mail:  MHuston@perkinscoie.com

*Attorneys for Proposed-Intervenor*
*Resolution Copper Mining, LLC*

# Table of Contents

**Page**

Table of Authorities..................................................................... ii

Introduction....................................................................................1

Argument.........................................................................................4

I.    Resolution is entitled to intervene as of right. .............................4

    A.    Resolution has significant protectable interests that may be impaired by further appellate proceedings..........................................................................5

    B.    Resolution's intervention request is timely.........................9

    C.    The existing parties may not adequately represent Resolution's interests. .........................................14

II.    Alternatively, this Court should grant Resolution permissive intervention. .............................................17

Conclusion ....................................................................................21

Certificate of Compliance................................................................22

Certificate of Service .....................................................................23

# Table of Authorities

**Page**

CASES

*Allied Concrete & Supply Co. v. Baker,*
904 F.3d 1053 (9th Cir. 2018) ............................................................. 15

*Apache Stronghold v. United States,*
No. 21-cv-50 (D. Ariz. 2021) ..............................2, 3, 4, 5, 15, 16, 17, 18

*Arizona Mining Reform Coalition v. United States,*
No. 21-cv-122 (D. Ariz. 2021) ............................................................... 2

*Brumback v. Ferguson,*
343 F.R.D. 335 (E.D. Wash. 2022) ..................................................... 20

*Cameron v. EMW Women's Surgical Ctr.,*
142 S. Ct. 1002 (2022) ............................................................. 4, 10, 18

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
647 F.3d 893 (9th Cir. 2011) ............................................................... 14

*City of Pontiac Retired Emps. Ass'n v. Schimmel,*
751 F.3d 427 (6th Cir. 2014) ............................................................... 10

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.,*
172 F.3d 104 (1st Cir. 1999) ............................................................... 20

*Day v. Apoliona,*
505 F.3d 963 (9th Cir. 2007) ....................................................... 10, 13

*Democratic Nat'l Committee v. Hobbs,*
No. 18-15845 (9th Cir. Apr. 9, 2020) ................................................. 10

*Forest Conservation Council v. U.S. Forest Service,*
66 F.3d 1489 (9th Cir. 1995) ......................................................... 8, 14

*Grand Canyon Trust v. Provencio,*
26 F.4th 815 (9th Cir. 2022) ................................................................. 6

*Igartua v. United States*,
636 F.3d 18 (1st Cir. 2011) ................................................................ 10

*Legal Aid Society of Alameda County v. Dunlop*,
618 F.2d 48 (9th Cir. 1980) ................................................................. 9

*NAACP v. New York*,
413 U.S. 345 (1973) ............................................................................. 9

*Peruta v. County of San Diego*,
824 F.3d 919 (9th Cir. 2016) .................................................... 4, 5, 10

*San Carlos Apache Tribe v. U.S. Forest Service*,
No. 21-cv-68 (D. Ariz. 2021) ....................................................... 2, 11

*Sierra Club v. U.S. E.P.A.*,
995 F.2d 1478 (9th Cir. 1993) ............................................................. 5

*Southwest Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ............................................................. 15

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ........................................................... 19

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ........................................................................... 14

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) ........................................................................... 10

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ............................................................... 6

*United States v. American Telephone & Telegraph Co.*,
642 F.2d 1285 (D.C. Cir. 1980) .................................................... 9, 10

*United States v. Shumway*,
199 F.3d 1093 (9th Cir. 1999) ............................................................. 6

*Western Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) ............................................. 5, 7, 11, 13

*WildEarth Guardians v. U.S. Forest Service,*
573 F.3d 992 (10th Cir. 2009) .................................................................. 8

*Yniguez v. Arizona,*
939 F.2d 727 (9th Cir. 1991) ............................................................... 10

**STATUTES**

43 U.S.C. § 1701(a)(12) ........................................................................... 7

Southeast Arizona Land Exchange Act,
16 U.S.C. § 539p ................................................. 1, 2, 3, 5, 8, 15, 18, 19

General Mining Act of 1872, 30 U.S.C. § 21 *et seq.* ............................. 6, 7

**OTHER AUTHORITIES**

Exec. Order No. 13953, 85 Fed. Reg. 62539, 62540 (Sept. 30, 2020) ....... 7

Defense Production Act of 1950, 87 Fed. Reg. 19775 (Apr. 6, 2022) ........ 7

Circuit Advisory Committee Note (5) ....................................................... 2

Circuit Rule 27-1 ...................................................................................... 2

Fed. R. App. P. 27 .................................................................................... 2

Fed. R. Civ. P. 24 ................................................... 2, 4, 5, 8, 14,17, 18, 20

U.S. Const. art. IV, § 3, cl. 2 ................................................................. 15

# Introduction

This case concerns the Southeast Arizona Land Exchange Act, in which Congress directed the Secretary of Agriculture to convey title to certain copper-bearing National Forest Service lands to Resolution Copper Mining, LLC in exchange for conservation lands owned by Resolution and other payment. 16 U.S.C. § 539p. Congress intended that Resolution will use those lands to develop a mine that will create thousands of good jobs and produce huge quantities of American copper essential for electric vehicles, power transmission, and clean-energy projects.

Resolution now moves to intervene in this Court for the limited purpose of enabling it to participate in any proceedings in the Supreme Court of the United States that may follow this Court's en banc decision— including, potentially, briefing on any application to the Supreme Court for emergency relief pending further review. Resolution *does not* seek to pause or otherwise delay this Court's ongoing deliberations, and it does not intend to file any briefing in this Court on matters that the Court has already decided or taken under consideration. Intervention therefore will not affect this Court's work and will not prejudice any party. Allowing intervention will simply ensure that, should either Plaintiff/Appellant

Apache Stronghold or Defendant/Appellee the United States seek review of this case in the Supreme Court, or should the United States decline to continue defending the Land Exchange Act following this Court's decision, Resolution will be able to act as a party to protect its interests in the statute and to answer questions that the Supreme Court may have about the mining project.[1]

On May 29, 2023, the district court granted Resolution's motion to intervene in this case under Federal Rule of Civil Procedure 24, finding both that Resolution was entitled to intervene as of right and that permissive intervention was warranted. D. Ct. Dkt. 115, No. 21-cv-50, 2023 WL 3692937 (D. Ariz.) ("District Court Intervention Order"). That order followed two other district court decisions allowing Resolution to intervene in other cases challenging the land transfer.[2] The district court in this case found that Resolution's intervention was timely under the cir-

---

[1] The United States does not oppose this motion. Plaintiff does oppose the motion. *See* Fed. R. App. P. 27; Circuit Rule 27-1 & Circuit Advisory Committee Note (5).

[2] *See Arizona Mining Reform Coalition v. United States*, No. 21-cv-122 (intervention granted February 24, 2021), Dkt. 22; *San Carlos Apache Tribe v. U.S. Forest Service*, No. 21-cv-68 (intervention granted March 23, 2021), Dkt. 47.

cumstances, that Resolution has significant interests in the Land Exchange Act that is the subject of this action, that disposition of this action may impair Resolution's ability to protect its interests, and that Resolution's interests may not be adequately represented by the existing (government) defendants. The court also found that allowing Resolution to intervene would not cause undue delay or prejudice any party.

The district court's findings and conclusions were sound, and they also support intervention in this Court. As noted above, Resolution seeks only the opportunity to participate in any future proceedings after issuance of this Court's en banc decision—including potentially to address questions that the Supreme Court may have about Plaintiff's claims of irreparable harm arising from the mining project—so Resolution's motion is timely as to that purpose. Its motion also is timely in light of recent developments in the litigation in this Court: namely, a recent letter filed by the United States altering its previous timeline for reissuing the Final Environmental Impact Statement (FEIS), which is now on hold indefinitely. That filing demonstrates that Resolution's interests may not be adequately represented by the existing parties. And more generally, as the district court correctly found, Resolution has "private interests

that the federal government does not share and cannot represent." District Court Intervention Order 3.

## Argument

This Court evaluates motions to intervene in this Court by applying the same Rule 24 standard used by district courts. *See, e.g.*, *Peruta v. County of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016); *see also Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1008, 1010–1013 (2022) (citation omitted) (explaining that appellate courts commonly resolve intervention requests by relying on "the 'policies underlying intervention' in the district courts"). Just two weeks ago, the district court in this case found that Resolution was entitled to intervene as of right and also that permissive intervention was warranted. This Court should reach the same conclusions and permit Resolution to intervene.

## I. Resolution is entitled to intervene as of right.

This Court has held that "a party may intervene as of right" in an appellate proceeding if:

> (1) it has a significant protectable interest relating to the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent its interest.

*Peruta*, 824 F.3d at 940 (quoting *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007)); *cf.* Fed. R. Civ. P. 24(a). This Court "interpret[s] these requirements broadly in favor of intervention." *Western Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Resolution satisfies all four requirements here.

### A. Resolution has significant protectable interests that may be impaired by further appellate proceedings.

Resolution plainly has significant protectable interests in the Land Exchange Act that is the subject matter of this action. And further proceedings after this Court rules—either in the form of a petition for a writ of certiorari or an application for emergency relief pending further review—could certainly impair or impede Resolution's ability to protect those interests. *See* District Court Intervention Order 2 (finding these two elements uncontested).

**Significant protectable interests.** Resolution has multiple distinct property interests at stake in this action. Most obviously, it has real-property interests granted to it by a federal statute. *See* 16 U.S.C. § 539p(a). Plaintiff's lawsuit seeks to deprive Resolution of those interests, which Congress conferred when it enacted the Land Exchange Act. *See, e.g., Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1483 (9th Cir. 1993)

– 5 –

(real property interests "are squarely in the class of interests tradition-
ally protected by law"), *abrogated on other grounds by Wilderness Society
v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011). And beyond title to
the land itself, Resolution has long held unpatented mining claims in the
land that are protected by the General Mining Act of 1872, 30 U.S.C. § 21
*et seq. See* Declaration of Victoria Peacey ("Peacey Declaration") ¶¶ 9, 17
(attached as Exhibit A); *see also United States v. Shumway*, 199 F.3d
1093, 1099–1100 (9th Cir. 1999) ("[A] mining 'claim' is not … a mere
assertion of a right—but rather is a property interest[.]"); *Grand Canyon
Trust v. Provencio*, 26 F.4th 815, 821–822 (9th Cir. 2022) ("Locating a
mining claim gives the claimant a vested possessory right to the real
property at issue.").

While those property interests are more than sufficient, Resolution
also has "concrete" economic interests "related to the underlying subject
matter of the action" that constitute additional protectable interests war-
ranting intervention. *United States v. Alisal Water Corp.*, 370 F.3d 915,
919 (9th Cir. 2004). Over the last 18 years, Resolution has invested more
than $2.3 billion dollars to design and build infrastructure and reclama-
tion facilities, buy conservation lands, collect and analyze data, and

maintain its unpatented mining claims in the subject property. Peacey Declaration ¶¶ 15–17. Resolution has a strong interest in protecting that huge investment, which it intends to realize by building and operating a mine that will supply thousands of jobs, produce billions of dollars in economic value for Arizona and the Nation, and contribute to essential energy projects, including clean-energy initiatives. *Id*. ¶¶ 18–21.[3] There can be no serious doubt that those interests support intervention. *See Western Watersheds Project*, 22 F.4th at 834, 837–838 (reversing denial of intervention to holder of oil and gas leases that "had already spent more than $19.7 million to acquire, explore, and develop the leases," acknowledging the lessee's "significant financial and property interests at

---

[3] *See* 43 U.S.C. § 1701(a)(12) (recognizing "the Nation's need for domestic sources of minerals"); Presidential Determination No. 22-11 of March 31, 2022, Memorandum on Presidential Determination Pursuant to Section 303 of the Defense Production Act of 1950, as amended, 87 Fed. Reg. 19775 (Apr. 6, 2022) ("To promote the national defense, the United States must secure a reliable and sustainable supply of such strategic and critical materials."); 30 U.S.C. § 21a (developing domestic mineral resources is critical for national security); Exec. Order No. 13953, Addressing the Threat to the Domestic Supply Chain From Reliance on Critical Minerals From Foreign Adversaries and Supporting the Domestic Mining and Processing Industries, 85 Fed. Reg. 62539, 62540 (Sept. 30, 2020) ("[O]ur Nation's undue reliance on critical minerals, in processed or unprocessed form, from foreign adversaries constitutes an unusual and extraordinary threat … .").

stake"); *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995–996 (10th Cir. 2009) (citation omitted) ("threat of economic injury from the outcome of [the] litigation undoubtedly" gave a mine operator "the requisite interest" for intervention where environmental group challenged the Forest Service's approval of a plan for the mining operation).

**Impairment of Resolution's interests.** It is similarly beyond dispute that Resolution "would be substantially affected in a practical sense by the determination made" in this action. Fed. R. Civ. P. 24, advisory committee's note to 1966 amendment. If Plaintiff prevails in this Court and the United States declined to file a petition for a writ of certiorari, or if the United States prevails but the transfer were enjoined pending certiorari, then for as long as the injunction remains in place, Resolution will be deprived of its real-property interests and prevented from realizing any benefit from its already substantial investment in the transaction that was promised to it in the Land Exchange Act.

In short, Plaintiff's claims present textbook risks of impairment to Resolution's rights, as this Court has recognized under similar circumstances. *See, e.g.*, *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995) (a prospective intervenor's legally pro-

tectable interests are practically impaired for purposes of intervention where a plaintiff seeks injunctive relief that will have direct, immediate, and harmful effects on those interests), *abrogated on other grounds by Wilderness Society*, 630 F.3d 1173.

## B. Resolution's intervention request is timely.

Resolution's request for intervention is timely in light of the limited purpose of intervention in this Court and the recent developments that revealed greater space between the government's interests and those of Resolution. This Court and the Supreme Court have observed that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973); *see Legal Aid Society of Alameda County v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980). And in assessing timeliness, "it is important to consider the purpose for which intervention is granted." *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980) (reversing denial of post-judgment intervention for purposes of filing an appeal).

Resolution's motion is timely because it is aimed only at enabling the company to participate in whatever appellate proceedings may ensue after the en banc Court issues its decision. A motion to intervene for the

purpose of participating in further appellate proceedings is a common basis for intervention, and courts—including this one—have granted such requests. *See, e.g.*, *Peruta*, 824 F.3d at 940–941; *Democratic Nat'l Committee v. Hobbs*, No. 18-15845 (9th Cir. Apr. 9, 2020), Dkt. 137 (granting motion to intervene after this Court had issued its opinion so that intervenor could file a petition for a writ of certiorari); *Day*, 505 F.3d at 966; *see also Cameron*, 142 S. Ct. at 1008 (reversing denial of intervention in court of appeals after panel had already issued its decision); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–396 (1977) (reversing denial of intervention by nonparty that sought to appeal after district court proceedings, and collecting cases); *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (granting intervention to allow intervenor to file petition for rehearing en banc); *Igartua v. United States*, 636 F.3d 18 (1st Cir. 2011) (same); *Yniguez v. Arizona*, 939 F.2d 727, 730 (9th Cir. 1991) (holding that motion to intervene made for the "purpose of pursuing an appeal" was timely); *American Telephone*, 642 F.2d at 1294 ("[F]or the limited purpose of taking an appeal … MCI's motion to intervene at this point was entirely timely.").

In short, notwithstanding the pendency of Plaintiff's appeal in this Court, Resolution's motion is timely in relation to its purposes: to participate in any *future* appellate proceedings that may occur after the Court's en banc decision, and to ensure that the Supreme Court will be able to consider Resolution's unique knowledge of the land and the mine in response to any claims by Plaintiff of irreparable harm before a final decision. *See, e.g.*, *Western Watersheds Project*, 22 F.4th at 839 (reversing district court's denial of intervention for purposes of filing an appeal because "the stage of the proceedings at which [intervenor] sought to participate supports the conclusion that its request was timely").

Resolution's intervention request is timely for the additional reason that it is precipitated by recent developments in the litigation. The Forest Service had repeatedly represented that the United States would re-issue the FEIS in "spring" or "early summer," including during the en banc argument and shortly thereafter in a filing in a related proceeding. *See* Joint Status Report, *San Carlos Apache Tribe v. U.S. Forest Service*, No. 21-cv-68 (D. Ariz. April 17, 2023), Dkt. 58 (Forest Service stating its estimate that environmental analysis "will be completed and [the FEIS] re-published in late Spring or early summer 2023"). But just a few weeks

ago, the United States changed course. It told this Court that it no longer intends to republish the FEIS at the announced time, and it "has not yet identified a timeframe" when it will be ready to do so. Dkt. 168.

This recent announcement by the United States has revealed a possible divergence between its interests and Resolution's. Until that announcement, Resolution had expected that the FEIS would be issued no later than "early summer 2023"—that is, likely either before or roughly contemporaneous with this Court's en banc ruling. But the government's announcement calls that timing into question. It is already June, and the government has promised it will not republish the FEIS without at least sixty days' notice. Resolution wants no further delay because issuance of the FEIS will trigger the government's obligation under the statute to complete the land exchange. But the government's position is unclear (at best), and it may now want to pause reissuance of the FEIS indefinitely.

Moreover, during this Court's en banc oral argument, members of the panel raised factual questions that had not been the focus of the district court or the three-judge panel, and those questions are particularly within Resolution's knowledge. Multiple judges asked, for example, about the extent (if any) of subsidence that the proposed copper mine would

cause, and where and when such subsidence would occur. As the future owner of the property and the mine planner and developer, Resolution would be ideally positioned to address questions of that nature if Plaintiff seeks an emergency injunction after this Court rules based on a claim of irreparable harm before further appellate proceedings can complete. By granting intervention now, this Court will enable the Supreme Court to have the benefit of Resolution's knowledge on those issues.

Importantly, no party will be prejudiced by Resolution's intervention. Resolution has no plan to submit briefing or arguments to this Court prior to its ruling, and there is accordingly no reason for Resolution's addition as a party to affect this Court's en banc decision or its timing. *See, e.g.*, *Day*, 505 F.3d at 965 (alteration in original) (citation omitted) (granting intervention to a party that had until then sought participation only through amicus briefing, because its intervention "will not create delay by inject[ing] new issues into the litigation"). Plaintiff will not be prejudiced by Resolution's presence in any post-decision appellate proceedings, and Plaintiff of course will have an opportunity in any such proceedings to contest Resolution's arguments about the plans and timeline for development of the mine. *Cf. Western Watersheds Project*, 22

F.4th at 839 ("[t]hat [a proposed intervenor] might raise new, legitimate arguments is a reason to grant intervention, not deny it"). Nor would intervention here interrupt any proceedings in the district court once the stay is lifted there, as Resolution already has been permitted to intervene in that court.

### C. The existing parties may not adequately represent Resolution's interests.

While Resolution's interests in these proceedings have generally been adequately represented by the existing defendants, recent events have caused Resolution to conclude that the United States may not adequately represent its interests in further appellate proceedings. An applicant's burden of showing that representation "may be" inadequate is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). As Rule 24's use of the word "may" signifies, "certainty … that existing parties will not adequately represent" the applicant's interests is not required. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).

"Inadequate representation is most likely to be found" where, as here, "the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499 (cita-

tions omitted). That is because, as this Court has repeatedly recognized, the government's considerations are generally "broader than the profit motives animating developers." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *see also Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (citation omitted) (an intervenor's "interests are potentially more narrow than the public's at large, and the [government's] representation of those interests 'may [be] inadequate'"). Under such circumstances, "[t]he interests of government and the private sector may diverge," and intervention is warranted. *Southwest Center for Biological Diversity*, 268 F.3d at 823–824.

The district court just recently found exactly those circumstances in this case. District Court Intervention Order 5–6. Focusing on the distinct interests and goals of each party, that court noted that the United States has a strong interest in defending its general constitutional authority to manage and dispose of its own land*, see* U.S. Const. art. IV, § 3, cl. 2—an interest on which the United States and this Court focused during the en banc oral argument. The Forest Service also has an interest in ensuring its ability to comply with the non-discretionary duty that Congress imposed on it in the Land Exchange Act, an interest that exists

– 15 –

separate and apart from either the mine or the land itself. And as explained above, the government has a general interest in serving the broader needs of the public and their constituents. This is particularly so in a case involving an FEIS, whose very purpose is to evaluate various viewpoints and competing needs. By contrast, Resolution's interest is to develop the mine that it has designed and plans to construct on this parcel of land, and to protect its $2.3 billion and 18-year investment in the project. Because "Defendants' public considerations in carrying out the [land transfer] are different from Resolution's private, profit-oriented ones," Resolution's interests may not be adequately represented by the existing parties. District Court Intervention Order 6.

The district court additionally recognized that "those differing interests may lend themselves to different arguments and elements that the existing Defendants cannot or would not offer" in the litigation. *Id*. Indications of that divergence recently surfaced in this Court. The en banc panel asked questions at oral argument about factual matters regarding the mine plan that are particularly within Resolution's knowledge, making plain that Resolution, not the government, should be offering that information to the Supreme Court if this case reaches that

Court on arguments about irreparable harm. And the recent announcement by the Forest Service postponing the timeframe for issuing the FEIS shows the government's separation from Resolution's interest in having the land transfer consummated without further delay if this Court rules in favor of the government. On the other hand, if the government does not prevail in this Court, then the Department of Justice may not decide whether to file a petition for a writ of certiorari until shortly before the deadline, making it imperative for Resolution to have an opportunity to prepare its own petition for a writ of certiorari upon this Court's decision.

In short, "Resolution may have private interests that the federal government does not share and cannot represent." District Court Intervention Order 6. This Court should permit Resolution to intervene as of right so that it can fully represent its interests in any future appellate proceedings and allow the Supreme Court to consider this case with the benefit of all relevant factual information.

## II. Alternatively, this Court should grant Resolution permissive intervention.

In the alternative, this Court should grant Resolution permissive intervention, consistent with Rule 24(b), in order to enable the Supreme

Court to consider this case with the benefit of Resolution's specialized knowledge. Appellate courts rely on Rule 24 when analyzing permissive intervention in appellate proceedings. In *Cameron*, for example, the Supreme Court invoked Rule 24 to reverse the denial of permissive intervention when a party moved to intervene in a court of appeals after extensive appellate proceedings—including briefing, argument, and decision—had already taken place. *See* 142 S. Ct. at 1008.

Rule 24(b) provides that, on timely application, "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is thus appropriate when the motion is timely and the prospective intervenor's claims or defenses share common questions of fact or law with the existing action.

Resolution's request for intervention is timely for the reasons stated above. And as the district court found, there can be no serious dispute that "Resolution's defenses" of the Land Exchange Act "involve common questions of law and fact" with the existing action. District Court Intervention Order 7. Plaintiff did not contest that point in the district court. Resolution, as the statutory beneficiary of a land exchange mandated by

Congress that Plaintiff is suing to halt, is uniquely positioned to defend the property interests conferred by the Land Exchange Act and to explain the faults in Plaintiff's argument that it will suffer imminent, irreparable harm without a preliminary injunction.

Additional circumstances in this particular litigation make permissive intervention particularly appropriate here. Courts consider "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

All of those factors weigh in favor of permitting Resolution to intervene. As described above, Resolution has significant property interests at stake and has invested over $2.3 billion in the copper mine project. Resolution plainly has standing to raise its defenses to Plaintiff's claims. And as the landowner and mine developer, it can offer perspective and knowledge to aid in resolving the merits of the parties' claims and

defenses. Multiple courts have recognized that a party's ability to present special knowledge to the court is a proper basis for permissive intervention under Rule 24(b). *See, e.g.*, *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999) ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention."); *Brumback v. Ferguson*, 343 F.R.D. 335, 346 (E.D. Wash. 2022) (granting intervention under Rule 24(b) because, even if the government adequately represented the intervenor's interests, "[t]he expertise that the [intervenor] offers in the particular subject matter of this case is likely to be useful").

By granting intervention, this Court can ensure that Resolution has the opportunity to participate fully in any future Supreme Court proceedings in order to protect its congressionally conferred private-property interests, to protect its multi-billion-dollar investment in the project, and to provide the Supreme Court with all relevant factual information concerning Plaintiff's claims of irreparable harm from the project.

## Conclusion

For the foregoing reasons, Resolution respectfully requests that this Court permit it to intervene as a defendant-appellee.

Dated:  June 16, 2023

PERKINS COIE LLP

/s/ *Michael R. Huston*
Michael R. Huston
Christopher D. Thomas
Andrea J. Driggs
Samantha J. Burke
2901 North Central Avenue,
Suite 2000
Phoenix, Arizona 85012-2788
Phone:  +1.602.351.8000
E-mail: MHuston@perkinscoie.com

*Attorneys for Proposed-Intervenor*
*Resolution Copper Mining, LLC*

## Certificate of Compliance

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

This motion complies with the length limits Fed. R. App. P. 27(d)(2)(A) because this motion contains 3,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Century Schoolbook at 14-point font. *See* Fed. R. App. P. 27(d)(1)(E).

Dated: June 16, 2023                    **PERKINS COIE LLP**


                                        /s/ *Michael R. Huston*

                                        *Attorneys for Proposed-Intervenor*
                                        *Resolution Copper Mining, LLC*

– 22 –

## Certificate of Service

I hereby certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: June 16, 2023

PERKINS COIE LLP

/s/ *Michael R. Huston*

*Attorneys for Proposed-Intervenor Resolution Copper Mining, LLC*

162356294

– 23 –

# Exhibit A

## DECLARATION OF VICTORIA PEACEY

I, Victoria Peacey, declare as follows:

1.     I am over the age of 18 and am competent to make this declaration.  If called as a witness, I could and would testify to the following facts, which are within my personal knowledge and based on my review of relevant documents.

2.     I joined Resolution Copper Mining LLC ("Resolution") in September 2010. Since March 14, 2023, I have been the President and General Manager, responsible for overseeing all aspects of planning, development, and operations of the project. I have been serving in this role as acting director since August 2022.

3.     Previously, I was the Chief of Staff to the Chief Operating Officer for Rio Tinto Copper from July 2021 to July 2022, where I was accountable for implementing the strategic direction for copper, including operations, projects, and growth across the globe. Before that I worked as the Senior Business Partner - Community and Social Performance ("CSP"), Copper – America and Joint Ventures from February 2021 to July 2021.  In that role, I lead the CSP teams at various Rio Tinto operations, including at Resolution, while also continuing to lead the federal permitting activities at Resolution.

4.     From 2012-2021, I worked as the acting Vice President of External Affairs (July 2012-December 2012), the Senior Manager of Environment and Communities (January 2013-December 2015) and Senior Manager of Permitting and Approvals (January 2016-January 2021), in which I managed permitting processes at the federal, state, and local levels for Resolution.

5.     Before joining Resolution, I spent approximately ten years managing environmental affairs and permitting at several Rio Tinto facilities, including America's only primary nickel mine and one of the world's largest open-pit copper mines.

6.     I hold two degrees from the University of Western Ontario:  a Bachelor of Science degree in applied geosciences and a Master of Science degree in civil and environmental engineering.

**Resolution Copper:  Overview of the Project**

7.     Resolution is a limited liability company owned by subsidiaries of the Rio Tinto Group and BHP Group, Ltd.

8.     Resolution is currently developing one of the world's largest untapped copper deposits. I will refer to this work as the "Project."

9.     In 2004, Resolution acquired property and equipment associated with the historic Magma Copper Mine near Superior, Arizona, in an area that forms part of the Copper Triangle, in the Pioneer Mining district.  Mining in the Superior area reportedly began in the late 1880s.  Resolution holds approximately 185 unpatented mining claims near Superior, Arizona within the area commonly known as "Oak Flat" or "Oak Flats", in Pinal County, Arizona (the "Claims").  The Claims are located on lands, the surface of which are administered by the Tonto National Forest.  The Claims were located by Resolution or a predecessor in interest between 1903 and 2011.

10.     Resolution's Project work began in 2005, when it started reclamation work at the former Magma West Plant.  That work lasted about 15 years and cost approximately $75 million.   Resolution's reclamation efforts restored the West Plant area to state regulatory standards.

11.     In December 2014, Congress passed the Southeast Arizona Land Exchange and Conservation Act, 16 USC § 539p (the "Act"), as part of a lands package that was included in the National Defense Authorization Act.  The Act provides that the Federal land, as defined by the Act, shall be exchanged for non-Federal lands held by Resolution.

2

For purposes of the Act, Federal lands includes a portion of Oak Flat known as the "Oak Flat Withdrawal Area" and a portion of the Tonto National Forest lands where Resolution's Claims are located. A detailed map depicting the Claims relative to the boundaries of the Federal land is attached as Exhibit A.

12. Resolution parcels to be conveyed to the Forest Service and Bureau of Land Management ("BLM") include high-priority conservation lands that will be added to National Forests in Arizona, as well as lands that will be added to the San Pedro Riparian and Las Cienegas national conservation areas, managed by the BLM.

13. Pursuant to the Act, Resolution has agreed to pay all costs that are associated with the land exchange, including any required environmental analysis.

14. The Act also provides for appraisals of the Federal land and non-Federal land. The appraisal is to include a detailed income capitalization approach analysis of the market value of the Federal land. Annually, Resolution will report the quantity of locatable minerals produced during the preceding calendar year in commercial quantities from the Federal land. If the cumulative production of valuable locatable minerals produced in commercial quantities from the Federal land exceeds the quantity of locatable minerals from the Federal land used in the income capitalization approach in the initial appraisal, Resolution will pay the United States a value adjustment payment for the quantity of excess production at the same rate assumed for the income capitalization approach analysis. Those payments are to be used for maintenance, repair, and rehabilitation projects for Forest Service and Bureau of Land Management assets.

**Resolution's Economic Impact**

15. To date Resolution has invested approximately $2.3 billion in the Project.

3

16.     Resolution's investments include purchases of conservation lands to be deeded to the United States, infrastructure development, reclamation activities, data collection, and investment in the environment, local communities, and Native American Tribes. To date, Resolution has invested about $10.9 million in more than 970 local initiatives, which span education, the environment, community development, and arts and culture.

17.     Resolution has also made investments required to maintain its unpatented mining claims.

18.     The Project's headcount varies by level of activity at the site. Currently, there are 181 full-time employees at Resolution. Of those, 160 live within a 40-mile radius of Superior, with the remaining 21 full-time employees residing in Arizona but outside the 40-mile radius.

19.     In 2022, the number of contractors at site ranged from 160-210 and averaged 187 at site during the year. Such contract workers are typically .5 count of a full-time equivalent employee due to varied hours worked at site. Therefore, between the contractors and employees, there are approximately 275 FTE workers at Resolution.

20.     When the mine is fully operational, Resolution anticipates directly employing about 1,500 workers and paying around $134 million per year in total compensation. The Project will also generate approximately 2,200 indirect jobs, meaning it could support some 3,700 jobs at full production. The Project will result in the purchase of about $546 million per year in goods and services from local businesses.

21.     Studies show Resolution could produce up to $61 billion in economic value for Arizona over the 60-year life of the Project. Resolution will boost state and local tax

revenues from $88 million to $113 million per year, while the federal government could see an extra $200 million in tax revenues per year.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This Declaration was executed on June 14, 2023.


_____
Victoria Peacey

161854694

5

# Exhibit A

DocuSign Envelope ID: CD56E9F7-EE99-4555-B62F-FCA26420E44E



## Legend

- Apache Leap Special Management Area
- Oak Flat Withdrawal Boundary
- Oak Flat LEX Boundary
- Resolution Holdings

### Resolution Claims
- Unpatented
- Patented

### Surface Management (BLM 2012)
- Private Land (No Color)
- State Trust Land
- US Forest Service (USFS)

N

RESOLUTION
C O P P E R

Resolution Copper Claims Within
the ALSMA and Oak Flat LEX Parcel

June 10, 2019
Prepared By: Mary Morissette

Exhibit A

0    2,000    4,000
Feet

0    500    1,000
Meters